Todd Slobin (to be admitted *Pro Hac Vice*)
tslobin@eeoc.net
Ricardo J. Prieto (to be admitted *Pro Hac Vice*)
rprieto@eeoc.net
SHELLIST | LAZARZ | SLOBIN LLP
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
Facsimile: (713) 621-0993

Melinda Arbuckle (Cal. Bar No. 302723)
marbuckl@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-6506
Facsimile: (818) 986-9698

*Counsel for Plaintiff, Lauren Byrne, and Proposed Class and Collective Action Members*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION - RIVERSIDE**

| | |
|---|---|
| LAUREN BYRNE, on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>SANTA BARBARA HOSPITALITY SERVICES, INC., THE SPEARMINT RHINO COMPANIES WORLDWIDE, INC., SPEARMINT RHINO CONSULTING WORLDWIDE, INC., and SANTA BARBARA HOSPITALITY SERVICES, LLC,<br><br>     Defendants. | **Case No: 5:17-cv-00527**<br><br>**ORIGINAL COMPLAINT FOR VIOLATIONS OF FLSA AND STATE LAWS**<br><br>**COLLECTIVE ACTION AND CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Lauren Byrne ("Byrne" or "Plaintiff"), on behalf of herself and all others similarly situated, files this Original Complaint against Defendants Santa Barbara Hospitality Services, Inc.; The Spearmint Rhino Companies Worldwide, Inc.; Spearmint Rhino Consulting Worldwide, Inc.; and Santa Barbara Hospitality Services, LLC (collectively "Defendants" or "Spearmint Rhino"), showing in support as follows:

## I. INTRODUCTION AND NATURE OF ACTION

1. This is an action brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the Portal-to-Portal Act, 29 U.S.C. §§ 251-262 (collectively, the "FLSA") to redress Defendants' long standing abuse of the federal minimum wage and overtime standards. Plaintiff brings this action as a collective action under 29 U.S.C. § 216 (b). The FLSA violation raised in this lawsuit is straightforward – Defendants do not pay their employees anything.

2. This action is also brought under the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210, the California Labor Code and related regulations including the California Private Attorneys General Act, ("PAGA"), Cal. Wage Order No. 10-2001; Cal. Labor Code §§ 200-2699.5, (collectively, "California State Law"), for Defendants' various violations of California State Law including: (1) failure to pay employees working in California state-mandated minimum wages, (2) failure to pay employees working in California overtime compensation at a rate of one and one-half times the regular rate of pay for all hours worked over forty per week, or over eight per day, or for the first eight hours of work on the seventh consecutive day of work in a workweek

(3) failure to pay employees working in California overtime compensation at a rate of twice the regular rate of pay for all hours worked in excess of 12 hours in one day, and for any hours worked in excess of eight hours on the seventh consecutive day of work in a workweek,(4) failure to pay employees working in California all wages due within the time specified by law, (5) failure to afford their employees working in California with proper meal and rest periods, (6) for recordkeeping violations explained in greater detail below, and (7) for statutory penalties assessed in connection with PAGA. Plaintiff brings these claims as a class action under FED. R. CIV. P. 23.

3.      Defendants Santa Barbara Hospitality Services, Inc.; The Spearmint Rhino Companies Worldwide, Inc.; Spearmint Rhino Consulting Worldwide, Inc.; and Santa Barbara Hospitality Services, LLC, own and manage gentlemen's clubs located throughout the country operating under the name "Spearmint Rhino." Plaintiff, on behalf of herself and all others similarly situated, alleges that Defendants are joint employers and are jointly and severally liable for her damages and those of the putative Class and Collective Action Members.

4.      Plaintiff Lauren Byrne is a non-exempt former employee of Spearmint Rhino who worked as an exotic dancer at Defendants' adult entertainment club in Santa Barbara, California. During her tenure as a dancer for Defendants, she did not receive the FLSA-mandated minimum wage for all hours worked, nor did she receive time-and-one-half her regular rate of pay for each hour worked over 40 in a given workweek.

5.     In fact, Defendants did not compensate Plaintiff whatsoever for any hours she worked at that Spearmint Rhino location. Plaintiff was first required to pay to enter the club, and her only compensation came in the form of tips received from club patrons. Moreover, Plaintiff was required to divide those tips with Defendants and other employees who do not customarily receive tips. Consequently, Defendants often failed to compensate Plaintiff and other workers like her at federal- and state-mandated minimum wage rates, and failed to provide Plaintiff and others like her with commensurate overtime when they worked over 40 hours in a given workweek, or per California State Law, over 8 hours in a given workday.

## II.     THE PARTIES

### A.     Plaintiff Lauren Byrne

6.     Plaintiff Lauren Byrne is an individual residing in Ventura County, California. She has standing to file this lawsuit.

7.     Byrne was an exotic dancer employee of Defendants. She worked exclusively for Defendants at their location at 22 East Montecito Street, Santa Barbara California, 93101, from approximately September 19, 2016 through approximately October 23, 2016.

8.     Byrne's written consent to participate in this action is attached to this Complaint as "Exhibit 1."

### B.     Putative Collective Action Members

9.     The putative Collective Action Members are all current and former exotic dancers who worked for Defendants at any Spearmint Rhino location

nationwide at any time within the three years prior to the filing of this Complaint through the date of final disposition of this action who did not receive minimum wages or overtime premium pay for hours worked over 40 in a given workweek from Defendants.

10. Byrne seeks to represent the Collective Action Members, seeking damages for claims of unpaid minimum wages and overtime wages pursuant to the FLSA, and Byrne similarly situated to the Collective Action Members pursuant to 29 U.S.C. § 216(b).

**C.  Putative California Class Action Members**

11. The putative California Class Action Members are all current and former exotic dancers who work or worked for Defendants at any Spearmint Rhino location in California at any time within the four years prior to the date of filing of this Complaint through the date of the final disposition of this action.

12. Byrne seeks to represent the California Class Action Members, seeking damages for the California State Law Claims, described further below. Byrne is a proper class representative pursuant to FED. R. CIV. P. 23(a)(4).

**D.  Defendant Santa Barbara Hospitality Services, Inc.**

13. Defendant Santa Barbara Hospitality Services, Inc. is a California corporation that does business as The Spearmint Rhino.

14. Santa Barbara Hospitality Services, Inc. may be served process through its registered agent, Joann Castillo, at 1875 Tandem Way, Norco, California 92860.

15.     At all times relevant to this lawsuit, Defendant has been an "enterprise engaged in commerce" as defined by the FLSA.

16.     At all times relevant to this lawsuit, Defendant employed, and continues to employ, two or more employees.

17.     At all times relevant to this lawsuit, Defendant employed two or more employees who engaged in commerce and/or who handled, sold or otherwise worked on goods or materials that have been moved in or produced for commerce by any person.

18.     On information and belief, at all times relevant to this lawsuit, Defendant has had gross operating revenues or business volume in excess of $500,000.

**E.      Defendant The Spearmint Rhino Companies Worldwide, Inc.**

19.     Defendant The Spearmint Rhino Companies Worldwide, Inc. is a Nevada corporation doing business in California.

20.     The Spearmint Rhino Companies Worldwide, Inc. may be served with summons through its registered agent, Joann Castillo, at 1875 Tandem Way, Norco, California 92860.

21.     At all times relevant to this lawsuit, Defendant has been an "enterprise engaged in commerce" as defined by the FLSA.

22.     At all times relevant to this lawsuit, Defendant employed, and continues to employ, two or more employees.

23.     At all times relevant to this lawsuit, Defendant employed two or more employees who engaged in commerce and/or who handled, sold or otherwise

worked on goods or materials that have been moved in or produced for commerce by any person.

24. On information and belief, at all times relevant to this lawsuit, Defendant has had gross operating revenues or business volume in excess of $500,000.

