Todd Slobin (admitted *Pro Hac Vice*)
tslobin@eeoc.net
Ricardo J. Prieto (admitted *Pro Hac Vice*)
rprieto@eeoc.net
SHELLIST | LAZARZ | SLOBIN LLP
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
Facsimile: (713) 621-0993

Melinda Arbuckle (Cal. Bar No. 302723)
marbuckl@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-6506
Facsimile: (818) 986-9698

*Counsel for Plaintiff and Proposed Settlement Class Members*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION - RIVERSIDE

| | |
|---|---|
| LAUREN BYRNE, on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br>   v.<br><br>SANTA BARBARA HOSPITALITY SERVICES, INC., et al.,<br><br>     Defendants. | **Case No: 5:17-cv-00527 JGB (KKx)**<br><br>**NOTICE OF MOTION; UNOPPOSED MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM IN SUPPORT OF MOTION**<br><br>Date:     October 30, 2017<br>Time:     9:00 a.m.<br>Place:    Courtroom 1<br>Judge:   Hon. Jesus G. Bernal |

**PLEASE TAKE NOTICE THAT** on October 30, 2017, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1 of this Court, located at 3470 Twelfth Street; Riverside, California 92501-3801, Plaintiffs Lauren Byrne,

- 1-                                   Case No. 5:17-cv-00527 JGB (KKx)
Notice of Motion and Motion for Class Cert.
and Prelim. Approval of Settlement

Jenetta L. Bracy,[1] Bambie Bedford and Jennifer Disla ("Plaintiffs"), on behalf of themselves and all others similarly situated ("Class Members"), will, and hereby do, move this Court for the following relief with respect to their Final Settlement Agreement ("Settlement") – attached as Exhibit A, with Declarations of Todd Slobin (Exhibit B - "Slobin Decl."), Hunter J. Shkolnik (Exhibit C - "Shkolnik Decl."), and Paul B. Maslo (Exhibit D - "Maslo Decl.") in Support of Plaintiffs' Unopposed Motion for Class Certification and Preliminary Approval of Settlement with Intervenors Meghan Herrera, Danielle Hach, Alisa Osborne, Carlie Zufelt, Gena Torres, Regina Cabral, Sabrina Preciado, individually and on behalf of the Intervenor Class, and Defendants Santa Barbara Hospitality Services, Inc., The Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting Worldwide, Inc., Santa Barbara Hospitality Services, LLC, DG Hospitality Van Nuys, LLC, Rouge Gentlemen's Club, Inc., City of Industry Hospitality Venture, Inc., Farmdale Hospitality Services, Inc., High Expectations Hospitality, LLC, Inland Restaurant Venture I, Inc., Kentucky Hospitality Venture, LLC, L.C.M., LLC, Midnight Sun Enterprises, Inc., Nitelife, Inc., Olympic Avenue Venture, Inc., Wild Orchid, Inc., Rialto Pockets, Incorporated, Santa Barbara Hospitality Services, Inc., Santa Maria Restaurant Enterprises, Inc., Sarie's Lounge, LLC, The Oxnard Hospitality Services, Inc., Washington Management, LLC, World Class Venues, LLC, W. P. B. Hospitality, LLC, City of Industry Hospitality Venture, LLC, Farmdale Hospitality Services, LLC, High Expectations Hospitality Dallas,

---

[1] Plaintiff Jenetta L. Bracy is a settlement class representative.  However, she is not a named plaintiff in this case.  She is the named plaintiff in *Jenetta L. Bracy v. DG Hospitality Van Nuys, LLC, et al.*, Case No. 5:17-CV-00854 JGB (KKx).

- 2-                    Case No. 5:17-cv-00527 JGB (KKx)
Notice of Motion and Motion for Class Cert.
and Prelim. Approval of Settlement

LLC, Inland Restaurant Venture I, LLC, Kentucky Hospitality Venture Lexington, LLC, LCM1, LLC, Midnight Sun Enterprises, LLC, Nitelife Minneapolis, LLC, Olympic Avenue Ventures, LLC, Rialto Pockets, LLC, Santa Barbara Hospitality Services, LLC, Santa Maria Restaurant Enterprises, LLC, The Oxnard Hospitality Services, LLC, Washington Management Los Angeles, LLC, Wild Orchid Portland, LLC, World Class Venues Iowa, LLC, and W. P. B. Hospitality West Palm Beach, LLC, ("Spearmint Rhino" or "Defendants"):

1. That the Court certify the Settlement Classes;

2. That the Court appoint Plaintiffs as class representatives of the Settlement Classes;

3. That the Court appoint Plaintiffs' attorneys as Class Counsel (including counsel for Plaintiff Jenetta L. Bracy; *See* footnote 1, *supra*);

4. That the Court grant preliminary approval of the Settlement;

5. That the Court permit Plaintiffs to file the attached Second Amended Complaint (Ex. A at p. LB00089 – LB00205).;

6. That the Court approve mailing the proposed Class Notice to the Class Members;

7. That the Court appoint Kurtzman Carson Carlson, LLC, & Co as the Claims Administrator; and

8. That the Court schedule a hearing for final approval of the Settlement.

This Motion is made on the grounds that certification of the Settlement Classes is proper and that the Settlement is the product of arms'-length, good-faith

negotiations; is fair, reasonable, and adequate to the Class; and should be preliminarily approved. The Motion is based on this Notice; the Memorandum in Support; the Slobin, Shkolnik, and Maslo Declarations and the attached Settlement; the Court's record of this action; all matters of which the Court may take notice; and oral and documentary evidence presented at the hearing on the motion.

Dated:      October 4, 2017

Respectfully submitted,

By:    s/Melinda Arbuckle
       Melinda Arbuckle

**BARON & BUDD, P.C.**
Melinda Arbuckle (Cal. Bar No. 302723)
marbuckl@baronbudd.com
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-6506
Facsimile: (818) 986-9698

**SHELLIST | LAZARZ | SLOBIN LLP**
Todd Slobin (admitted *Pro Hac Vice*)
tslobin@eeoc.net
Ricardo J. Prieto (admitted *Pro Hac Vice*)
rprieto@eeoc.net
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
Facsimile: (713) 621-0993

*Counsel for Plaintiff and Proposed Settlement Class Members*

- 4-

Case No. 5:17-cv-00527 JGB (KKx)
Notice of Motion and Motion for Class Cert.
and Prelim. Approval of Settlement

Todd Slobin (admitted *Pro Hac Vice*)
tslobin@eeoc.net
Ricardo J. Prieto (admitted *Pro Hac Vice*)
rprieto@eeoc.net
SHELLIST | LAZARZ | SLOBIN LLP
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
Facsimile: (713) 621-0993

Melinda Arbuckle (Cal. Bar No. 302723)
marbuckl@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-6506
Facsimile: (818) 986-9698

*Counsel for Plaintiff, Lauren Byrne, and Proposed Class and Collective Action Members*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION - RIVERSIDE

| | |
|---|---|
| LAUREN BYRNE, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>SANTA BARBARA HOSPITALITY SERVICES, INC., et al.,<br><br>    Defendants. | **Case No: 5:17-cv-00527 JGB (KKx)**<br><br>**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Date:      October 30, 2017<br>Time:      9:00 a.m.<br>Place:     Courtroom 1<br>Judge:    Hon. Jesus G. Bernal |

- i -                    Case No. 5:17-cv-00527-JGB (KKx)
Memorandum ISO Motion for Class
Cert. and Prelim. Approval of Settlement

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ........................................................................................ ii

TABLE OF AUTHORITIES ............................................................................... iv

MEMORANDUM IN SUPPORT OF MOTION ...................................................1

I.     INTRODUCTION ........................................................................................1

II.    PROCEDURAL & FACTUAL BACKGROUND...................................3

     A.    The *Trauth* Action. ........................................................................3

          1.    The *Trauth* Settlement Agreement and Injunctive Relief..........4

          2.    Implementation of the *Trauth* Injunctive Relief.......................4

     B.    The 2017 Cases. .................................................................................6

          1.    The *Ortega* Action. ...................................................................6

          2.    The *Byrne* Action. ...................................................................7

          3.    The *Bracy* Action. ...................................................................8

          4.    The *Nelson* Action. ..................................................................9

          5.    The Intervenor Action. ...............................................................9

     C.    The Parties' Disputed Claims and Defenses .......................................11

III.   THE SETTLEMENT CLASSES..................................................................16

IV.   CLASS COUNSEL ......................................................................................18

V.    TERMS OF THE SETTLEMENT ..............................................................19

VI.   ARGUMENT................................................................................................24

     A.    Class Certification Is Appropriate....................................................24

          1.    The FLSA Collective Classes Meet Requirements for Certification. ..............................................................................25

- ii -        Case No. 5:17-cv-00527-JGB (KKx)

Memorandum ISO Motion for Class
Cert. and Prelim. Approval of Settlement

2. The Settlement Classes Meet Rule 23 Requirements for Certification. ...................................................29

   a. The Settlement Classes Are Numerous. .........................30

   b. Questions of Law and Fact Are Common to the Settlement Classes. ........................................30

   c. Plaintiffs' Claims and Defenses Are Typical of the Settlement Class.................................32

   d. Plaintiffs Fairly and Adequately Represent the Class.............................................32

   e. Common Questions Predominate and a Class Action Is Superior for Adjudicating Claims.................34

3. Appointment of Class Counsel Is Appropriate. ........................35

VII. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE........36

VIII. THE PROPOSED NOTICE AND OTHER PROCEDURES ARE REASONABLE ...........................................41

   1. Class Notice. ...................................................41

   2. Request for Exclusion. ..........................................43

   3. Objections to Settlement. .......................................43

   4. Request for Leave to Amend Complaint ...........................44

IX. CONCLUSION.................................................44

- iii -                           Case No. 5:17-cv-00527-JGB (KKx)
                                  Memorandum ISO Motion for Class
                                  Cert. and Prelim. Approval of Settlement

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Inter-Con Sec. Sys., Inc.,*
   242 F.R.D. 530 (N.D. Cal. 2007)...............................................................28

*Bell v. Consumer Cellular Inc.,*
   No. 3:15-cv-941-SI, 2017 WL 2672073 (D. Or. June 21, 2017) ......................39