**F.      Defendant Spearmint Rhino Consulting Worldwide, Inc.**

25. Defendant Spearmint Rhino Consulting Worldwide, Inc. is a Delaware corporation doing business in California.

26. Spearmint Rhino Consulting Worldwide, Inc. may be served with summons through its registered agent, Joann Castillo, at 1875 Tandem Way, Norco, California 92860.

27. At all times relevant to this lawsuit, Defendant has been an "enterprise engaged in commerce" as defined by the FLSA.

28. At all times relevant to this lawsuit, Defendant employed, and continues to employ, two or more employees.

29. At all times relevant to this lawsuit, Defendant employed two or more employees who engaged in commerce and/or who handled, sold or otherwise worked on goods or materials that have been moved in or produced for commerce by any person.

30. On information and belief, at all times relevant to this lawsuit, Defendant has had gross operating revenues or business volume in excess of $500,000.

**G.      Defendant Santa Barbara Hospitality Services, LLC**

31.     Defendant Santa Barbara Hospitality Services, LLC is a California limited liability company that does business as The Spearmint Rhino.

32.     Santa Barbara Hospitality Services, LLC may be served with summons through its registered agent, Joann Castillo at 1875 Tandem Way, Norco, California 92860.

33.     At all times relevant to this lawsuit, Defendant has been an "enterprise engaged in commerce" as defined by the FLSA.

34.     At all times relevant to this lawsuit, Defendant employed, and continues to employ, two or more employees.

35.     At all times relevant to this lawsuit, Defendant employed two or more employees who engaged in commerce and/or who handled, sold or otherwise worked on goods or materials that have been moved in or produced for commerce by any person.

36.     On information and belief, at all times relevant to this lawsuit, Defendant has had gross operating revenues or business volume in excess of $500,000.

## III.    JURISDICTION AND VENUE

37.     This Court has federal question jurisdiction over all claims pursuant to 28 U.S.C. § 1331 and the FLSA at 29 U.S.C. § 216(b).

38.     This Court also has supplemental jurisdiction over Plaintiff's California State Law claims pursuant to 28 U.S.C. §1367 because those claims derive from a common nucleus of operative fact.

39.     This Court is empowered to issue a declaratory judgment with respect to all claims pursuant to 28 U.S.C. §§ 2201 & 2202.

40.     The United States District Court for the Central District of California has personal jurisdiction over Defendants because Defendants do business in California and in this District, and because many of the acts complained of and giving rise to the claims alleged occurred in California and in this District.

41.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to all claims occurred in this District.

## IV.    FACTUAL BACKGROUND
## (APPLICABLE TO ALL CLAIMS FOR RELIEF)

**A.    Related Case (*Trauth*) and Defendants' Prior Wage Scheme:**

42.     Like most (if not all) gentlemen's clubs throughout the country, Defendants' prior business practice was to classify all of their exotic dancer employees as independent contractors.

43.     Defendants' prior misclassification of their exotic dancers as independent contractors was not due to any unique factor related to their employment or relationship with Defendants. Rather, as is common business practice amongst gentlemen's clubs, Defendants simply misclassified all of their exotic dancers as independent contractors instead of employees. As a result of this uniform misclassification, exotic dancers of Spearmint Rhino were not paid minimum wages or overtime wages as required by relevant federal and state law.

44.     On July 13, 2009, a group of exotic dancers filed a wage lawsuit ("the *Trauth* case") against Spearmint Rhino for wage violations under federal and state laws.[1] The exotic dancers in that lawsuit alleged that they were misclassified as independent contractors and were entitled to their wages for all hours worked. Eventually, the *Trauth* cases settled, and came before the Court for final approval. *See Trauth v. Spearmint Rhino Cos. Worldwide, Inc.*, Case No. EDCV 09-01316-VAP (DTBx), 2012 WL 12893448 (C.D. Cal. Nov. 7, 2012) (Phillips, C.J.). In the order approving the settlement, Chief Judge Virginia A. Phillips ordered Spearmint Rhino as follows:

> Within six months, the Clubs will no longer treat Dancers as independent contractors or lessees; instead the Clubs will treat Dancers "as either employees or owners (e.g. shareholder, limited partner, partner, member or other type of ownership stake)" of any Clubs in existence at the time of settlement. (Doc. No. 318-1 ¶ 4.2.) In California, Dancers will no longer be charged stage fees (i.e., fees a Dancer pays for the privilege of performing at a Club). (Id. ¶ 4.1.)

*Id.* at *1.

45.     Thereafter, Defendants no longer classified their exotic dancers as independent contractors. Instead they are now, facially, "members" of a newly formed limited liability company – Santa Barbara Hospitality Services, LLC.

46.     Apart from this solitary measure, every single aspect of the employment relationship between the exotic dancers and their employer, Spearmint Rhino, remains wholly unchanged. In fact, in direct contravention of

---

[1] *Tracy Dawn Trauth, et al v. Spearmint Rhino Companies Worldwide, Inc., et al*, Civ. A. No. 5:09-cv-01316-VAP-DTB, in the Central District of California Eastern Division – Riverside, Before United States District Chief Judge Virginia A. Phillips.

Chief Judge Phillips order, Defendants continue to require their exotic dancer employees to pay fees for the privilege of performing at Spearmint Rhino locations. It is clear that Chief Judge Phillips intended Spearmint Rhino to reclassify their exotic dancers as employees or actual owners (or members) of Spearmint Rhino. It goes without saying, Chief Judge Phillips did not intend for the Club to continue its illegal pay practice of labeling its exotic dancers something other than employees (now "members" rather than "independent contractors") for the purpose of avoiding its federal and state wage obligations.

47. Defendants' actions instead leave their exotic dancer employees with no real ownership interest in the newly formed LLC. The exotic dancers still work as employees for Spearmint Rhino, economically dependent on Spearmint Rhino in all respects relevant to the "economic realities" test described further below, and regularly making below minimum wage compensation.

**B.** **Defendants' New Scheme to Avoid FLSA Compliance**

48. Defendants now embroil their exotic dancer employees in a series of illusory contractual engagements to give the appearance that the exotic dancers are "members" of the limited liability company formed subsequent to Chief Judge Phillips's order – Defendant Santa Barbara Hospitality Services, LLC. However, all of the agreements exotic dancers are forced to sign upon being hired with Spearmint Rhino cannot mask the reality that nothing has really changed in Spearmint Rhino's operations. In fact, Defendants use many (if not most) of the same kinds of documents, policies, and procedures found to create an employer/employee relationship in other exotic dancer cases with respect to

Plaintiff and Spearmint Rhino's other exotic dancers. Exotic dancers do not have any real decision-making authority, do not share equitably in the profitability of Spearmint Rhino, and do not have the right to control Spearmint Rhino management. In short, they are not owners of Spearmint Rhino in any demonstrable sense.

49.     The exotic dancers remain economically dependent and under the complete control and direction of Defendants, but are paid no wages in connection with that work. They are still clearly integral to Defendants' business, since without the exotic dancers there would be no gentlemen's clubs. And finally, they still generate revenue for Spearmint Rhino, as they are still required to share the tips that they earn with Spearmint Rhino, and are otherwise treated as employees of Spearmint Rhino in all relevant respects as before.

50.     The totality of the circumstances surrounding the relationship between Defendants and their exotic dancer employees establishes economic dependence by the exotic dancers on Defendants, and thus employee status. As a matter of economic reality, Plaintiff and the putative Collective Action Members are not in business for themselves, nor truly independent, but rather are economically dependent upon finding employment through Spearmint Rhino. Plaintiff and the putative Collective Action Members are not engaged in occupations or business distinct from that of Defendants, in fact, their work is the basis of Defendants' business.

51.    Defendants' business operation is to obtain the customers who desire the exotic dance entertainment and provide the workers who conduct the dance services on behalf of Defendants.

52.    Indeed, a cursory review of the Santa Barbara Hospitality Services, LLC's operating agreement shows that Defendants retain pervasive control over Spearmint Rhino's operations as a whole and that the exotic dancer's duties are integral to those operations.