*Bellinghausen v. Tractor Supply Co.,*
   306 F.R.D. 245 (N.D. Cal. 2015)...............................................................38

*Bias v. Wells Fargo & Co.,*
   312 F.R.D. 528 (N.D. Cal. 2015)...............................................................31

*Boyd v. Bank of Am. Corp.,*
   300 F.R.D. 431 (C.D. Cal. 2014).............................................................30, 34

*Brown v. Am. Airlines, Inc.,*
   285 F.R.D. 546 (C.D. Cal. 2011)...............................................................32

*Carter v. Anderson Merch., LP,*
   No. EDCV 08-000225-VAP, 2010 WL 144067 (C.D. Cal. Jan. 7,
   2010) ...............................................................................................37

*Churchill Village, L.L.C. v. Gen. Elec.,*
   361 F.3d 566 (9th Cir. 2004) ...................................................................41

*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992) .................................................................24

*Dudum v. Carter's Retail, Inc.,*
   No. 14-CV-00988-HSG, 2016 WL 946008 (N.D. Cal. Mar. 14,
   2016) ...............................................................................................33

*Dukes v. Wal-Mart Stores, Inc.,*
   603 F.3d 571 (9th Cir. 2010) ...................................................................31

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974).............................................................................41

*Epic Sys. Corp. v. Lewis,*
   137 S. Ct. 809 (U.S. Jan. 13, 2017) (No. 16-285) ........................................7, 13

*Ernst & Young LLP v. Morris*
    137 S. Ct. 809 (U.S. Jan. 13, 2017) (No. 16-300) ......................................7, 8, 13

*Fernandez v. Victoria Secret Stores, LLC*,
    No. CV 06-04149, 2008 WL 8150856 (C.D. Cal. July 21, 2008)......................38

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................31, 32, 33, 34

*Hansberry v. Lee*,
    311 U.S. 32 (1940)..........................................................................................32

*In re Heritage Bond Litig.*,
    No. 02-ML-1475 DT 2005 WL 1594403 (C.D. Cal. June 10, 2005)................41

*Hess v. Madera Honda Suzuki*,
    No. 1:10-cv-01821-AWI-BAM, 2012 WL 4052002 (E.D. Cal.
    Sept. 14 2012) ..................................................................................................6

*Jenetta L. Bracy v. DG Hospitality Van Nuys, LLC, et al.*,
    Case No. 5:17-CV-00854 JGB ..................................................................1, 8, 9

*Johnson v. Q.E.D. Envtl. Sys. Inc.*,
    No. 16-cv-01454-WHO, 2017 WL 1685099 (N.D. Cal. May 3,
    2017) ..............................................................................................................25

*Keilholtz v. Lennox Hearth Prods. Inc.*,
    268 F.R.D. 330 (N.D. Cal. 2010)....................................................................26

*Khadera v. ABM Indus. Inc.*,
    No. C08-0417 RSM, 2011 WL 7064234 (W.D. Wash. Dec. 1,
    2011) ..............................................................................................................27

*Leuthold v. Destination Am., Inc.*,
    224 F.R.D. 462 (N.D. Cal. 2004)....................................................................25

*Lewis v. Epic Sys. Corp.*,
    823 F.3d 1147 (7th Cir. 2016) ....................................................................7, 13

*Lewis v. Wells Fargo & Co.*,
    669 F. Supp. 2d 1124 (N.D. Cal. 2009)..........................................................29

*Linney v. Cellular Alaska P'ship*,
    No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997) ..................41

- v -    Case No. 5:17-cv-00527-JGB (KKx)
Memorandum ISO Motion for Class
Cert. and Prelim. Approval of Settlement

*Misra v. Decision One Mortgage Co., LLC*,
    673 F. Supp. 2d 987 (C.D. Cal 2008) .....................................................25, 26, 37

*Morris v. Ernst & Young LLP*,
    834 F.3d 975 (9th Cir. 2016) ...............................................................7, 8, 13

*Murphy Oil USA, Inc. v. N.L.R.B.*,
    808 F.3d 1013 (5th Cir. 2015) ..................................................................7, 13

*Nat'l Rural Tel. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004).....................................................................36

*N.L.R.B. v. Murphy Oil USA, Inc.*,
    137 S. Ct. 809 (U.S. Jan. 13, 2017) (No. 16-307) ........................................7, 13

*In re Omnivision Techs, Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008)...........................................................40

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ...........................................................................41

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .........................................................................38

*Sanchez v. Sephora USA, Inc.*
    No. 11-03396 SBA 2012 WL 2945753 (N.D. Cal. July 18, 2012) ..................25

*Sandoval v. M1 Auto Collisions Ctrs.*,
    No. 13-cv-03239, 2016 WL 6561580 (N.D. Cal. Sept. 23, 2016) ....................27

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ........................................................24, 30, 32, 36

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007)...........................................................37

*Thiessen v. Gen. Elec. Capital Corp.*,
    267 F.3d 1095 (10th Cir. 2001) ......................................................................26

*Trauth v. Spearmint Rhino Consulting Worldwide, Inc., et al.*,
    Case No. EDCV09-1316 VAP ................................................................*passim*

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995)..................................................................38

- vi -    Case No. 5:17-cv-00527-JGB (KKx)
Memorandum ISO Motion for Class
Cert. and Prelim. Approval of Settlement

*Vandervort v. Balboa Capital Corp.*,
    8 F. Supp. 3d 1200 (C.D. Cal. 2014) ...................................................40

*Vasquez v. Coast Valley Roofing, Inc.*,
    266 F.R.D. 482 (E.D. Cal. 2010) ........................................................40

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ...........................................................40

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ..........................................................................31

*Yokoyama v. Midland Nat'l. Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) ...........................................................31

*Zaborowski v. MHN Gov't Servs., Inc.*,
    No. C 12-05109 SI, 2013 WL 1787154 (N.D. Cal. Apr. 25, 2013) ..................29

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ...........................................................35

**Statutes, Regulations, and Rules**

Class Action Fairness Act, 28 U.S.C. § 1715 .........................................................44

California Private Attorney General Act, Cal. Lab. Code § 2699 ...................*passim*

Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ............................................*passim*

Federal Arbitration Act, 9 U.S.C. §§ 1-16 .................................................................7

National Labor Relations Act, 29 U.S.C. §§ 151-169 ................................................7

29 C.F.R. § 531 ...........................................................................................................14

Federal Rule of Civil Procedure 23 .................................................................*passim*

Case No. 5:17-cv-00527-JGB (KKx)
Memorandum ISO Motion for Class
Cert. and Prelim. Approval of Settlement

## MEMORANDUM IN SUPPORT OF MOTION

## I.      INTRODUCTION

After significant investigation, discovery, litigation, and extensive mediation and negotiations, Plaintiffs Lauren Byrne, Jenetta Bracy,[2] Bambie Bedford, and Jennifer Disla ("Plaintiffs"), on behalf of themselves and approximately ten thousand (10,000) similarly situated exotic dancers at Spearmint Rhino locations across the country as well as Dames n' Games and Blue Zebra locations in California ("Class Members"), and with Intervenors Meghan Herrera, Danielle Hach, Alisa Osborne, Carlie Zufelt, Gena Torres, Regina Cabral, Sabrina Preciado, individually and on behalf of the Intervenor Class, and Defendants Santa Barbara Hospitality Services, Inc., The Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting Worldwide, Inc., Santa Barbara Hospitality Services, LLC, DG Hospitality Van Nuys, LLC, Rouge Gentlemen's Club, Inc., City of Industry Hospitality Venture, Inc., Farmdale Hospitality Services, Inc., High Expectations Hospitality, LLC, Inland Restaurant Venture I, Inc., Kentucky Hospitality Venture, LLC, L.C.M., LLC, Midnight Sun Enterprises, Inc., Nitelife, Inc., Olympic Avenue Venture, Inc., Wild Orchid, Inc., Rialto Pockets, Incorporated, Santa Barbara Hospitality Services, Inc., Santa Maria Restaurant Enterprises, Inc., Sarie's Lounge, LLC, The Oxnard Hospitality Services, Inc., Washington Management, LLC, World Class Venues, LLC, W P B Hospitality, LLC, City of Industry Hospitality Venture, LLC, Farmdale Hospitality Services,

---

[2] Plaintiff Jenetta L. Bracy is a settlement class representative.  However, she is not a named plaintiff in this case.  She is the named plaintiff in *Jenetta L. Bracy v. DG Hospitality Van Nuys, LLC, et al.*, Case No. 5:17-CV-00854 JGB (KKx).

LLC, High Expectations Hospitality Dallas, LLC, Inland Restaurant Venture I, LLC, Kentucky Hospitality Venture Lexington, LLC, LCM1, LLC, Midnight Sun Enterprises, LLC, Nitelife Minneapolis, LLC, Olympic Avenue Ventures, LLC, Rialto Pockets, LLC, Santa Barbara Hospitality Services, LLC, Santa Maria Restaurant Enterprises, LLC, The Oxnard Hospitality Services, LLC, Washington Management Los Angeles, LLC, Wild Orchid Portland, LLC, World Class Venues Iowa, LLC, and WPB Hospitality West Palm Beach, LLC, ("Spearmint Rhino" or "Defendants") (collectively, the "Parties"), negotiated an Eight Million Five Hundred Thousand Dollars And Zero Cents ($8,500,000.00) common fund settlement of this litigation. The terms of the proposed settlement are set forth in the Class Action Settlement Agreement ("Settlement"), attached as Exhibit A. The Parties' aforementioned settlement follows a mediation and significant negotiations post-mediation facilitated by the Honorable Robert T. Altman, a retired judge and well-respected and experienced mediator for class actions and civil litigation, including wage and hour cases like this one.

The proposed settlement classes – which include nationwide collective classes under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and state classes under Federal Rule of Civil Procedure 23 ("Rule 23") – meet the applicable requirements for conditional collective and class certification under the FLSA and Rule 23 for purposes of settlement. The Settlement is the product of arms'-length negotiations between the Parties and is fair and adequate, making preliminary approval of the Settlement appropriate. (*See* Ex. B Slobin Decl. at ¶17, Ex. C Shkolnik Decl. at ¶20, and Ex. D Maslo Decl. at ¶23). The Notice to be sent

- 2 -

Case No. 5:17-cv-00527-JGB (KKx)
Memorandum ISO Motion for Class
Cert. and Prelim. Approval of Settlement

to the Class Members provides them with the best notice practicable under the circumstances and will allow each class member a full and fair opportunity to evaluate the Settlement and decide whether to participate. (*See* Ex. B Slobin Decl. at ¶18, Ex. C Shkolnik Decl. at ¶21, and Ex. D Maslo Decl. at ¶24).