### 1.    Spearmint Rhino Exerts Control as Employers of the Plaintiff and Putative Class and Collective Action Members.

53.    Plaintiff and Putative Class and Collective Action Members do not exert control over a meaningful part of Spearmint Rhino's business and do not stand as separate economic entities from Defendants. Defendants exercise control over all aspects of the working relationship with their exotic dancer employees.

54.    Plaintiff and Putative Class and Collective Action Members' economic status is inextricably linked to conditions over which Defendants have complete control. Exotic dancer employees of Defendants are completely dependent on Defendants for their income. Spearmint Rhino controls all of the advertising and promotion without which Plaintiff and Putative Class and Collective Action Members could not survive economically. Moreover, Defendants create and control the atmosphere and surroundings at Spearmint Rhino locations, the existence of which dictates the flow of customers into Spearmint Rhino clubs. The exotic dancers have no control over the customer volume or atmosphere at Spearmint Rhino clubs.

55.     Defendants continue to employ guidelines and rules dictating the way in which their exotic dancer employees, including Plaintiff and Putative Class and Collective Action Members, must conduct themselves. Defendants set the hours of operations, the lengths of shifts their exotic dancer employees must work, the show time during which an exotic dancer may perform, and sets minimum dance tips. Defendants also determine the sequence in which a dancer may perform on stage during her stage rotation; the themes of dancers' performances, including their costuming and appearances; their conduct at work (*e.g.*, that they should be on the floor as much as possible when not on stage to mingle with club patrons); tip splits; and all other terms and conditions of employment.

56.     Defendants require that their dancers work a minimum number of shifts each week, each shift comprising a set number of hours. Exotic dancer employees are required to report in and report out at the beginning and end of every shift. If an exotic dancer employee arrives late, leaves early, or misses a shift, she is subject to a fine, penalty, or reprimand by Defendants.

57.     Defendants routinely schedule their exotic dancer employees to work in excess of 40 hours per week and knowingly permit dancers to work in excess of 40 hours per week regularly. Defendants also routinely schedule their exotic dancer employees to work in excess of eight hours in a day and knowingly permit dancers to work in excess of eight hours in a day with frequency.

58.     Defendants, not exotic dancers, set the minimum tip amount that exotic dancer employees must collect from patrons when performing dances.

Defendants announce the minimum tip amount to patrons in the club wishing to receive the dance entertainment.

59. The entire sum a dancer receives from a patron for a dance is not given to defendants and taken into its gross receipts. Instead, the dancers keep their share of the payment under the tip share policy and pay over to Defendants the portion they demand as their share which they now term "rent and/or overhead." Defendants' aforementioned portion bears no actual relation to expenses associated with rent and/or overhead. For example, for a table dance, Plaintiff would be required to pay the club a portion of the minimum tip set by Defendants once collected from a patron of the club.

60. Defendants establish the split or percentage which each exotic dancer employee is required to pay to Spearmint Rhino for each type of dance they may perform during their shift. In addition, amounts must be shared with disc jockeys, door staff, and other employees as part of Defendants' tip sharing policy. Further, exotic dancer employees are expected to assist Defendants in selling drinks during their shift. The foregoing non-exhaustively demonstrates that Defendants set the terms and conditions for the work of each exotic dancer employee.

> **2. Working as an Exotic Dancer Employee of Spearmint Rhino Does Not Require Special Skill or Initiative.**

61. Plaintiff and Putative Class and Collective Action Members do not exercise the skill and initiative of those in business for themselves.

62. Plaintiff and Putative Class and Collective Action Members are not required to have any specialized or unusual skills to work at Defendants' club.

Prior dance experience is not required as a prerequisite to employment. Dancers are not required to attain a certain level of skill in order to dance at Defendants' club. There are no certification standards for dancers. There are no dance seminars, no specialized training, no instructional booklets, and no choreography provided or required in order to work at Defendants' club. The dance skills utilized are commensurate with those exercised by ordinary people dancing at a typical nightclub or a wedding.

63.     Plaintiff, like the putative Class and Collective Action Members, did not have the opportunity to exercise business skills and initiative necessary to elevate her status to that of an owner of Spearmint Rhino. Dancers exercise no business management skills. They maintain no separate business structures or facilities. Exotic dancer employees do not actively participate in any effort to increase a club's client base, enhance goodwill, or establish contracting possibilities. The scope of a dancer's initiative is restricted to decisions involving what clothing to wear (within Defendants' guidelines) or how provocatively to dance.

64.     Plaintiff and Putative Class and Collective Action Members are not permitted to hire or contract other qualified individuals to provide dances to patrons and increase the club's revenue as an owner of the club would.

### 3. Spearmint Rhino's Relative Investment in Defendants' Operations Vastly Exceeds that of Plaintiff and Putative Class and Collective Action Members.

65.     Plaintiff's investment in the exotic dancing business is minute when compared with that of Defendants.

66.     Plaintiff, like all other exotic dancer employees of Spearmint Rhino, has made no capital investment in the facilities, advertising, maintenance, sound systems, lights, food, beverage, inventory, or staffing at Defendants' club. A dancer's investment is limited to expenditures on costumes or makeup. But for Defendants' provision of the lavish club work environment, the dancers would earn nothing.

### 4. Plaintiff and Putative Class and Collective Action Members Did Not Have the Ability to Alter their Opportunity for Profit and Loss Per the Economic Reality Test.

67.     Defendants, not the exotic dancer employees such as Plaintiff, manage all aspects of the business operation including attracting investors, establishing working hours and hours of operations, setting the atmosphere, coordinating advertising, hiring, selling a club's real and personal property, and controlling the staff. Defendants alone took the true business risks related to Spearmint Rhino clubs.

68.     Exotic dancer employees, such as Plaintiff and Putative Class and Collective Action Members, do not control the key determinations for profit and loss of the Spearmint Rhino enterprise. Specifically, Plaintiff was not responsible for any aspect of the enterprise's ongoing business risk. For example, Defendants are responsible for all financing, for the acquisition and/or lease of physical

facilities and equipment, for inventory, for the payment of wages of individuals such as managers and bartenders (but not exotic dancer employees), and for obtaining appropriate business insurance, permits, and licenses.

69. Defendants, not exotic dancer employees, establish the minimum dance tip amounts that should be collected from patrons when dancing. Exotic dancer employees are not charged with the authority to accept a lower rate.

70. The tips received by exotic dancer employees are not a return on a capital investment. They are a gratuity for services rendered. From this perspective, it is clear that a dancer's supposed "return on investment" is no different than that of a waiter who serves food during a customer's meal at a restaurant.

**5. Plaintiff and Putative Collective Action Members Worked Exclusively for Spearmint Rhino for Indefinite Periods of Time.**

71. Plaintiff worked exclusively for Defendants while employed as an exotic dancer at a Spearmint Rhino club. Plaintiff was not employed for a set term, but rather anticipated that her employment with Spearmint Rhino would be on an ongoing basis.

72. On information and belief, many exotic dancer employees work exclusively for Defendants for protracted periods of time, often for years at a time.

**6. Exotic Dancers Provide Services at Spearmint Rhino Locations that Are Integral to the Financial Success of Defendants' Enterprise.**

73.     Plaintiff and putative Class and Collective Action Members are essential to the success of Defendants' clubs. The continued success of clubs such as Defendants' turns upon the provision of dances by exotic dancers for the club's patrons. In fact, the sole reason establishments like the Spearmint Rhino exist is to showcase dancers' physical attributes for customers of the business.

74.     Moreover, Defendants are able to charge higher admission prices and a much higher price for their drinks than a comparable establishment without dancers because exotic dancers are the main attraction of such clubs. As a result, the dancers are an integral part of Defendants' business.