The Settlement is fair, reasonable and adequate, and should be preliminarily approved. (*See* Ex. B Slobin Decl. at ¶19, Ex. C Shkolnik Decl. at ¶22, and Ex. D Maslo Decl. at ¶25). Accordingly, this Court should certify the settlement classes, grant preliminary approval of the Settlement, approve the form and proposed manner of distribution of the Notice, and schedule a hearing for final approval of the Settlement consistent with the time frame set forth in the Proposed Scheduling Order.

## II.  PROCEDURAL & FACTUAL BACKGROUND

### A.  The *Trauth* Action.

On July 13, 2009, an action entitled *Trauth v. Spearmint Rhino Consulting Worldwide, Inc., et al.*, Case No. EDCV09-1316 VAP (DTBx) was filed in the United States District Court for the Central District of California. The *Trauth* Action alleged that persons who performed as entertainers at the adult cabarets known as Spearmint Rhino nationwide should have been treated as employees rather than independent contractors, and as a result were entitled to, but did not receive, adequate compensation and benefits in exchange for the services they provided to the Spearmint Rhino nightclubs.

### 1. The *Trauth* Settlement Agreement and Injunctive Relief.

On May 17, 2010, the parties to the *Trauth Action* entered into an Amended and Restated Stipulation and Settlement Agreement, for which final approval was granted by the Honorable Virginia A. Phillips. Pursuant to the *Trauth* Settlement Agreement, the parties agreed to the *Trauth* Injunctive Relief requiring the nightclubs at that time to commence treating entertainers as either employees or owners (e.g., shareholder, limited partner, partner, member, or other type of ownership stake) within six months of the Effective Date of the *Trauth* Settlement Agreement.

### 2. Implementation of the *Trauth* Injunctive Relief

The defendants in *Trauth* then implemented the *Trauth* Injunctive Relief to apply to all of the night clubs existing and operating at that time. That injunctive relief was also implemented at any clubs acquired after the *Trauth* Settlement Agreement and continues to be implemented at licensed clubs acquired up to the present time. In particular, the *Trauth* defendants established and created policies and procedures that provided entertainers with a choice to be employees or members of an LLC. Significant written materials were created and provided to each current and new entertainer to make an election. At any time, an entertainer can choose to switch her chosen classification without any negative response on the part of the night clubs. In particular, before an entertainer is or was permitted to perform at a night club, they are and were provided with an option of whether to apply to be an employee of the club or whether to apply to be an LLC Member. Each entertainer is and was then presented with a document entitled "Notice to Entertainer of Opportunity for Employment or Participation as Member (Summary

Guidelines)" ("Application Notice"). When the process was first initiated, the Application Notices, applications, and accompanying agreements were provided to entertainers in paper format for review and acceptance. Thereafter, to make documents more accessible and to prevent lost or misplaced documents, the system was changed to an electronic contract system that also incorporated the Docusign, Inc. electronic document, electronic contract and electronic signature digital transaction management system. Pursuant to this system, entertainers could review and accept agreements via an interface presented in a web browser on a computing device such as an iPad. The contracting system first requires each prospective entertainer to enter identifying autobiographical information to establish an account, and after such entry, the entertainer logs into the system with their unique credentials and is provided with the Application Notice. The Application Notice requires the entertainer to scroll down through the interface as she reads the document and to acknowledge that the entertainer has reviewed the Application Notice and had adequate time to consider it and to seek the advice of an attorney or financial advisor before electing to be an employee or an LLC Member.

Thus, after ensuring review of the Application Notice, two options are available in the application interface from which an applying entertainer may then select (but only after her initial review). The first option, entitled "Choose employment," indicates that the entertainer desires to apply for employment with the club as an employee by clicking on such option. The second option, entitled "Choose LLC Membership," indicates that the entertainer does not desire to form an employee/employer relationship and instead, requests that she apply to become

an Owner and LLC Member by toggling that option. As part of both options, each entertainer agrees to binding arbitration of any and all claims and also waives any right to bring a class or collection action (which waiver must be consistent with the law of the state in which the entertainer performs).

**B.** **The 2017 Cases.**

      **1.** **The *Ortega* Action.**

On February 3, 2017, the case of *Adriana Ortega v. The Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting Worldwide, Inc. and Midnight Sun Enterprises, LLC* was filed in the United States District Court for the Central District of California, Eastern Division; Case No. 5:17-cv-00206-JGB-KK. On April 14, 2017, Plaintiff Adriana Ortega filed a first amended complaint adding PAGA claims. Plaintiff Ortega purports to represent a California class of entertainers for alleged violations of the FLSA including alleged misclassification as independent contractors[3] and other claims and has recently indicated an intent to expand the putative class to a "national class." (*Ortega* Ct. Dkt. #48 – June 12, 2017 Minutes Order). The Ortega Action is also pending before the Honorable Jesus G. Bernal. On June 12, 2017, the Court ruled on three motions pending in the *Ortega* Action: (1) Plaintiff's motion for class notice to entertainers classified as 1099 independent contractors pursuant to 29 U.S.C. § 216(b) (*Ortega* Ct. Dkt. #16); (2) Defendants' motion to compel arbitration pursuant to a written arbitration

---

[3] This is significantly different from the allegations in this case. In an independent contractor wage case, the threshold legal issue is whether an individual is an employee or an independent contractor. In contrast, in this case, the threshold legal issue is whether an individual is an employee or an owner/employer. *See, e.g., Hess v. Madera Honda Suzuki*, No. 1:10-cv-01821-AWI-BAM, 2012 WL 4052002, *3-10 (E.D. Cal. Sept. 14 2012).

- 6 -      Case No. 5:17-cv-00527-JGB (KKx)
Memorandum ISO Motion for Class
Cert. and Prelim. Approval of Settlement

agreement (*Ortega* Ct. Dkt. #18); and (3) Defendants' motion to stay the action (*Ortega* Ct. Dkt. #21) pending a ruling from the United States Supreme Court ("SCOTUS") on the validity of class action waivers in *Morris*.[4] In particular, the Court in the *Ortega* Action ruled as follows:

> As the above discussion makes clear, the Supreme Court's decision in *Morris* will control the outcome of this case: if the Supreme Court affirms the Ninth Circuit's decision, Plaintiff will likely be able to move forward on her collective action claims in this Court; if it issues a reversal, Plaintiff will be bound by the [Arbitration] Agreement and required to individually arbitrate her claims. Given the centrality of *Morris* to the outcome here, the Court finds that a stay–at least in some form–may be appropriate to allow for resolution on the question of whether the arbitration agreement is enforceable despite its bar on collective action.

(*Ortega* Ct. Dkt. #48 at p. 14.). In its conclusion, the *Ortega* Court denied the defendants' motion to compel arbitration pending a decision by the Supreme Court in *Morris*; denied the plaintiff's motion for conditional certification but granted, in part, the defendant's motion to stay. (*Ortega* Ct. Dkt. #48 at p. 14.).

### 2.   The *Byrne* Action.

On March 21, 2017, the case of *Lauren Byrne v. Santa Barbara Hospitality, Inc., The Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting Worldwide, Inc. and Santa Barbara Hospitality Services, LLC* was filed

---

[4] In *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147 (7th Cir. 2016), *cert. granted*, 137 S. Ct. 809 (U.S. Jan. 13, 2017) (No. 16-285); *Morris v. Ernst & Young LLP*, 834 F.3d 975 (9th Cir. 2016), *cert. granted*, 137 S. Ct. 809 (U.S. Jan. 13, 2017) (No. 16-300), *Murphy Oil USA, Inc. v. N.L.R.B.*, 808 F.3d 1013 (5th Cir. 2015), *cert. granted*, 137 S. Ct. 809 (U.S. Jan. 13, 2017) (No. 16-307) (collectively referred to herein as "Morris"), the United States Supreme Court granted certiorari on the question of: "Whether an agreement that requires an employer and an employee to resolve employment-related disputes through individual arbitration, and waive class and collective proceedings, is enforceable under the Federal Arbitration Act, notwithstanding the provisions of the National Labor Relations Act."

in the United States District Court for the Central District of California, Case No. 5:17-cv-00527-SVW-SP. Plaintiff Byrne purports to represent a nationwide class of entertainers for alleged violations of the FLSA and other claims. Jennifer Diaz, Bianca Haney, Bambie Bedford, Cynthia Garza, Brooke Richart, Jennifer Disla, and Carmen Ramos "opted in" to the *Byrne* Action. (*Byrne* Ct. Dkt. #28, 30, 33, 56, 59.) On May 10, 2017, Judge Bernal deemed the *Byrne* Action "related" to the *Ortega* Action and the *Byrne* Action was transferred to Judge Bernal. (*Byrne* Ct. Dkt. #38.) In *Byrne*, the Defendants filed a motion to stay based upon *Morris* and Plaintiff filed a motion for class notice. The parties stipulated to continue the hearing dates on those motions to November 13, 2017. On August 29, 2017, the Court granted Intervenors the right to intervene. (*Byrne* Ct. Dkt. #61.) On September 6, 2017, the Intervenors filed a Complaint in Intervention. (*Byrne* Ct. Dkt. #62.). Plaintiffs in this case were the first from all the active lawsuits against Defendants alleging wage violations to perfect their PAGA claims. (*See Byrne* Ct. Dkt. # 42 at ¶206).

### 3.    The *Bracy* Action.

On May 3, 2017, the case of *Jenetta L. Bracy v. DG Hospitality Van Nuys, LLC; The Spearmint Rhino Companies Worldwide, Inc.; Spearmint Rhino Consulting Worldwide, Inc.; Dames N' Games; John Does #1-10; and XYZ Corporations #1-10* was filed in the United States District Court for the Central District of California, Case No. 5:17-cv-00854. Plaintiff Bracy purports to represent a nationwide class of entertainers for alleged violations of the FLSA. In the interim, Houston Isabella "opted in" to the *Bracy* Action. (*Bracy* Ct. Dkt. #23).