75.     The foregoing demonstrates that dancers like Plaintiff and Putative Class and Collective Action Members are economically dependent on Defendants and subject to significant control by Defendants. Therefore, Plaintiff and Putative Class and Collective Action Members are employees, not business owners, and should have been paid minimum wage at all times that they worked at Defendants' clubs. Similarly, they should have been afforded all rights and benefits of an employee pursuant to relevant state and federal law, including the payment of overtime wages whenever they worked over forty hours in a given workweek or over 8 hours in a given day in the state of California.

76.     All actions described above are willful, intentional, and the result of design rather than mistake or inadvertence. Defendants were aware that the FLSA

applied to the operation of their clubs at all relevant times and were aware of the economic realities test under which its exotic dancers are clearly employees.

## V.     FLSA CLAIMS FOR MINIMUM WAGES, STRAIGHT TIME COMPENSATION, AND OVERTIME PAY

77.     Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

### A.     FLSA Coverage

78.     All conditions precedent to this suit, if any, have been fulfilled.

79.     At all times relevant to this lawsuit, Defendants are/were eligible and covered employers under the FLSA pursuant to 29 U.S.C. § 203(d).

80.     At all times relevant to this lawsuit, Defendants are/have been enterprises engaged in commerce under the FLSA pursuant to 29 U.S.C. § 203(s)(1)(A).

81.     At all times relevant to this lawsuit, Defendants have employed, and continue to employ, employees including Plaintiff and the putative Collective Action Members who engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

82.     At all relevant times, Defendants have had gross operating revenues or business volume in excess of $500,000.

### B.     FLSA Allegations

83.     The FLSA is to be construed expansively in favor of coverage, recognizing that broad coverage is essential to accomplish the goals of this remedial legislation, including the avoidance of unfair competition. *See Tony &*

*Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296-97 (1985); *Hale v. Arizona*, 993 F.2d 1387, 1402 (9th Cir. 1993).

84.    "[N]either the common law concepts of 'employee' and 'independent contractor' nor contractual provisions purporting to describe the relationship are determinative of employment status." *Mathis v. Hous. Auth. of Umatilla Cnty.*, 242 F. Supp. 2d 777, 783 (D. Or. 2002) *quoting Nash v. Res., Inc.*, 982 F. Supp. 1427, 1433 (D. Or. 1997).

85.    Rather, to determine employment status under the FLSA's broad remedial purpose, courts across the nation apply some variant of the "economic realities test." In this Circuit, *Real v. Driscoll Strawberry Assocs., Inc.* sets out the relevant factor analysis:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; and 6) whether the service rendered is an integral part of the alleged employer's business.
>
> The presence of any individual factor is not dispositive of whether an employee/employer relationship exists. Such a determination depends "upon the circumstances of the whole activity."

603 F.2d 748 (9th Cir. 1979) *quoting Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947). In the end, the factors are aids used to determine whether "as a matter of economic reality, the individuals 'are dependent upon the business to which they render service.'" *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir. 1981) *quoting Bartels v. Birmingham*, 332 U.S. 126, 130 (1947).

86. The FLSA recognizes the doctrine of joint employers. 29 U.S.C. § 203(d).

> Where the employee performs work which simultaneously benefits two or more employers [. . .] a joint employment relationship generally will be considered to exist [. . .] [w]*here the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.*

*Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 917-18 (9th Cir. 2003) *quoting* 29 C.F.R. § 791.2(b) (emphasis in original).

87. The FLSA applied to Plaintiff and the putative Collective Action Members at all times that they worked as exotic dancers at the Spearmint Rhino locations of Defendants.

88. No exemptions to the application of the FLSA apply to Plaintiff or the putative Collective Action Members. For instance, neither Plaintiff nor any putative Collective Action Member has ever been a professional or artist exempt from the provisions of the FLSA. The dancing required by Spearmint Rhino does not require invention, imagination or talent in a recognized field of artistic endeavor and Plaintiff and the putative Collective Action Members have never been compensated by Defendants on a set salary, wage, or fee basis. Rather, Plaintiff and the Putative Collective Action Members' sole source of income while working for Defendants was tips given to them by the club's patrons (*i.e.*, stage dancing or single dancing tips).

89.   At all relevant times, Plaintiff and the Putative Collective Action Members were employees of Defendants pursuant to the FLSA. On information and belief, during the three years preceding the filing of this action more than one thousand exotic dancers have worked at Spearmint Rhino locations nationwide, all without receiving any wages from Defendants.

90.   During the relevant time period, neither Plaintiff nor any putative Collective Action Member received money from Defendants in the form of wages, nor did they receive any other category of compensation (*e.g.*, bonuses, shift differentials, *per diem* payments) from Defendants. Plaintiff and putative Collective Action Members generated their income solely through tips they received from Defendants' customers when they performed dances for those patrons. Nonetheless, Defendants imposed a fee schedule that required Plaintiff and the putative Collective Action Members to pay for the privilege of dancing at Spearmint Rhino locations. Defendants assessed a daily house fee to be paid by Plaintiff and the putative Collective Action Members per shift and additionally demanded a portion of the gratuity an exotic dancer would receive per dance.

91.   The money that Plaintiff and the putative Collective Action Members would receive from customers at Spearmint Rhino locations is a tip, not a service charge as those terms are defined in relevant FLSA regulations. *See* 29 C.F.R. §§ 531.52, 531.53, & 531.55.

92.   Those tips received by Plaintiff and the putative Collective Action Members does not become part of the Defendants' gross receipts to be later distributed to the exotic dancers at a given location as wages. Instead, exotic

dancers at Spearmint Rhino locations merely pay the club a portion of their tips, which Spearmint Rhino pockets as pure profit.

93.    Plaintiff and the putative Collective Action Members are tipped employees under the FLSA, as they are engaged in an occupation in which they customarily and regularly receive more than $30 per month in tips. *See* 29 U.S.C. § 203(t).

94.    However, Defendants are not entitled to take a tip credit for the amounts Plaintiff and the putative Collective Action Members received as tips. 29 U.S.C. § 203(m) requires an employer to inform its employee that it intends to rely on the tip credit to satisfy its minimum wage obligations. Here, Defendants affirmatively informed Plaintiff and the Class Members that they would not be paid wages at all, much less paid a tip credit adjusted minimum wage.

95.    Defendants' contractual scheme to label Plaintiff and the putative Collective Action Members as so-called "members" of a limited liability company was designed to deny them their fundamental rights as employees to receive minimum wages, overtime, to demand and retain portions of tips given to putative Collective Action Members by Spearmint Rhino customers, and was all done to enhance Defendants' profits.

96.    Defendants' contractual scheme to label Plaintiff and the putative Collective Action Members as so-called "members" of an LLC rather than employees was willful. Defendants knew or should have known that Plaintiff and the putative Collective Action Members do not share in the benefits and privileges of actual ownership of the Spearmint Rhino.

97. Furthermore, workers cannot elect to be treated as members of a limited liability company instead of employees. *Real*, 603 F.2d at 755 ("Economic realities, not contractual labels, determine employment status for the remedial purposes of the FLSA."). Nor can workers agree to be paid less than the minimum wage. *Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of Am.*, 325 U.S. 161 177 (1945). Neither of the aforementioned legal concepts are new to Defendants. This is not Defendants' first attempt to contract around state and federal wage laws in order to deprive their employees of their rightfully earned wages. Defendants know, or should have known, their LLC "member" agreements are in violation of state and federal law.

98. Finally, federal law requires employers to make and keep accurate and detailed payroll data for non-exempt employees. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. Amongst other things, the regulations require employers to make and keep payroll records showing data such as the employee's name, social security number, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime pay is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment, and records of remedial payments. 29 C.F.R. § 516.2(a)&(b). Employers are required to maintain the foregoing data for a minimum of three years. 29 C.F.R. § 516.5. Defendants have failed to keep the aforementioned records despite their prior dealings with numerous wage and hour lawsuits. Defendants' continual failure to comply with

and disregard of the FLSA's record keeping provision is willful and in violation of the law.