On July 24, 2017, the *Bracy* Action was transferred to Judge Bernal for all purposes. The Court entered a stipulation to stay the *Bracy* Action until October 31, 2017. (*Bracy* Ct. Dkt. #42).

### 4.    The *Nelson* Action.

On August 15, 2017, the case of *Shala Nelson v. Farmdale Hospitality Services, LLC, dba Blue Zebra Gentleman's Club; Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting, and DOES 1-20,* was filed in the Los Angeles Superior Court, Case No. BC671852. Plaintiff Nelson purports to represent a California class of entertainers for alleged violations of the Private Attorney General Act ("PAGA") and claims that entertainers who chose to be LLC Members are misclassified. Plaintiff Nelson, who was previously offered to apply as an employee entertainer but DECLINED multiple times, and who was a current LLC Member when she sent a PAGA notice to defendants, was again offered the choice to be an employee after defendants responded to the PAGA notice. On July 25, 2017, she provided written notice that she refused to change her status to employee "because doing so would be detrimental to her earning capacity."

### 5.    The Intervenor Action.

In their respective investigations into the matters pertaining to the Actions, Class Counsel, Intervenor Counsel, and Defendants' Counsel interviewed and spoke with numerous former and present entertainers, who would be Class Members under this Agreement. The current entertainers were offered the opportunity to apply to be employees or to continue to perform as LLC Members and/or Owners, pursuant to the *Trauth* Injunctive Relief. As a result of these

- 9 -

Case No. 5:17-cv-00527-JGB (KKx)
Memorandum ISO Motion for Class
Cert. and Prelim. Approval of Settlement

discussions, Class Counsel, Intervenors' Counsel, and Defendants' Counsel became aware that some of the entertainers who continue to perform at the Existing Clubs oppose, like Plaintiff Nelson, for a variety of reasons working in the Existing Clubs as employees (including, but not limited to the fact they do not desire to be subject to the type of control that the Clubs could exercise of employees; they do not want to be required to meet the financial, time, and performance expectations that would come from working as employees; they prefer the tax benefits of performing as LLC Members and/or Owners; and they want the flexibility of performing as LLC Members and/or Owners). Thus, a number of the LLC Members formed a group as the Intervenor Class and hired Intervenor Counsel to represent their interests in the Actions.

Plaintiffs, however, do contend that the LLC agreements could be improved and Plaintiffs' Counsel has articulated proposed changes to the LLC agreements that the Plaintiffs and members of the Intervenor Class believe and indicate would improve the Intervenors' status as LLC Members and/or Owners and they seek injunctive relief in this Action to obtain that relief. Thus, in the resolution of the Actions, Plaintiffs and the Intervenor Class seek not conversion to employment status, but rather, to require and obtain changes to the LLC agreements, enforceable as injunctive relief through the Court, and to preserve, protect and enhance their business arrangements with the Existing Clubs as LLC Members pursuant to a revised LLC agreement. On behalf of the Intervenor Class, Intervenor Counsel sought leave to file a complaint on behalf of the Intervenors, which motion for leave the Court granted on August 29, 2017. The Court ruled:

Dancers Intervenors have a 'significant protectable interest' in this case. First, Dancer Intervenors have an interest in preserving their ownership status in the LLC. The ownership status Dancer Intervenors seek to protect is derived from the terms of their individual Membership Agreements. The Membership Agreements constitute contracts to which contract law is applicable. Thus, the ownership interests of Dancer Intervenors are 'protectable under some law' – specifically contract law. Second, there is a relationship between Dancer Intervenors' interest in preserving their ownership status in the LLC and the claims at issue in [Plaintiff's First Amended Complaint] . . . Because the outcome of this action may affect Dancer Intervenors' contractual classification as LLC Members and Owners, the relationship requirement is met.

(*Byrne* Ct. Dkt. # 61). Finally, the Court ruled that neither Plaintiffs nor Defendants are able to adequately represent the interests of the Dancer Intervenors and they must be allowed to intervene to protect their interests as LLC Members. (*Id.*).

## C.   The Parties' Disputed Claims and Defenses

Plaintiffs contend that Defendants involve their exotic dancers in a series of illusory contractual engagements to give the appearance that the exotic dancers are "members" of the limited liability company formed subsequent to Chief Judge Phillips's order. Plaintiffs allege that the agreements exotic dancers are forced to sign upon being hired with Spearmint Rhino cannot change the reality that nothing has changed in Spearmint Rhino's operations. Defendants use many (if not most) of the same kinds of documents, policies, and procedures found to create an employer/employee relationship in other exotic dancer cases with respect to Plaintiffs and Spearmint Rhino's other exotic dancers. Plaintiffs allege that the exotic dancers at Defendants' establishments do not have any real decision-making authority, do not share equitably in the profitability of Spearmint Rhino, and do not

have the right to control Spearmint Rhino management. In short, Plaintiffs allege that they are not owners of Spearmint Rhino in any demonstrable sense.

Plaintiffs contend that the exotic dancers remain economically dependent and under the complete control and direction of Defendants, but are paid no wages in connection with that work. Plaintiffs are still clearly integral to Defendants' business, since without the exotic dancers there would be no gentlemen's clubs. And finally, Plaintiffs still generate revenue for Spearmint Rhino, as they are still required to share the tips that they earn with Spearmint Rhino, and are otherwise treated as employees of Spearmint Rhino in all relevant respects as before.

Plaintiffs contend that the totality of the circumstances surrounding the relationship between Defendants and their exotic dancer employees establishes economic dependence by the exotic dancers on Defendants, and thus employee status. As a matter of economic reality, Plaintiffs and the putative Class Members are not in business for themselves, nor truly independent, but rather are economically dependent upon finding employment through Spearmint Rhino. Plaintiffs and the putative Class Members are not engaged in occupations or business distinct from that of Defendants, in fact, their work is the basis of Defendants' business. Defendants' business operation is to obtain the customers who desire the exotic dance entertainment and provide the workers who conduct the dance services on behalf of Defendants.

Defendants have asserted and continue to assert that they have substantial defenses to the Claims brought by Plaintiffs. Plaintiffs, for their part, dispute the

validity of the defenses; and the Intervenor Class takes a position that the status as Owners and LLC Members is valid and enforceable.

Defendants contend, and Plaintiffs acknowledge as risk factors, the following allegations:

Plaintiffs have executed Limited Liability Company Operating Agreements that contain potentially legally valid and binding arbitration clauses and provisions, which include comprehensive waivers of class and collective action proceedings. There is substantial risk faced by all Parties that class action waivers will either be validated or invalidated by the United States Supreme Court in *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147 (7th Cir. 2016), *cert. granted*, 137 S. Ct. 809 (U.S. Jan. 13, 2017) (No. 16-285), *Morris v. Ernst & Young LLP*, 834 F.3d 975 (9th Cir. 2016), *cert. granted*, 137 S. Ct. 809 (U.S. Jan. 13, 2017) (No. 16-300), and *Murphy Oil USA, Inc. v. N.L.R.B.*, 808 F.3d 1013 (5th Cir. 2015), *cert. granted*, 137 S. Ct. 809 (U.S. Jan. 13, 2017) (No. 16-307) (collectively, *Morris*); for which oral argument took place on October 2, 2017 and the parties are awaiting a ruling which will have sweeping effect (one way or the other) on litigation of this nature, particularly where, as in the related *Ortega* case the Court has already ruled that the arbitration agreements/class waivers will be governed by whatever ruling is made by the United States Supreme Court in *Morris*.

There is risk based upon the fact that Defendants implemented the injunctive relief ordered by Judge Virginia Phillips in *Trauth v. Spearmint Rhino Consulting Worldwide, Inc., et al.*, Case No. EDCV09-1316 and allowed the entertainers to choose to be employees or owners. The Intervenor Class chooses to continue to be

Owners and LLC Members and Class Counsel and Defendants' Counsel have agreed to modify the LLC agreements according to the interests of the Intervenor Class. Class Members will continue to be presented the option to perform as employees and should they wish to do so, they may apply to be reclassified and treated as employees without any negative treatment.

Defendants' policies and practices with respect to permitting the entertainers at the Existing Clubs to be LLC Members and Owners are as required by the settlement approved by the Court in *Trauth*, and legally enforceable, subject to injunctive modifications requested by Plaintiffs and the Intervenor Class.

Defendants contend that entertainers can earn more as Owners and LLC Members than they would as employees. In particular, based upon current law, Defendants contend that payments already made to Class Members could be used to offset any claims for unpaid wages. There is case law, federal regulations and formal administrative hearings supporting the position that dance fees are not "tips," but are "service charges."[5] Following *Trauth*, Defendants reorganized their business operations and specifically how the entertainers are compensated. In addition, there have been a variety of rulings from the Internal Revenue Service ("IRS") and the DOL that Defendants believe support their position that monies

---

[5] Under Department of Labor ("DOL") regulations implementing the FLSA, a "tip" is "a sum presented by a customer as a gift or gratuity in recognition of some service performed for him." 29 C.F.R. § 531.52. By contrast, a "service charge" is a "compulsory charge for service ... imposed on a customer by an employer's establishment." 29 C.F.R. § 531.55(a). The DOL's regulations provide that "service charges and other similar sums which become part of the employer's gross receipts are not tips for the purposes of the Act. Where such sums are distributed by the employer to its employees, however, they may be used in their entirety to satisfy the monetary requirements of the Act." 29 C.F.R. § 531.55(b).

paid to entertainers and collected from customers by the Existing Clubs, were, in fact, "service charges" and not tip income, which could then be used under applicable law, to satisfy any minimum wage obligations found to be due if Class Members were ultimately found to be have been employees. Those rulings include FLSA 2005-31, 2005 WL 3308602 (DOL Wage-Hour); WH-305, 1975 WL 40930 (DOL Wage-Hour); WH-386, 1976 WL 41739 (DOL Wage-Hour); Rev. Ruling 77-290; Rev. Ruling 59-252; Rev. Ruling 58-220; and Rev. Ruling 515. None of the formal rulings identified above have been abrogated by the IRS or the DOL. Accordingly, the Parties acknowledge that there exists in this Action an unresolved legal issue as to whether any Class Members (if actually found to have been misclassified) would be entitled to any wages, remuneration, damages, or other compensation or penalties, even if they were found to have been employees of the Clubs; the outcome of which misclassification issue remains in doubt in light of the Intervenor Class. Therefore, Defendants contend that it is likely that Class Members earned far more than minimum wage, exclusive of tips, while performing at the Existing clubs, which consideration would negate any claims for monetary remuneration in any form, damages or other penalties. The Clubs provide entertainers with K1 statements, and the Defendants take the position that such income identified on the K1 statements could more than satisfy any minimum wages obligations found to be due and owing.