**C.** **Collective Action Allegations**

99.     Plaintiff seeks to bring her claims under the FLSA on behalf of herself and all other exotic dancers who worked for the Spearmint Rhino in the three years immediately preceding the date on which this action was filed and continuing thereafter through the date on which final judgment is entered. Those who file a written consent will be a party to this action pursuant to 29 U.S.C. § 216(b) (the "FLSA Class").

100.     Plaintiff has actual knowledge that putative Collective Action Members have been denied wages for all hours worked in each workweek. Plaintiff worked with other dancers at a Spearmint Rhino location. As such, she has personal knowledge of the pay violations. Furthermore, other exotic dancer employees at Defendants' establishments have shared with her that they experienced similar pay violations as those described in this complaint.

101.     Other employees similarly situated to Plaintiff work or have worked for Defendants at their gentlemen's club locations without being paid a wage.

102.     The putative Collective Action Members are similarly situated to Plaintiff in all relevant respects, having performed the same work duties as Plaintiff and being similarly situated with regard to Defendants pay practices.

103.     The putative Collective Action Members regularly work or have worked in excess of forty hours during a workweek.

104. The putative Collective Action Members are not exempt from receiving overtime and/or pay at the federally mandated minimum wage rate under the FLSA.

105. The putative Collective Action Members are similar to Plaintiff in terms of job duties, pay structure, misclassification as supposed "members" of the Santa Barbara Hospitality Services, LLC, and/or the denial of overtime and minimum wage.

106. Defendants' failure to pay overtime compensation and minimum wages results from generally applicable policies or practices, and does not depend on the personal circumstances of the putative Collective Action Members.

107. The experiences of Plaintiff with respect to her pay, or lack thereof, is typical of the experiences of the putative Collective Action Members.

108. The specific job titles or precise job responsibilities of each putative Collective Action Member does not prevent collective treatment.

109. Although the exact amount of damages may vary among the putative Collective Action Members, the damages are easily calculable using a simple formula uniformly applicable to all of the exotic dancer employees.

110. Plaintiff proposes that the class of putative Collective Action Members be defined as:

**All current and former exotic dancers who worked at any Spearmint Rhino location in the United States from any time starting three years before a collective action may be conditionally certified in the case until the date the case resolves.**

## VI. CALIFORNIA STATE LAW CLAIMS

### A. Controlling California State Law and Allegations

111. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section, unless inconsistent.

112. California law requires employers to pay all wages due to an employee immediately upon discharge and within the time required by law after their employment ends. Cal. Labor Code §§ 201, 202. Should an employer willfully fail to timely pay its employee, the employer must, as a penalty, continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of thirty days wages. Cal. Labor Code § 203.

113. Defendants' scheme to categorize Plaintiff and the putative California Class as so-called members of an LLC while otherwise treating them as employees, on information and belief, involved retention of certain money to be paid to Plaintiff and the putative California Class under the auspices of a shareholder distribution payable pursuant to a tax Schedule K-1.

114. An indefinite sum of money was promised to Plaintiff pursuant to this scheme. When Plaintiff left her employment with Defendants, on information and belief, money was owed to her under this scheme. Plaintiff has not received any money pursuant to the promise to date.

115. As Plaintiff was an employee of Spearmint Rhino, Defendants' retention of money owed to her was a violation of California State Law.

116.   On information and belief, this pay practice is applicable to certain members of the putative California Class who are former employees of Spearmint Rhino who were promised shareholder distributions payable pursuant to a tax Schedule K-1.

117.   California law does not permit an employer to receive any part of a gratuity or tip, nor does it permit an offset or reduction against minimum wages due to employees based on tips received. Cal. Labor Code § 351.

118.   Likewise, California law does not permit tip-splitting with managers who have the ability to hire, discharge, supervise, direct or control the acts of an employee, as those managers are agents of the employer. Cal. Labor Code § 350. *See also*, *Jameson v. Five Feet Rest., Inc.*, 107 Cal. App. 4th 138, 143-144 (Cal. Ct. App. 2003).

119.   Throughout the time period relevant to this claim for relief, Plaintiff and the putative California Class, defined below, were required to tender tips to Defendants and those tips were unlawfully split with managers with the ability to hire, discharge, supervise, direct or control Plaintiff and the putative California Class.

120.   California Labor Code § 351 does not provide a private cause of action for employees to recover misappropriated tips. *See also*, *Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal. 4th 592, 603-604 (Cal. 2010) (suggesting such claims could be pursued under theory of common law conversion). However the violation has been found actionable under California's Unfair Competition Law

("UCL"). *See Matoff v. Brinker Rest. Corp.*, 439 F. Supp. 2d 1035, 1038-1039 (C.D. Cal. 2006) (permitting restitution).

121.   When on shift, Plaintiff and the putative California Class routinely worked in excess of five hour shifts. During their shifts, they were not permitted to take meal breaks during which time they were relieved of all duty.

122.   Moreover, Plaintiff and the putative California Class routinely worked in excess of four hours without being relieved of all duty for a ten-minute rest period.

123.   Plaintiff and the putative California Class never received timely, accurate, itemized wage statements including their hours of work completed.

124.   Defendants' actions described herein with regard to Plaintiff and the putative California Class were willful, intentional, and not the result of mistake or inadvertence.

125.   Defendants were aware that the California Labor Code, and other laws of the State of California applied to their operation of Spearmint Rhino locations at all relevant times, and that under the relevant test Plaintiff and the putative California Class were employees of Spearmint Rhino, not true members of an LLC.

126.   Defendants were aware of and/or the subject of previous litigation and enforcement actions relating to wage and hour law violations where the misclassification of exotic dancers as independent contractors was challenged, and refused to change their business arrangements in accord with prior Court Order.

127. Defendants were aware that their failure to pay minimum wage, overtime compensation, and that their retention of tips paid to Plaintiff and the putative California Class were unlawful pursuant to California State Law. Defendants were also aware that their policy to categorize Plaintiff and the putative California Class as so-called members of an LLC while otherwise treating them as employees is a violation of the relevant economic reality test for employees.

128. Despite prior litigation in this exact District, Defendants continued to require Plaintiff and the putative California Class to pay for the privilege of dancing at Spearmint Rhino locations, to tender tips earned to Defendants, and did not pay Plaintiff and the putative California Class minimum or overtime wages.

**B.    Class Action Allegations**

129. Plaintiff brings her claims for relief under California State Law, listed above, for violations of California's wage and hour laws as a class action, pursuant to FED. R. CIV. P. 23(a), (b)(2), & (b)(3).

130. Numerosity (FED. R. CIV. P. 23(a)(1)) – the California Class is so numerous that joinder of all members is impracticable. On information and belief, during the relevant time period at least one hundred individuals worked for Defendants in the State of California.

131. Commonality (FED. R. CIV. P. 23(a)(2)) – Common questions of law and fact exist as to putative members of the California Class, including, but not limited to, the following:

a.    Whether Defendants unlawfully failed to pay all wages owed in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§

17200-17210, and the California Labor Code and related regulations including the California Private Attorneys General Act, ("PAGA"), Cal. Wage Order No. 10-2001; Cal. Labor Code §§ 200-2699.5;

b.     Whether Defendants maintained a policy or practice of misclassifying the putative California Class as members of an LLC as opposed to employees;

c.     Whether Defendants unlawfully failed to keep and furnish the putative California Class with records of hours worked, in violation of Cal. Labor Code §§ 226 & 1174;

d.     Whether Defendants unlawfully failed to provide the putative California Class with meal and rest breaks, in violation of Cal. Labor Code §§ 226.7 & 512;

e.     Whether Defendants' policy and practice of failing to pay the putative California Class all wages due immediately upon discharge violates the California Wage Payment Provisions elaborated above.

f.     Whether Defendants' policy and practice of failing to pay the putative California Class all wages due within the time required by law after their employment ends violates California law; and

g.     The proper measure of damages sustained by the putative California Class.