Finally, Defendants contend that having sought to implement the *Trauth* Injunctive Relief, a finding of "willfulness" and therefore entitlement to liquidated damages or other penalties and an extended statute of limitations would be difficult

to sustain because, among other reasons, the Existing Clubs appear to have implemented the *Trauth* Injunctive Relief in "good faith" – allowing entertainers to choose to be employees or Owners (as LLC Members).

In light of the above competing considerations, Class Counsel, Defendants' Counsel and Intervenor Counsel engaged in extensive arms-length negotiations to protect the *Trauth* Injunctive Relief as well as the rights of any Class Members who want to be employees and to protect the rights of the Intervenor Class to have their status as LLC Members and/or Owners protected by this Court; all with a view toward achieving substantial benefits for each Class Member and each Intervenor Class Member and to comprehensively address their divergent interests, expectations and goals, while at the same time avoiding the cost, delay and risk and uncertainty of further litigation, trials and appellate review.

Thus, in late July 2017, the Parties engaged in a private mediation at ADR Services in Los Angeles, California before the Honorable Robert Altman (retired). Following that mediation, and a number of continuing telephonic negotiations, with the assistance of the Mediator, the Parties reached an agreement which provides for substantial consideration to be provided to Class Members, as set forth in the settlement agreement (Exhibit A), and provides the Intervenor Class with injunctive relief designed to improve and enhance their status as LCC Members and Owners and their corresponding working conditions at the Existing Clubs. (*Id.*).

## III.   <u>THE SETTLEMENT CLASSES</u>

The Parties have agreed to certification under the FLSA and Rule 23 for settlement purposes. (*See* Ex. B Slobin Decl. at ¶20, Ex. C. Shkolnik Decl. at ¶23, and Ex. D Maslo Decl. at ¶26). The alleged policies and practices of Spearmint Rhino were sufficiently widespread and uniform that exotic dancers across the classes and collectives experienced similar treatment with regard to wage-and-hour violations as defined by state and/or federal laws. The Settlement therefore allocates payment to Class Members according to a formula based on applicable statutory time limits and individual Dance Day calculations as opposed to the individual claims. (*See* Ex. B Slobin Decl. at ¶21, Ex. C Shkolnik Decl. ¶24, and Ex. D Maslo Decl. at ¶27). Given this arrangement, the settlement classes are defined as follows:

The FLSA Collective:

The FLSA Settlement Class shall consist of entertainers who are members of the California, Idaho, Iowa, Florida, Kentucky, Minnesota, Oregon and Texas Settlement Classes who elect to participate in the Settlement by timely submitting a valid Claim Form and who performed at one or more of Defendants' Clubs as entertainers and in conjunction therewith have provided nude, semi-nude and/or bikini entertainment for customers at the Clubs during the FLSA statutory class period. (*See* Ex. B Slobin Decl. at ¶22, Ex. C Shkolnik Decl. at ¶25, and Ex. D Maslo Decl. at ¶28).

The State Law Classes:

These Rule 23 classes shall be comprised of individual state classes under the laws of California, Idaho, Iowa, Florida, Kentucky, Minnesota, Oregon and Texas.

PAGA:

The settlement resolves claims brought under California Labor Code Section 2699 known as the California Private Attorney General Act ("PAGA"). Sums, as set forth in the settlement agreement, shall be allocated for PAGA. (*See* Ex. B Slobin Decl. at ¶24, Ex. C Shkolnik Decl. at ¶27, and Ex. D Maslo Decl. at ¶30).

The Settlement resolves the claims of all exotic dancers employed by Spearmint Rhino as set forth in the aforementioned settlement classes. These employees are readily and individually identifiable from Spearmint Rhino's records. (*See* Ex. B Slobin Decl. at ¶23, Ex. C Shkolnik Decl. at ¶26, and Ex. D Maslo Decl. at ¶29).

## IV.   CLASS COUNSEL

Plaintiffs in this matter are represented by Todd Slobin, Esq. and Ricardo J. Prieto, Esq., of Shellist Lazarz Slobin, LLP (as lead class counsel); Jennifer Liakos, Esq., Salvatore C. Badala, Esq., Paul B. Maslo, Esq., and Hunter J. Shkolnik, Esq. of Napoli Shkolnik PLLC; and Melinda Arbuckle, Esq. of Baron & Budd, P.C., (collectively "Class Counsel"). Class Counsel have extensive experience prosecuting and litigating large-scale wage-and-hour collective and class actions such as this, and have the resources to effectively prosecute the action. (*See* Ex. B Slobin Decl. at ¶14, Ex. C Shkolnik Decl. at ¶17, and Ex. D Maslo Decl. at ¶20).

Class Counsel conducted extensive investigation of the claims in this case and the Parties engaged in significant, informal discovery leading up to the aforementioned mediation. (*See* Ex. B Slobin Decl. at ¶13, Ex. C Shkolnik Decl. at ¶16, and Ex. D Maslo Decl. at ¶19).

## V.   <u>TERMS OF THE SETTLEMENT</u>

The total settlement amount is valued in the amount of at least Eight Million Five Hundred Thousand Dollars And Zero Cents ($8,500,000.00). (Ex. A at p. LB00048, ¶7.1). The Class Members shall be entitled to a portion of the settlement subject to a claims made basis and payable subject to the schedule as set forth in the Parties' settlement agreement. (Ex. A at p. LB0052 – LB00058). Settlement Class Members, by choosing to participate in this settlement, shall Release Defendants of the claims alleged in Plaintiffs' Second Amended Complaint. (Ex. A at p. LB00059 – LB00068). Further, even Class Members who do not timely make claims will have up to one year after the Effective Date to receive Overhead Payment Credit Benefits. (Ex. A at p. LB00225 – Opt-Out/Request for Exclusion Form).

Under the Proposed Settlement, the Settlement Amount consists of the following elements: (1) $5,500,000.00 in monetary payments to Settlement Class Members from the Net Settlement Amounts (Ex. A at p. LB00048); (2) $3,000,000.00 in non-monetary credit benefits (*Id.*); (3) $100,000.00 attributed to PAGA payable from the monetary amount, as set forth in the settlement agreement (Ex. A at p. LB00049); (4) injunctive relief: (a) changes to the LLC agreements and, (b) changes to employment practices, in general, at individual Clubs

throughout the country (Ex. A at p. LB00046 – LB00048); (5) Class Counsel Awards (Ex. A at p. LB00049 – LB00051); (6) Settlement Administrator Expenses (Ex. A at p. LB00049); and (7) the Service Awards (Ex. A at p. LB00051 – LB00052).

The monetary settlement amounts payable to the Class Members shall equal the monetary settlement amount minus all payments of the Class Counsel Award (Ex. A at p. LB00049 – LB00051), the class representative Service Awards (Ex. A at p. LB00051 – LB00052), and the Settlement Administrator Expenses (Ex. A at p. LB00049). In order to be paid any Settlement benefits, a Class Member has to complete and sign the Claim/Credit Benefit Form and a W-9 Form and has to timely return those forms along with any and all supporting documentation to the Settlement Administrator before the expiration of the Claims Period. Class Members who do not timely submit the Claim Form and W-9 Form to the Settlement Administrator will not be entitled to receive any cash benefits from the Settlement. (Ex. A at p. LB00052, ¶7.7.1). Class Members will be paid based on their Dance Days (i.e., the number of days a dancer performed at a Club within the applicable statutory period). The amount for each Dance Day shall be based upon the following: the Net Monetary Settlement Amount shall be divided by the total number of Dance Days worked by all potential Class Members. *Id.* at ¶7.7.2.

From the Monetary portion of the Proposed Settlement, a total of One Hundred Thousand Dollars and Zero Cents ($100,000.00) shall be allocated to the California Labor Code Section 2699 claim. (Ex. A at p. LB00049). Seventy-five percent (75%) of that amount or Seventy Five Thousand Dollars and Zero Cents

($75,000.00) shall be paid by the entities listed in the settlement agreement as the California Settlement Class. *Id.* The Seventy Five Thousand Dollars and Zero Cents ($75,000.00) shall be deducted from the portion of the Net Settlement Fund or the pool allocated for payment to the California Settlement Class. *Id.* The Twenty Five Thousand Dollars and Zero Cents ($25,000.00) remaining of the amount allocated to the Labor Code Section 2699 claim shall remain a part of the pool allocated to the payment of claims for the California Settlement Class. *Id.*

There are also two different ways a Class Member can obtain a credit benefit for redemption at her Qualifying Club. Each Class Member may either elect, in writing, to receive a Credit Benefit of two times the Cash Payment for redemption at her Qualifying Club in lieu of receiving the determined Cash Payment amount that such Class Member is determined to be eligible for (the non-monetary portion of the settlement). In order to receive a Credit Benefit, Class Member must not have Opted Out and must have selected in writing on Class Member's Claim/Credit Benefit Form whether she elects to receive the Cash Payment or alternatively, receive such consideration in the form of a Credit Benefit or two times the Cash Payment, and must have submitted such election to the Settlement Administrator before the expiration of the Claims Period. The Credit Benefit shall be redeemable solely at such Class Member's Qualifying Club. (Ex. A at p. LB00054 – LB00058). Depending on the number of elections for Credit Benefits in Lieu of Cash, the value of the settlement could increase.

Eligible Class Members can also redeem Credit Benefits without making a timely claim which an eligible Class Member shall be entitled pursuant to a 3-Tier

schedule, according to the settlement agreement. *Id*. If a Class Member elects to receive a Credit Benefit, in lieu of cash, the Credit Benefit shall be issued in the amount of two (2) times the Cash Payment. In other words, should the Class Members all decide to accept Credit Benefits in lieu of cash payments, Defendants would pay Eleven Million Dollars and Zero Cents ($11,000,000.00) in settlement consideration. (Ex. A at p. LB00225 – Opt-Out/Request for Exclusion Form). Class Counsel has not and will not apply for an attorney fee award based on any fee amount in excess of $8,500,000, that is, the $1.5M to be paid in excess of the bifurcated settlement should the Class Members all elect to receive credit benefits in lieu of cash payments.