132.   Typicality (FED. R. CIV. P. 23(a)(3)) – Plaintiff's claims are typical of those of the putative California Class. Plaintiff, like other California Class members, were subjected to Defendants' policy and practice of refusing to pay

wages owed to its exotic dancer employees in violation of California law. Plaintiff's job duties and claims are typical of those of the putative California Class.

133. <u>Adequacy</u> (FED. R. CIV. P. 23(a)(4)) – Plaintiff will fairly and adequately represent and protect the interests of the putative California Class.

134. <u>Adequacy of counsel</u> (FED. R. CIV. P. 23(g) – Plaintiff has retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation. Plaintiff's counsel has litigated numerous class actions on behalf of nonexempt employees asserting off-the-clock claims under the FLSA and state law. Plaintiff's counsel intends to commit the necessary resources to prosecute this action vigorously for the benefit of all of the putative California Class.

135. Class certification of the California State Law claims is appropriate pursuant to FED. R. CIV. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the putative California Class, making appropriate declaratory and injunctive relief with respect to the Plaintiff and the putative California Class as a whole. Plaintiff is entitled to injunctive relief to end Defendants' common and uniform practice of treating its exotic dancers as employees while misclassifying them as owners of an LLC.

136. <u>Predominance</u> and <u>superiority</u> (FED. R. CIV. P. 23(b)(3)) – Class certification of the California State Law claims is also appropriate under FED. R. CIV. P. 23(b)(3) because questions of law and fact common to the putative California Class predominate over any questions affecting only individual

members of the putative California Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' common and uniform policies and practices unlawfully fail to compensate the putative California Class. The damages suffered by individual members of the putative California Class are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' practices.

137.   <u>Notice</u> (FED. R. CIV. P. 23(c)(2)(B)) – Plaintiff intends to send notice to all members of the putative California Class to the extent provided by Rule 23.

138.   Plaintiff proposes that the class be defined as:

**All current and former exotic dancers who worked at any Spearmint Rhino location in the State of California from any time starting four years prior to the date of the filing of the initial Complaint until the date the case resolves.**

139.   Plaintiff also brings this action as an aggrieved employee on behalf of herself and other current former employees pursuant to the California Private Attorneys General Act ("PAGA") of 2004, Cal. Labor Code §§ 2698-2699.5.

## VII.   <u>CAUSES OF ACTION</u>

### 1.     **First Claim for Relief – Violation of the FLSA, Failure to Pay Statutory Minimum Wage and Overtime**

140.   Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section, unless inconsistent.

141.   The foregoing conduct, as alleged, violated the FLSA.

142.   Although misclassified as so-called members of an LLC, Plaintiff and the putative Collective Action are nonexempt employees entitled to be paid overtime compensation for all overtime hours worked, as defined above. *See* 29 U.S.C. § 203(e)(1).

143.   Defendants were, at all times relevant to this claim for relief, joint employers of Plaintiff and the putative Collective Action. *See* 29 U.S.C. § 203(d).

144.   Defendants were, and are, required to pay their employees, Plaintiff and the putative Collective Action, at least the minimum wage for all hours worked under forty in a given workweek. 29 U.S.C. § 206.

145.   Defendants failed to pay Plaintiff and the putative Collective Action the federally-mandated minimum wage for all hours worked under forty in a given workweek. Defendants did not pay Plaintiff and Collective Action at all.

146.   Defendants were, and are, required to pay their employees, Plaintiff and the putative Collective Action, overtime premiums in an mount of one and one half times their regular rate of pay for all hours worked over forty hours in a given workweek. 29 U.S.C. § 207.

147.   Defendants failed to pay Plaintiff and the putative Collective Action their federally mandated overtime wages for all hours worked over 40 in a given workweek.

148.   Defendant also unlawfully retained certain tips paid Plaintiff and the putative Collective Action. Those tips were the sole property of Plaintiff and the putative Collective Action, and were not made part of Defendants' gross receipts. 29 C.F.R. §§ 531.52, 531.53, & 531.55.

149. Furthermore, no tip credit applies to reduce or offset Defendants' liability under the FLSA, because Defendants did not inform Plaintiff and the putative Collective Action that they would be applying a tip credit to satisfy a portion of the statutory minimum wage, nor Plaintiff and the putative Collective action retain all tips except those included in a tipping pool among employees who customarily receive tips. 29 U.S.C. § 203(m).

150. Accordingly, Plaintiff and the putative Collective Action are entitled to the full statutory minimum wages set forth in 29 U.S.C. § 206 & 207.

151. Defendants' conduct was willful and done to avoid paying minimum wages and overtime. 29 U.S.C. § 255(a). Therefore, Plaintiff and the putative Collective Action are entitled to a three (3) year statute of limitations.

152. Plaintiffs seek all damages to which they are entitled under the FLSA, including their back minimum wages, back overtime wages, liquidated damages, attorneys' fees and costs, post-judgment interest, and specifically plead recovery for the three (3) year period preceding the filing of this lawsuit through its resolution.

### 2. Second Claim for Relief – Violations of California Unfair Competition Law, Cal. Bus. & Prof. Code, §§ 17200-17210

153. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section, unless inconsistent.

154. Although misclassified as so-called members of an LLC, Plaintiff and the putative California Class are nonexempt employees entitled to be paid overtime

compensation for all overtime hours worked, as defined above. *See* Cal. Labor Code § 350(b).

155.   Defendants were, at all times relevant to this claim for relief, joint employers of Plaintiff and the putative California Class pursuant to California law and all other relevant law. *See* Cal. Labor Code §350(a).

156.   The foregoing conduct, as alleged, violates the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210. The UCL prohibits unfair competition by prohibiting, *inter alia*, any unlawful or unfair business acts or practices.

157.   Beginning at some point after the *Trauth* case,[2] which was resolved more than four years ago, Defendants committed and continue to commit, acts of unfair competition, as defined by the UCL, by, among other things, engaging in the acts and practices described herein. Defendants' conduct as herein alleged has injured Plaintiff and the putative California Class by wrongfully denying them earned wages, and therefore was substantially injurious to Plaintiff and the putative California Class.

158.   Defendants engaged in unfair competition in violation of the UCL by violating, *inter alia*, each of the following laws. Each of these violations constitutes an independent and separate violation of the UCL:

---

[2] Amended Order Granting Plaintiffs' Renewed Motion for Final Approval of Class Action Settlement (Doc. No. 317) and Granting in Part Plaintiffs' Renewed Motion for Attorneys' Fees (Doc. No. 311) was signed on November 6, 2012. *See Trauth v. Spearmint Rhino Cos. Worldwide, Inc.*, No. EDCV 09-01316-VAP (DTBx) 2012 WL 12893448 (Nov. 7, 2012).

a. The Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the Portal-to-Portal Act, 29 U.S.C. §§ 251-262;

b. California Labor Code § 1194, which provides in pertinent part:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit;

c. California Labor Code § 1182.12, which provides in pertinent part:

> Notwithstanding any other provision of this part, on and after July 1, 2014, the minimum wage for all industries shall be not less than nine dollars ($9) per hour, and on and after January 1, 2016, the minimum wage for all industries shall be not less than ten dollars ($10) per hour;

d. California Labor Code § 1182.13 and MW-2017, setting minimum wage for 2017 at $10.50 for employers with 26 or more employees;

e. California Labor Code §§ 201-203, 226, 226.7, and 512;

f. California Labor Code § 1174;

g. California Labor Code § 510, which provides in relevant part:

> Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the

rate of no less than twice the regular rate of pay of an employee

and;

h. California Labor Code § 351.

159. Defendants' course of conduct, acts, and practices in violation of the California laws mentioned in the above paragraph constitute a separate and independent violation of the UCL. Defendants' conduct described herein violates the policy or spirit of such laws or otherwise significantly threatens or harms competition.