The Proposed Settlement also provides for injunctive relief for the benefit of Class Members and the Intervenors. (Ex. A at p. LB00046 – LB00048). The Clubs shall prominently display, to the extent not already displayed, in its dressing rooms, or as close thereto as reasonably practical, a Federal and/or State Department of Labor poster, so its entertainers have access to the applicable laws related to employee status, should the entertainers elect to be treated as an employee rather than an Owner. *Id.* The Club shall also prominently display in dressing rooms, or as close thereto as reasonably practical, rules that state entertainers who elect to be classified as employees shall not tip out ineligible tip employees of the Club such as managers. *Id.* The Club shall also prominently display and provide to the entertainers a Human Resources hotline phone number to contact if they believe wage laws have been violated or any other employment

issue arises. *Id*. The entertainers may report complaints via the hotline confidentially. *Id.*

The LLC agreement shall be amended to state that the Clubs shall not require the entertainers to pay "fines" for violations of Club rules. *Id.* The Clubs' display of rules shall ask entertainers to report via its hotline any Club that levies fines against its entertainers. *Id.* Furthermore, the LLC agreement shall be modified in a number of terms, including but not limited to: (i) elimination of dance performance minimum quotas, and (ii) elective rather than mandatory requirements to participate in an in-person meeting to resolve disputes. *Id.*

Finally, Intervenors shall seek and Plaintiffs and Defendants shall not oppose the entry of a Consent Decree and Declaratory Judgment that finds Intervenors to be properly classifies as "members" of an LLC (not employees). *Id.* at p. LB00047 – LB00048.

The parties have agreed to use Kurtzman Carson Carlson LLC, & Co ("KCC") as the Settlement Administrator for the Proposed Settlement. Settlement Administration Costs, the fees and expenses reasonably and necessarily incurred by the Settlement Administrator shall be no more than $85,000 (subject to modification) as a result of performing the settlement administration procedures and functions set forth in the Settlement Agreement.

Subject to Court approval, Class Counsel shall be awarded a sum not to exceed twenty-five percent (25%) plus reasonable costs incurred to date of the Total Settlement Amount for reasonable attorneys' fees to compensate and reimburse Class Counsel for all of the work already performed by Class Counsel in

this case and all of the work remaining to be performed by Class Counsel in documenting the settlement, securing Court approval of the settlement, and making sure that the settlement is fairly administered and implemented. (Ex. A at p. LB00049 – LB00051).

Subject to Court approval, the Proposed Settlement Agreement provides for a Service Award of $2,500 to each of the Class Representatives. (Ex. A at p. LB00051 – LB00052). Defendants will not oppose a motion for approval of attorneys' fees, costs and Service Awards consistent with the Agreement.

## VI.   <u>ARGUMENT</u>

There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Under the circumstances in this case, where the parties have reached a settlement agreement prior to class certification, courts "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). This review confirms that certification of the proposed Settlement Classes and preliminary approval of the Settlement are warranted.

### A.   Class Certification Is Appropriate

The Settlement Class includes the FLSA Collective Class and State Classes, described in section III, above. Plaintiffs demonstrate in the sections that follow that certification for settlement purposes is appropriate for each class and the Settlement Class overall.

### 1.    The FLSA Collective Classes Meet Requirements for Certification.

A collective class under the FLSA may include employees who are "similarly situated" and who provide written consent to opt into the class. 29 U.S.C. § 216(b). Certification of a FLSA collective usually proceeds in two steps. The first step – conditional certification – requires plaintiff's "modest factual showing sufficient to demonstrate that she and potential plaintiffs together were victims of a common policy of plan that violated the law." *Misra v. Decision One Mortgage Co., LLC*, 673 F. Supp. 2d 987, 993 (C.D. Cal 2008) (internal quotation and brackets omitted). The second step occurs after discovery is complete, at which time, upon a defendant's motion to decertify the class, the court will weigh additional factors to make a final determination whether plaintiffs are similarly situated. *Id.*; *see also Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004) (describing two-step approach to certification).

This case is presently postured in the initial "notice stage." "The 'notice' stage determination of whether the putative collective action members will be similarly situated is made under a 'fairly lenient standard' which typically results in conditional certification." *Johnson v. Q.E.D. Envtl. Sys. Inc.*, No. 16-cv-01454-WHO, 2017 WL 1685099, at *3 (N.D. Cal. May 3, 2017). *See also*, *Sanchez v. Sephora USA, Inc.*, No. 11-03396 SBA, 2012 WL 2945753, at *2 (N.D. Cal. July 18, 2012); *Misra,* 673 F. Supp. 2d at 993. "On a motion for class certification, the Court makes no findings of fact and announces no ultimate conclusions on Plaintiffs' claims" therefore "the Court may consider evidence that may not be

- 25 -      Case No. 5:17-cv-00527-JGB (KKx)

Memorandum ISO Motion for Class
Cert. and Prelim. Approval of Settlement

admissible at trial." *Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 337 n.3 (N.D. Cal. 2010).

Courts should conditionally certify collective actions and issue notice where a plaintiff can demonstrate through "substantial allegations" that putative collective action members were similarly situated to the plaintiff and "were together victims of a single decision, policy or plan" that violated the FLSA. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1108 (10th Cir. 2001), *Misra,* 673 F. Supp. 2d at 993 (citations and quotations omitted).

First, Plaintiffs have shown that they and the putative Collective Action Class Members who worked as exotic dancers at Defendants' locations across the United States were subject to the same policy or practice of being allegedly misclassified as "members" of an LLC as opposed to employees. (*See generally,* Dkt. #49 – Plaintiffs' Motion to Conditionally Certify a FLSA Collective Action with supporting declarations and exhibits.). Plaintiffs have demonstrated through declarations and through Defendants' filings with the California Secretary of State that after the *Trauth* case, Defendants created LLCs for each of its then existing Spearmint Rhino clubs across the nation on June 13, 2013. (Dkt. # 51-6 Ex. F – Arbuckle Decl., Exs. 1-13). As Defendants established new clubs across the nation, they created LLCs for those locations as well. (*Id.*, Exs. 14, 15). Plaintiffs have demonstrated that they and all other exotic dancers at Spearmint Rhino clubs throughout the nation were required to sign virtually identical agreements purporting to make them "members" of an LLC before they could work at a Spearmint Rhino club. (*See* Dkt. # 51-1 Ex. A – Bedford Decl., ¶ 3; Dkt. # 51-2

Ex. B – Byrne Decl., ¶ 3, Dkt. # 51-2 Ex. 1-A, Dkt. # 51-3 Ex. C – Diaz Decl., ¶ 3, Dkt. # 51-4 Ex. D – Haney Decl., ¶ 3, Dkt. # 51-5 Ex. E – Richart Decl., ¶ 3).

Second, Plaintiffs have shown that Defendants' policy or practice of classifying Plaintiffs and the putative Collective Action Class Members as "members" of an LLC potentially violates the FLSA. Specifically, Plaintiffs have substantially alleged that Defendants' classification of its exotic dancers as "owners" of an LLC with regard to wage payment was erroneous because they were, per to the FLSA's economic reality test, employees. (*See* Dkt. #'s 51-1 through 51-5 Exs. A-Ex. E), Declarations of Bedford, Byrne, Diaz, Haney, and Richart, ¶¶2-21). Furthermore, Plaintiff has substantially alleged Defendants' misclassification of her and other exotic dancers as "members" of an LLC led to violation of the FLSA's minimum wage, overtime wage, and/or tipped employee provisions. (*Id.* at ¶¶ 10, 26, 27).

Third, Plaintiffs have shown that they and the putative Collective Action Class Members at Defendants' clubs across the country were similarly situated in all respects relevant to the FLSA. Specifically, "similarly situated" does not need to mean "identically situated." *See, e.g.*, *Sandoval v. M1 Auto Collisions Ctrs.*, No. 13-cv-03239, 2016 WL 6561580, at *6 (N.D. Cal. Sept. 23, 2016) ("However, 'the similarly situated standard of § 216(b) of the [FLSA] does not require that [collective action members] be identical.") (quoting *Khadera v. ABM Indus. Inc.*, No. C08-0417 RSM, 2011 WL 7064234, at *2 (W.D. Wash. Dec. 1, 2011). Nonetheless, Plaintiffs and the putative Collective Action Class Members were all exotic dancers whose job duties primarily involved providing entertainment by

dancing for Defendants' patrons at their gentlemen's clubs nationwide. (*See* Dkt. #'s 51-1 through 51-5 Exs. A-Ex. E, Declarations of Bedford, Byrne, Diaz, Haney, and Richart, ¶2). Furthermore, Plaintiff and the putative Collective Action Class Members all allege that they were not paid any wages by Defendants, but rather made all of their income through tips paid to them by Defendants' patrons. *Id.*

Moreover, Plaintiffs need not categorically demonstrate that a Plaintiff at each club signed an LLC agreement with Defendants in order to certify a nationwide class. *See Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 537 (N.D. Cal. 2007) ("[T]he named plaintiff must demonstrate that there existed at least one similarly situated person at a facility other than his own" to warrant company-wide notice). Rather, Plaintiffs' presentation of the filings for the limited liability companies for each club, of the LLC agreement signed by Plaintiffs, the nearly identical LLC agreement signed by Adriana Ortega, and Plaintiff Bedford's testimony that she signed an LLC agreement when working in Dallas, Texas, are sufficient bases for this Court to order notice be issued per Plaintiffs' proposed class definition. (*See* Dkt. #'s 51-1 through 51-5 Exs. A-E, Declarations of Bedford, Byrne, Diaz, Haney, and Richart, ¶3; Byrne Decl., Dkt. # 51-1 Ex. 1-A; Arbuckle Decl., Dkt. # 51-6 Ex. 16, 17).

Accordingly, Plaintiffs and the putative Collective Action Class Members are a cohesive and homogenous group all subject to the same policy or practice of allegedly being misclassified as "members" of an LLC and resulting in Defendants' failure to pay them any wages due to them as employees.