160. The unlawful and unfair business practices and acts of Defendants, described above, have injured Plaintiff and the putative California Class in that they were wrongfully denied payment of earned wages.

161. Plaintiff, on behalf of herself and the putative California Class, seeks restitution in the amount of the respective unpaid wages earned and due at a rate of not less than the minimum wage for all hours worked under 40 in a given workweek or under eight on a given day, and overtime wages earned and due at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, or eight hours in a day, or for the first eight hours of work performed on the seventh consecutive day of work, and double the regular rate of pay for work performed in excess of twelve hours per day and for all work over eight hours on the seventh consecutive day of work in a workweek.

162. Plaintiff seeks recovery of attorneys' fees and costs of this action to be paid by Defendants, as provided by the UCL and California Labor Code §§ 218, 218.5, & 1194.

### 3. Third Claim for Relief – Minimum Wage Violations, Cal. Wage Order No. MW-2017; Cal. Labor Code §§ 1182.11, 1182.12, & 1194

163.   Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section, unless inconsistent.

164.   Although misclassified as so-called members of an LLC, Plaintiff and the putative California Class are nonexempt employees entitled to be paid overtime compensation for all overtime hours worked, as defined above. *See* Cal. Labor Code § 350(b).

165.   Defendants were, at all times relevant to this claim for relief, joint employers of Plaintiff and the putative California Class pursuant to California law and all other relevant law. *See* Cal. Labor Code §350(a).

166.   The California Labor Code requires that all employees be paid minimum wages by their employers. The current California Minimum Wage is $10.50. Cal. Labor Code. § 1182.12, MW-2017. Before January 1, 2017, the California Minimum Wage was $10.00; before January 1, 2016, the California Minimum Wage was $9.00; and before July 1, 2014, the California Minimum Wage was $8.00.[3]

167.   The California Minimum Wage is and has, at all times relevant to this lawsuit, always been higher than the minimum wage required by the FLSA.

---

[3] *See generally*, State of Cal. Dep't of Indus. Relations, *History of California Minimum Wage* https://www.dir.ca.gov/iwc/MinimumWageHistory.htm (last accessed March 14, 2017).

Therefore, the higher California Minimum Wage applies to Plaintiff and all members of the putative California Class, defined below. 29 U.S.C. § 218(a).

168.   Defendants' policy and practice of classifying Plaintiff and the putative California Class as so-called members of an LLC while treating them otherwise as employees resulted in a violation of these minimum wage provisions.

169.   As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff and the putative California Class have sustained damages, including loss of earnings for hours worked under forty in a workweek, or under eight hours per day ("straight time") during the period relevant to this lawsuit in an amount to be established at trial, prejudgment interest, liquidated damages in an amount equal to the back wages[4] and costs and attorneys' fees, pursuant to statute and other applicable law.

**4.   Fourth Claim for Relief – Overtime Violations, Cal. Wage Order No. 10-2001; Cal. Labor Code §§ 510, 1194**

170.   Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section, unless inconsistent.

171.   Although misclassified as so-called members of an LLC, Plaintiff and the putative California Class are nonexempt employees entitled to be paid overtime compensation for all overtime hours worked, as defined above. *See* Cal. Labor Code § 350(b).

_____

[4] *See* Cal. Labor Code § 1194.2 (authorizing liquidated damages for an employer's failure to pay minimum wages).

172. Defendants were, at all times relevant to this claim for relief, joint employers of Plaintiff and the putative California Class pursuant to California law and all other relevant law. *See* Cal. Labor Code §350(a).

173. California law requires an employer to pay overtime compensation to all nonexempt employees at a rate of overtime compensation at a rate of one and one-half times the regular rate of pay for all hours worked over forty per week, or over eight per day, or for the first eight hours of work on the seventh consecutive day of work in a workweek, and at a rate of twice the regular rate of pay for all hours worked in excess of 12 hours in one day, and for any hours worked in excess of eight hours on the seventh consecutive day of work in a workweek. Cal. Labor Code § 510.

174. California wage and hour laws provide greater protections for workers than the FLSA. Therefore, California wage and hour laws apply to Plaintiff and all members of the putative California Class, defined below, where they provide greater protections to workers. 29 U.S.C. § 218(a).

175. Throughout the time period relevant to this claim for relief, Plaintiff and the putative California Class worked in excess of eight hours in a workday and/or forty hours in a workweek. Plaintiff and the putative California Class also sometimes worked in excess of 12 hours in one day and for over eight hours on a seventh consecutive day of work.

176. Defendants' policy and practice of classifying Plaintiff and the putative California Class as so-called members of an LLC while treating them otherwise as employees resulted in a violation of these overtime wage provisions.

177.  As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff and the putative California Class have sustained damages, including loss of earnings for hours of overtime worked on behalf of Defendants in an amount to be established at trial, prejudgment interest, and costs and attorneys' fees, pursuant to statute and other applicable law.

**5.    Fifth Claim for Relief – California Meal and Rest Provisions, Cal. Wage Order No. 10-2001; Cal. Labor Code §§ 218.5, 226.7, & 512**

178.  Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section, unless inconsistent.

179.  Although misclassified as so-called members of an LLC, Plaintiff and the putative California Class are nonexempt employees entitled to be paid overtime compensation for all overtime hours worked, as defined above. *See* Cal. Labor Code § 350(b).

180.  Defendants were, at all times relevant to this claim for relief, joint employers of Plaintiff and the putative California Class pursuant to California law and all other relevant law. *See* Cal. Labor Code §350(a).

181.  Plaintiff and the putative California Class routinely work and have worked in excess of five-hour shifts without being afforded at least a half-hour meal break in which they were relived of all duty, and more than ten-hour shifts without being afforded a second half-hour meal break in which they were relieved of all duty, as required by California Labor Code §§ 226.7 & 512 and Wage Order No. 10-2001, § 11(A) & (B).

182.   In addition, Plaintiff and the putative California Class regularly work and have worked without being afforded at least one ten-minute rest break, in which they were relieved of all duty, per four hours of work performed or major fraction thereof, as required by California Labor Code § 226.7 and Wage Order No. 10-2001, § 12.

183.   As a result of Defendants' failure to afford proper meal periods, they are liable to Plaintiff and the putative California Class for one hour of additional pay at the regular rate of compensation for each workday that the proper meal periods were not provided, pursuant to California Labor Code § 226.7 and Wage Order No. 10-2001, § 11(D).

184.   As a result of Defendants' failure to afford proper rest periods, they are liable to Plaintiff and the putative California Class for one hour of additional pay at the regular rate of compensation for each workday that the proper rest periods were not provided, pursuant to § 226.7 and Wage Order No. 10-2001, § 12(B).

**6.     Sixth Claim for Relief – California Record-Keeping Provisions, Cal. Wage Order No. 10-2001; Cal. Labor Code §§ 226, 1174, &1174.5**

185.   Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section, unless inconsistent.

186.   Although misclassified as so-called members of an LLC, Plaintiff and the putative California Class are nonexempt employees entitled to be paid overtime compensation for all overtime hours worked, as defined above. *See* Cal. Labor Code § 350(b).

187.    Defendants were, at all times relevant to this claim for relief, joint employers of Plaintiff and the putative California Class pursuant to California law and all other relevant law. *See* Cal. Labor Code §350(a).

188.    Defendants knowingly and intentionally failed to provide timely, accurate, itemized wage statements including, *inter* alia, hours worked, to Plaintiff and the putative California Class in accordance with California Labor Code § 226(a) and the applicable IWC Wage Order. Such failure caused injury to Plaintiff and the putative California Class by, among other things, impeding them from knowing the amount of wages to which they were and are entitled. On information and belief, at all times relevant herein, Defendants have failed to maintain records of hours worked by Plaintiff and the putative California Class as required under California Labor Code § 1174(d).