- 28 -

Case No. 5:17-cv-00527-JGB (KKx)
Memorandum ISO Motion for Class
Cert. and Prelim. Approval of Settlement

It is well-settled that at this "fairly lenient" notice stage of the proceedings, the six sworn statements from Plaintiffs and other current and former exotic dancers who worked in and outside California submitted in support of their previously filed motion for conditional certification of a FLSA Class, evidence of virtually identical LLC agreements signed by exotic dancers who worked for Spearmint Rhino, and sworn testimony from a Spearmint Rhino representative regarding Defendants' conduct[6] more than suffice as evidence that the putative Collective Action Class Members are similarly situated to her for all purposes relevant to this Motion. *See Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1128 (N.D. Cal. 2009).

Moreover, given the across-the-board alleged violations of the FLSA by Defendants as to all of the exotic dancers at its locations nationwide, it is unlikely that there will be any truly individualized defenses in this case. *See, e.g.*, *Zaborowski v. MHN Gov't Servs., Inc.*, No. C 12-05109 SI, 2013 WL 1787154, at *4 (N.D. Cal. Apr. 25, 2013) (certifying a class of workers who shared a job title, performed similar job duties, were governed by the same contract purporting to create an independent contractor employment relationship, and who were denied overtime wages on the basis of that contract).

## 2.   The Settlement Classes Meet Rule 23 Requirements for Certification.

Certification of the Settlement Collective and Classes is appropriate under the applicable standards set forth in Federal Rule of Civil Procedure 23. "[F]or the most part the same standards apply under Rule 23 in judging the propriety of a

---

[6] *See* Arbuckle Decl., Dkt. # 51-6 Ex. 17.

settlement class as apply in determining whether a class for trial purposes is appropriate." *Staton*, 327 F.3d at 956. These standards include "four prerequisites for class action litigation" set out in Federal Rule of Civil Procedure, Rule 23(a): "(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Id.* at 953. Class certification under Rule 23 further requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23 (b)(3).

### a. The Settlement Classes Are Numerous.

Numerosity refers to a class that "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In this case, with a total class population of over ten thousand individuals, this prerequisite is easily satisfied. (*See* Ex. B Slobin Decl. at ¶25, Ex. C Shkolnik Decl. at ¶28, and Ex. D Maslo Decl. at ¶31). Courts recognize that joinder of this number of employees is impracticable for any number of reasons and routinely rule that numerosity is satisfied for much smaller classes. *See, e.g.*, *Staton*, 327 F.3d at 953 (ruling that there was "no dispute" that a class of 15,000 met the numerosity requirement); *Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 437 (C.D. Cal. 2014) (numerosity "is presumptively satisfied when there are at least forty members").

### b. Questions of Law and Fact Are Common to the Settlement Classes.

Commonality indicates that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In the Ninth Circuit, this requirement "has been

construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998). Although members of a proposed class "may possess different avenues of redress," so long as "their claims stem from the same source" there is sufficient commonality "to satisfy the minimal requirements of Rule 23(a)(2)." *Id.* at 1019-20; *see also Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 599 (9th Cir. 2010), *rev'd on other grounds by* 564 U.S. 338 (2011) ("one significant issue common to the class may be sufficient to warrant certification" under Rule 23(a)(2)). Individual damage calculations do not undermine commonality as "the amount of damages is invariably an individual question and does not defeat class action treatment." *Yokoyama v. Midland Nat'l. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010); *see also Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 536 (N.D. Cal. 2015) (variation in the amounts plaintiffs sought to recover "does not detract from the common question of liability to be adjudicated on a class wide basis").

Spearmint Rhino's policies and practices that are alleged to have violated state and federal laws were sufficiently common and widespread that the relevant facts and legal issues affected all Spearmint Rhino exotic dancers similarly. (*See* Ex. B Slobin Decl. at ¶26, Ex. C Shkolnik Decl. at ¶29, and Ex. D Maslo Decl. at ¶32). The core allegations in this case applies to all – (1) Defendants misclassified its exotic dancers as owners ("members" of an LLC) rather than treat them as employees. As a result, (2) exotic dancers at Spearmint Rhino were denied their unpaid wages for each and every hour worked.

These common questions of law and fact therefore satisfy commonality for purposes of Fed. R. Civ. P. 23(a)(2).

1

### c. **Plaintiffs' Claims and Defenses Are Typical of the Settlement Class.**

2

Rule 23 also requires that the "claims or defenses of the representative

3

parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

4

As a general matter, "the commonality and typicality requirements of Rule 23(a)

5

tend to merge." *Staton*, 327 F.3d at 957 (internal brackets and quotation omitted).

6

Typicality is established if "representative claims are . . . reasonably co-extensive

7

with those of absent class members; they need not be substantially identical."

8

*Hanlon*, 150 F.3d at 1020; *see also Brown v. Am. Airlines, Inc.*, 285 F.R.D. 546,

9

557 (C.D. Cal. 2011) (viewing typicality as "whether the action is based on

10

conduct which is not unique to the named plaintiffs, and . . . other class members

11

have been injured by the same course of conduct") (internal quotation omitted).

12

Here, the Class Representatives all had the same job title and duties, and

13

were subject to the same pay practices and alleged misclassification as members of

14

an LLC as the Class Members they seek to represent. As such, they advance the

15

same legal theories, and the typicality requirement of Rule 23(a)(3) is satisfied.

16

### d. **Plaintiffs Fairly and Adequately Represent the Class.**

17

Rule 23 also requires that the class representatives fairly and adequately

18

protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This requirement is

19

grounded in "due process concerns," as class members are constitutionally entitled

20

to "adequate representation before entry of a judgment which binds them." *Hanlon*,

21

150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940)). Two

22

questions determine adequacy in this context: "(1) do the named plaintiffs and their

23

counsel have any conflicts of interest with other class members and (2) will the

24

named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.*

The court in *Hanlon* found adequate legal representation because "each potential plaintiff has the same problem" and there was "no structural conflict of interest based on variations in state law, for the named representatives include individuals from each state, and the differences in state remedies are not sufficiently substantial so as to warrant the creation of subclasses." *Id.* at 1021; *see also Dudum v. Carter's Retail, Inc.*, No. 14-CV-00988-HSG, 2016 WL 946008, at *3 (N.D. Cal. Mar. 14, 2016) (Rule 23(a)(4) satisfied where there was no evidence of conflict, counsel were experienced, and class representatives spent time gathering and reviewing documents and participating in interviews and telephone conferences).

Similarly, in this case, Class Representatives include individuals from represented states, they all suffered the same type of injury, and the variations in applicable state and federal laws are not substantial. (*See* Ex. B Slobin Decl. at ¶27, Ex. C Shkolnik Decl. at ¶30, and Ex. D Maslo Decl. at ¶33). Class Counsel have vigorously prosecuted the case, and the Class Representatives have also spent significant time and effort pursuing claims on behalf of the class. Class Counsel are highly qualified, with extensive experience in wage and hour litigation and complex nationwide hybrid actions. (*See* Ex. B Slobin Decl. at ¶14, Ex. C Shkolnik Decl. at ¶17, and Ex. D Maslo Decl. at ¶20). Adequacy is readily satisfied.

### e.  Common Questions Predominate and a Class Action Is Superior for Adjudicating Claims.

In addition to complying with Rule 23(a), the proposed Settlement Class meets the requirements of Rule 23(b), "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23 (b)(3).

Although the predominance inquiry is "more demanding" than Rule 23(a)'s consideration of commonality, *Boyd*, 300 F.R.D. at 439, the uniform policies and practices and common questions of law and fact previously discussed demonstrate that the requirements of Rule 23(b)(3) also have been met. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. These circumstances are present here, where all potential Class Members' claims assert the same legal claims premised on the same policies and practices. (*See* Ex. B Slobin Decl. at ¶26, Ex. C Shkolnik Decl. at ¶29, and Ex. D Maslo Decl. at ¶32). The only individual inquiries are therefore limited to the time period during which Class Members worked for Spearmint Rhino and the duration of their employment. (*See* Ex. B Slobin Decl. at ¶28, Ex. C Shkolnik Decl. at ¶31, and Ex. D Maslo Decl. at ¶34). As courts have recognized, however, "such damages determinations are individual in nearly all wage-and-hour class actions" and do not undermine predominance. *Boyd*, 300 F.R.D. at 440.

The superiority requirement is also satisfied here. Fed. R. Civ. P. 23(b)(3). None of the obstacles to class certification identified in the rule – class members' interests in individually controlling separate actions, existing litigation, desirability of the forum, and difficulties in managing a class action – are present. Indeed, Class Members in this case lack the resources and incentives to secure counsel and pursue the modest damages to which each is entitled, making the class action procedural device not only superior but also the only practicable mechanism for adjudication of these issues. *See, e.g.*, *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) ("Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action.").

### 3.   <u>Appointment of Class Counsel Is Appropriate.</u>

Rule 23(g) requires a court that certifies a class to appoint class counsel, taking into consideration four factors: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

Class Counsel satisfy these criteria. First, Class Counsel have extensive knowledge of wage-and-hour law and deep experience pursing wage-and-hour claims on a collective/class action basis generally. (*See* Ex. B Slobin Decl. at ¶29, Ex. C Shkolnik Decl. at ¶32, and Ex. D Maslo Decl. at ¶36). Second, Class Counsel have vast experience in prosecuting and litigating the particular wage-and-hour claims made in this matter, and litigating them in complex wage-and-hour

collective and class actions such as this one. *Id*. Third, Class Counsel have aggressively litigated this action as stated in greater detail above, and engaged in substantial discovery and motion practice. *Id*. Fourth, Class Counsel have the resources to effectively prosecute the action, as evidenced in part by their having prosecuted these claims without compensation for a significant amount of time and incurred significant expenditures already. *Id*. Class Counsel will continue to diligently represent Class Members through the conclusion of this litigation and management of the Settlement.

## VII.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

Settlement of a class action requires court approval "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). This assessment includes consideration of any "overreaching or collusion" between the negotiating parties and a number of other factors, such as: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Staton*, 327 F.3d at 959.

"Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Tel. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 525 (C.D.

Cal. 2004)). For preliminary approval, "the settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Misra*, 2009 WL 4581276, at *3 (C.D. Cal. Apr. 13, 2009); *see also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (preliminary approval of settlement should be granted if it is the result of "non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval").