189.    Plaintiff and the putative California Class are entitled to and seek injunctive relief requiring Defendants to comply with Labor Code §§ 226(e) & 1174(d), and further seek the amount provided under Labor Code §§ 226(e) & 1174.5, including the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period.

### 7.    Seventh Claim for Relief – California Wage Payment Provisions, Cal. Labor Code §§ 201, 202, &203

190.    Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section, unless inconsistent.

191.    Although misclassified as so-called members of an LLC, Plaintiff and the putative California Class are nonexempt employees entitled to be paid overtime compensation for all overtime hours worked, as defined above. *See* Cal. Labor Code § 350(b).

Case No. 5:17-cv-00527

Original Complaint

192.   Defendants were, at all times relevant to this claim for relief, joint employers of Plaintiff and the putative California Class pursuant to California law and all other relevant law. *See* Cal. Labor Code §350(a).

193.   California Labor Code §§ 201 and 202 require Defendants to pay their employees all wages due within the time specified by law. California Labor Code § 203 provides that if an employer willfully fails to timely pay such wages, the employer must, as a penalty, continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of thirty days of wages.

194.   Plaintiff and the putative California Class members who ceased employment with Defendants are entitled to unpaid compensation and other monies, as alleged above, but to date have not received such compensation.

195.   More than thirty days have passed since Plaintiff and certain putative California Class members left Defendants' employ.

196.   As a consequence of Defendants' willful conduct in not paying compensation for all hours worked, Plaintiff and the putative California Class members whose employment ended during the class period are entitled to thirty days' wages under Labor Code § 203, together with interest thereon and attorneys' fees and costs.

### 8.   Eighth Claim for Relief – California PAGA Claims Cal. Wage Order No. 10-2001; Cal. Labor Code §§ 2698-2699.5

197.   Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section, unless inconsistent.

198. Although misclassified as so-called members of an LLC, Plaintiff and the putative California Class are nonexempt employees entitled to be paid overtime compensation for all overtime hours worked, as defined above. *See* Cal. Labor Code § 350(b).

199. Defendants were, at all times relevant to this claim for relief, joint employers of Plaintiff and the putative California Class pursuant to California law and all other relevant law. *See* Cal. Labor Code §350(a).

200. Under the California Private Attorneys General Act ("PAGA") of 2004, Cal. Labor Code §§ 2698-2699.5, an aggrieved employee, on behalf of himself or herself and other current or former employees as well as the general public, may bring a representative action as a private attorney general to recover penalties for an employer's violations of the California Labor Code and IWC Wage Orders. These civil penalties are in addition to any other relief available under the California Labor Code, and must be allocated 75% to California's Labor and Workforce Development Agency and 25% to the aggrieved employee. Cal. Labor Code § 2699.

201. Although misclassified as so-called members of an LLC, Plaintiff and the putative California Class are nonexempt employees entitled to be paid overtime compensation for all overtime hours worked, as defined above. *See* Cal. Labor Code § 350(b).

202. Defendants were, at all times relevant to this claim for relief, joint employers of Plaintiff and the putative California Class pursuant to California law and all other relevant law. *See* Cal. Labor Code §350(a).

203. Pursuant to Cal. Labor Code § 1198, Defendants' failure to pay proper compensation to Plaintiff and the putative California Class, failure to keep and furnish them with records of hours worked, failure to provide them with meal and rest breaks, misappropriation of tips, and failure to pay them all wages due immediately upon discharge and within the time required by law after their employment ended is unlawful and constitutes violations of the California Labor Code, each actionable under PAGA.

204. Plaintiff alleges, on behalf of herself and the putative California Class, as well as the general public, that Defendants have violated the following provisions of the California Labor Code and the following provisions of California Wage Orders that are actionable through the Cal. Labor Code and PAGA, as previously alleged herein: Cal. Wage Order No. 10-2001, Cal. Labor Code §§ 201-203, 510, 512, 1174, 1174.5, 1182.11, 1182.12, 1194. Each of these violations entitles Plaintiff, as a private attorney general, to recover the applicable statutory civil penalties on her own behalf, on behalf of all aggrieved employees, and on behalf of the general public.

205. Cal. Labor Code § 2699(a), which is part of PAGA, provides in pertinent part:

> Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3.

206. Cal. Labor Code § 2699(f), which is part of PAGA, provides in pertinent part:

207. Plaintiff is entitled to civil penalties to be paid by Defendants and allocated as PAGA requires, pursuant to Cal. Labor Code § 2699(a), for Defendants' violations of the California Labor Code and relevant IWC Wage Orders for which violations a civil penalty is already specifically provided by law. Further, Plaintiff is entitled to civil penalties to be paid by Defendants and allocated as PAGA requires, pursuant to § 2699(f) for Defendants' violations of the California Labor Code and IWC Wage Orders for which violations a civil penalty is not already specifically provided.

208. On March 21, 2017, Plaintiff Lauren Byrne provided written notice by certified mail and electronic submission to the California Labor & Workforce Development Agency ("LWDA") and to Defendants through their respective registered agents of the legal claims and theories of this case contemporaneously with the filing of the Complaint in this action. Plaintiff awaits a response from the LWDA with regard to whether it will investigate the actions in the aforementioned written notice. Accordingly, Plaintiff has taken necessary steps to exhaust her administrative remedies, and will amend her pleadings in connection with such exhaustion.

209. Under PAGA, Plaintiff and the State of California are entitled to recover the maximum civil penalties permitted by law for the violations of the California Labor Code and Wage Order No. 5 that are alleged in this Complaint.

# VIII.  JURY DEMAND

210.   Plaintiff hereby demands a jury trial on all causes of action and claims for relief with respect to which she and the putative Collective and California Class Action Members have a right to jury trial.

# IX.   DAMAGES AND PRAYER

211.   Plaintiff asks that the Court issue summonses for Defendants to appear and answer, and that Plaintiff and the Collective and California Class Action Members be awarded a judgment against Defendants or order(s) from the Court for the following:

a.   An order conditionally certifying this case as an FLSA collective action and requiring notice to be issued to all putative Collective Action Members;

b.   An order certifying that the California State Law Claims may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23;

c.   Designation of Lauren Byrne as a Representative of the California Class Action Members;

d.   Designation of attorneys Todd Slobin and Ricardo J. Prieto, of Shellist Lazarz Slobin, LLP, and Melinda Arbuckle, of Baron & Budd, P.C., as Class Counsel for the California Class Action Members;

e.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA and California State law;

f.   An injunction against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

g. An award of damages including all unpaid wages at the FLSA or state-mandated minimum wage rate, overtime compensation for all hours worked over forty in a workweek or, in California, over eight hours in a day and for the first eight hours worked on the seventh consecutive day of work in a workweek at the applicable time and one half rate, and at the relevant double time rate for hours worked over 12 in a given day and for all hours over eight worked on the seventh consecutive day of work in a workweek, and all misappropriated tips, liquidated damages, and restitution to be paid by Spearmint Rhino;

h. Appropriate statutory penalties;

i. Costs of action incurred herein, including expert fees;

j. Attorneys' fees, including fees pursuant to 29 U.S.C. § 216;

k. Pre-judgment and post-judgment interest, as provided by law;

l. Such other injunctive and equitable relief as the Court may deem just and proper.

DATED: March 21, 2017

Respectfully submitted,

By: s/Melinda Arbuckle
Melinda Arbuckle

**BARON & BUDD, P.C.**
Melinda Arbuckle (Cal. Bar No. 302723)
marbuckl@baronbudd.com
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-6506
Facsimile: (818) 986-9698

**SHELLIST | LAZARZ | SLOBIN LLP**
Todd Slobin (to be admitted *Pro Hac Vice*)
tslobin@eeoc.net

Ricardo J. Prieto (to be admitted *Pro Hac Vice*)
rprieto@eeoc.net
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
Facsimile: (713) 621-0993

*Counsel for Plaintiff, Lauren Byrne, and
Proposed Class and Collective Action
Members*