Here, the Parties negotiated the proposed Settlement in good faith, at arm's length, and under the supervision of an experienced and respected mediator and retired Judge. (*See* Ex. B Slobin Decl. at ¶¶15-16, Ex. C Shkolnik Decl. at ¶¶11-12, and Ex. D Maslo Decl. at ¶¶14-15). The extensive investigation and discovery in this matter have allowed Class Counsel ample opportunity to assess the strengths, risks and weaknesses of the claims (as previously discussed in detail) against Spearmint Rhino and the benefits of the Settlement under the circumstances of this case. (*See* Ex. B Slobin Decl. at ¶30, Ex. C Shkolnik Decl. at ¶33, and Ex. D Maslo Decl. at ¶18). Class Counsel believe that the settlement is fair, reasonable, and adequate and is in the best interests of the Class Members in light of the known circumstances and risks. (*See* Ex. B Slobin Decl. at ¶19, Ex. C Shkolnik Decl. at ¶22, and Ex. D Maslo Decl. at ¶25); *see also Carter v. Anderson Merch., LP*, No. EDCV 08-000225-VAP (OPx), 2010 WL 144067, at *6 (C.D. Cal. Jan. 7, 2010) (two days of mediation with an experienced mediator confirms settlement is the

product of arms'-length negotiation)); *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149, 2008 WL 8150856, at *4 (C.D. Cal. July 21, 2008) (settlement reached "in good faith after a well-informed arms-length negotiation" is entitled to a presumption of fairness).

The settlement also provides service awards for Plaintiffs, which reasonably compensate Plaintiffs for their efforts and assumed risks and do not reflect preferential treatment. (*See* Ex. B Slobin Decl. at ¶31, Ex. C Shkolnik Decl. at ¶34, and Ex. D Maslo Decl. at ¶39). These awards "are fairly typical in class action cases" and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

The criteria courts may consider in determining whether to make a service award include: "1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995); *see also Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-67 (N.D. Cal. 2015) (observing that a $5,000 payment is "presumptively reasonable" and incentive awards "typically range from $2,000 to $10,000"). In this case, as mentioned

above, Plaintiffs seek reasonable service awards that are tailored to the extent of their participation and risks in the case. Here, the Class representatives were the ones who initially brought their claims to light to the benefit of the class members, appear named on a public lawsuit which discusses topics which may result in public backlash due to public biases and opinions concerning Plaintiffs' profession, assisted with the investigation of claims and defenses, attended mediation, and participated in numerous meetings and conferences with counsel in furtherance of this case and settlement.

Furthermore, several factors support a reversion as is present in this settlement agreement. (Ex. A at p. LB00054, ¶7.7.6). First, there is no evidence that a reversion is the product of fraud or collusion. The settlement in this case was driven by highly contested legal issues, the potential for offsets that could have resulted in zero damages, and more importantly, whether Plaintiffs' and the settlement class members' claims were entitled to proceed collectively in light of Defendants' class action waivers and the aforementioned cases currently before SCOTUS. Significantly, the reversionary settlement term was negotiated as part of a settlement agreement resulting from mediation through a neutral and well respected Mediator and retired Judge. These factors weigh in favor of approval. *See, e.g., Bell v. Consumer Cellular Inc.,* No. 3:15-cv-941-SI, 2017 WL 2672073, at *7-8 (D. Or. June 21, 2017).

Finally, the compensation sought for Class Counsel – 25% of the common fund created by their efforts – is also reasonable and consistent with the Ninth Circuit's standards. That percentage is consistent with fee awards in other cases of

this size. In addition, the requested fee follows the principles established by the Ninth Circuit in setting the 25% benchmark for "megafund" cases in the $50-200 million range, with the percentage typically increasing as case size decreases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *see also Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (noting that the "typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value"); *In re Omnivision Techs, Inc*., 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (noting that "in most common fund cases, the award exceeds [the] benchmark"). "[I]n smaller cases—particularly where the common fund is under $10 million—awards more frequently exceed the benchmark." *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1209 (C.D. Cal. 2014).

The Ninth Circuit has identified a number of factors courts may consider in assessing whether an award is reasonable and whether a departure from that figure is warranted, including: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs." *Vandervort*, 8 F. Supp. 3d at 1209 (citing *Vizcaino*, 290 F.3d at 1048–50). These factors support Class Counsel's compensation in this case, where the financial burden of investigating, developing, and prosecuting the case; the risk and complexity of adequately proving nationwide policies and practices that functioned in concert to violate Class Members' rights; and the skill and diligence required to maintain the case in the face of forceful and opposition, all were substantial. (*See* Ex. B Slobin Decl. at

¶33, Ex. C Shkolnik Decl. at ¶36, and Ex. D Maslo Decl. at ¶41). Twenty-five percent (25%) of the settlement fund under these circumstances is reasonable. *See, e.g.*, *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming fee award equal to 33% of fund); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT 2005 WL 1594403, at *18, n.12 (C.D. Cal. June 10, 2005) (noting that more than 200 federal cases have awarded fees higher than 30%); *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997) (awarding 33.3% fee).

In these, and all other respects, the Settlement is fair, reasonable, and adequate, falls within the range of possible approval, and is appropriate for preliminary approval and notice to Class Members.

## VIII.  THE PROPOSED NOTICE AND OTHER PROCEDURES ARE REASONABLE

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement." Fed. R. Civ. P. 23(e)(1)(B). The notice and procedures contemplated by the Settlement satisfy this requirement.

### 1.  Class Notice.

The class notice must be the "best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citation and quotation marks omitted). Notice mailed to each class member "who can be

identified through reasonable effort" constitutes reasonable notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974). For any class certified under Rule 23(b)(3), the notice must inform class members "that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded." Fed. R. Civ. P. 23(c)(2)(B).

The proposed Class Notice is attached as Exhibit A, pp. LB00207 – LB00219. The form of the Notice is consistent with other notices routinely approved by courts throughout the Ninth Circuit, and was negotiated and agreed upon by all counsel. (*see* Ex. B Slobin Decl. at ¶34, Ex. C Shkolnik Decl. at ¶37, and Ex. D Maslo Decl. at ¶42). The Notice will inform Class Members of, among other things, the general nature of this action, the financial and other terms of the Settlement particularly significant to the Class Members, and the general procedures and deadlines for making a claim, objecting to the settlement, or requesting exclusion from the class action settlement. (*See* Ex. B Slobin Decl. at ¶34, Ex. C Shkolnik Decl. at ¶37, and Ex. D Maslo Decl. at ¶42); Ex. A p. LB00207 – LB00219). The Notice is written in plain English and is organized and formatted so as to be as clear as possible. *Id*. The Notice encourages Class Members to contact the Settlement Administrator, research the Court filings, long onto PACER, examine the settlement agreement provided online, or contact Class Counsel with any questions, and it provides telephone, mail, e-mail, and facsimile contact information. *Id*. Lastly, the Notice lists a case website that will provide key information for Class Members who misplace their Notice or do not receive one. *Id*.

The Parties have agreed that Kurtzman Carson Carlson, LLC, & Co will serve as the Settlement Administrator. The Administrator will receive a Class List from Spearmint Rhino, and will use the U.S. Postal Service National Change of Address database to obtain each Class Member's most recent address. (Ex. A at p. LB00049). If any mailing is returned, the Claims Administrator will search for a more current address for the Class Member and re-mail the Notice to that address. *Id.*

### 2.   Request for Exclusion.

To validly exclude herself from the Class and the Settlement, the Class Member must (1) state in writing that she requests to be excluded from the Class and the Settlement, (2) sign the request for exclusion, and (3) mail it to the Claims Administrator, postmarked or faxed by no later than sixty (60) days after the date of entry of the Preliminary Approval Order. (Ex. A at p. LB00044). Any Class Member who timely and validly requests exclusion from the Class and the Settlement will not be entitled to any recovery from the settlement fund, will not be bound by the terms and conditions of the Settlement. *Id.*

### 3.   Objections to Settlement.

In order to object to the Settlement, the objector must by no later than 60 days after mailing of the Class Notice, file and serve a written statement of the grounds of objection, signed by the objecting Class Member, along with any supporting papers that the objecting Class Member wishes to include. (Ex. A at p. LB00043). Class Members who fail to timely file and serve objections in the manner specified herein shall be deemed to have waived any objections. *Id.*

### 4.     Request for Leave to Amend Complaint

To streamline the settlement process, Plaintiffs request leave to amend their Complaint shortly after preliminary approval. The Second Amended Complaint specifies all claims to be released, the class representatives, all Clubs and Entertainer LLC's a party to this case and all classes to be certified by the Court. (*See* Ex. A at p. LB00089 - LB00205). Defendants shall not file a response to Plaintiffs' Second Amended Complaint. (*See* Ex. A at p. LB00045).

## IX.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court (1) certify the proposed Settlement Classes under the FLSA and Fed. R. Civ. P. 23; (2) appoint Plaintiffs as the Class Representatives; (3) appoint Plaintiffs' counsel as Class Counsel for the Classes; (4) grant preliminary approval to the Parties' Settlement; (5) approve the mailing of the proposed Class Notice; (6) appoint Kurtzman Carson Carlson, LLC, & Co as the Claims Administrator; (7) grant Plaintiffs leave to file their second amended complaint shortly after preliminary approval; and (8) schedule a final approval hearing for 90 days after CAFA notice[7] issues to the government officials of the various states impacted by the Settlement.

Dated:        October 4, 2017

Respectfully submitted,

By:     s/Melinda Arbuckle
        Melinda Arbuckle

**BARON & BUDD, P.C.**
Melinda Arbuckle (Cal. Bar No. 302723)

---

[7] *See* 28 U.S.C. § 1715.

marbuckl@baronbudd.com
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-6506
Facsimile: (818) 986-9698

**SHELLIST | LAZARZ | SLOBIN LLP**
Todd Slobin (admitted *Pro Hac Vice*)
tslobin@eeoc.net
Ricardo J. Prieto (admitted *Pro Hac Vice*)
rprieto@eeoc.net
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
Facsimile: (713) 621-0993

*Counsel for Plaintiff and Proposed Settlement Class Members*

Case No. 5:17-cv-00527-JGB (KKx)
Memorandum ISO Motion for Class
Cert. and Prelim. Approval of Settlement