UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 17-527 JGB (KKx)** | Date | October 30, 2017 |
| Title | *Lauren Byrne v. Santa Barbara Hospitality Services, Inc., et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Adele C. Frazier |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Melinda Arbuckle<br>Ricardo J. Prieto<br>Salvatore C. Badala | John M. Kennedy<br>Peter E. Garrell |

**Proceedings:**   Order (1) GRANTING Plaintiffs Lauren Byrne, Jenneta L. Bracy, Bambie Bedford, and Jennifer Disla's Unopposed Motion for Class Certification and Preliminary Approval of Settlement (Dkt. No. 64); and (2) GRANTING Plaintiffs Leave to File a Second Amended Complaint

    Before the Court is Plaintiffs Lauren Byrne, Jenetta L. Bracy, Bambie Bedford, and Jennifer Disla's (collectively "Plaintiffs") unopposed Motion for Preliminary Approval of Settlement. ("Motion," Dkt. No. 64.) The parties appeared before the Court on October 30, 2017. Upon consideration of the papers filed in support of the motion, as well as oral arguments by the parties on October 30, 2017, the Court GRANTS the motion.

## I.    PROCEDURAL BACKGROUND

    On March 21, 2017, Plaintiffs filed a class action complaint against Defendants Santa Barbara Hospitality Services, Inc., The Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting Worldwide, Inc., Santa Barbara Hospitality Services, LLC, DG Hospitality Van Nuys, LLC, Rouge Gentlemen's Club, Inc., City of Industry Hospitality Venture, Inc., Farmdale Hospitality Services, Inc., High Expectations Hospitality, LLC, Inland Restaurant Venture I, Inc., Kentucky Hospitality Venture, LLC, L.C.M., LLC, Midnight Sun Enterprises, Inc., Nitelife, Inc., Olympic Avenue Venture, Inc., Wild Orchid, Inc., Rialto Pockets, Incorporated, Santa Barbara Hospitality Services, Inc., Santa Maria Restaurant Enterprises, Inc., Sarie's Lounge, LLC, The Oxnard Hospitality Services, Inc., Washington Management, LLC, World Class Venues, LLC, W P B Hospitality, LLC, City of Industry Hospitality Venture, LLC, Farmdale Hospitality Services, LLC, High Expectations Hospitality Dallas, LLC, Inland

Restaurant Venture I, LLC, Kentucky Hospitality Venture Lexington, LLC, LCM1, LLC, Midnight Sun Enterprises, LLC, Nitelife Minneapolis, LLC, Olympic Avenue Ventures, LLC, Rialto Pockets, LLC, Santa Barbara Hospitality Services, LLC, Santa Maria Restaurant Enterprises, LLC, The Oxnard Hospitality Services, LLC, Washington Management Los Angeles, LLC, Wild Orchid Portland, LLC, World Class Venues Iowa, LLC, and WPB Hospitality West Palm Beach, LLC (collectively "Defendants," Dkt. No. 1).

Plaintiffs now, along with their Motion for Preliminary Approval of Class Settlement, seek to file a Second Amended Complaint ("SAC"). (Dkt. No. 61, Exh. A-1, at LB00089.) Plaintiffs allege Defendants have violated various sections of California law including: (1) failure to pay employees working in California state-mandated minimum wages, (2) failure to pay employees working in California overtime compensation at a rate of one and one-half times the regular rate of pay for all hours worked over forty per week, or over eight per day, or for the first eight hours of work on the seventh consecutive day of work in a workweek (3) failure to pay employees working in California overtime compensation at a rate of twice the regular rate of pay for all hours worked in excess of 12 hours in one day, and for any hours worked in excess of eight hours on the seventh consecutive day of work in a workweek,(4) failure to pay employees working in California all wages due within the time specified by law, (5) failure to afford their employees working in California with proper meal and rest periods, ( 6) for recordkeeping violations explained in greater detail below, and (7) for statutory penalties assessed in connection with the Private Attorneys General Act ("PAGA").  Byrne brings these claims as a class action under Fed. R. Civ. P. 23.  (SAC at ¶ 2.)  Plaintiffs also allege a violation of 29 U.S.C. §§201–19 (the Fair Labor Standards Act, or "FLSA"). (Id. at ¶ 1.)

**A.  The Trauth Action**

On July 13, 2009, Trauth v. Spearmint Rhino Consulting Worldwide, Inc., et al., Case No. EDCV09-1316 VAP (DTBx) was filed in the Central District of California. (Motion at 3.) There, the plaintiffs alleged that the people who performed as entertainers at Spearment Rhino nationwide should be treated as employees rather than independent contractors. (Id.) The parties settled in 2010, agreeing to injunctive relief which required the nightclubs at that time to either treat their entertainers as employees or as owners with stake, such as a shareholder or a limited partner. (Id. at 4.)

In response, the Trauth defendants established policies that provided entertainers to be employees or members of an LLC. (Id.) The entertainer could switch classification at any time without consequence, and written materials were created and provided to each current and new entertainer to facilitate their choice. (Id.) As a part of both options, each entertainer agreed to binding arbitration of all claims and waived the right to bring a class action. (Id. at 6.)

**B.  The 2017 Cases**

On February 3, 2017, Adriana Ortega v. The Spearmint Rhino Companies World wide, Inc. et al., Case No. 5:17-cv-00206 JGB (KKx), was filed. (Motion at 6.) Plaintiff Adriana Ortega

purports to represent a California class of entertainers for violations of the FLSA including alleged misclassification as independent contractors and has recently indicated an intent to expand the putative class to a national class. (Id., citing to Ortega Ct. Dkt. No. 48 "June 12, 2017 Minute Order.") That action is also pending before the Court. The Court stayed that action pending the resolution of a Supreme Court decision Morris.[1] (Motion at 7, n.4.)

On March 21, 2017, the case at bar was filed in the Central District of California. (Id. at 8.) Plaintiff Byrne purports to represent a nationwide class of entertainers for alleged violations of the FLSA and other claims. (Id.) Jennifer Diaz, Bianca Haney, Bambie Beford, Cynthia Garza, Brook Richart, Jennifer Disla, and Carmen Ramos "opted in" to this case. (Id., citing to Dkt. Nos. 28, 30, 33, 56, 59.) After the case had been transferred to this Court, Defendants filed a motion to stay based upon Morris, and Plaintiff filed a motion for class notice. (Motion at 8.) On August 29, 2017, the Court granted Intervenors the right to intervene. (Id.) They then filed a Complaint in Intervention. (Dkt. No. 62.)

On May 3, 2017, Jenetta L. Bracy v. DG Hospitality Van Nuys, LLC et al., Case No. 5:17-cv-00854 JGB (KKx), was filed. (Motion at 8.) Plaintiff Bracy purports to represent a nationwide class of entertainers for alleged violations of the FLSA. (Id.) The Court stayed the Bracy action until October 31, 2017. (Bracy Ct. Dkt. No. 42.)

On August 15, 2017, Shala Nelson v. Farmdale Hospitality Services, LLC, dba Blue Zebra Gentleman's Club et al. was filed in the Los Angeles Superior Court. Case No. BC671852. (Motion at 9.) Plaintiff Nelson purports to represent a California class of entertainers for alleged violations of the PAGA and claims that entertainers who chose to be LLC Members are misclassified. (Motion at 9.)

A number of the LLC Members from the Trauth case have formed a group as the Intervenor Class and have hired Intervenor Counsel to represent their interests. (Id. at 10.) Plaintiffs contend that the LLC agreements could be improved and have articulated suggestions that Plaintiffs and the Intervenor Class believe would improve the Intervenors' status as LLC Members. (Id.) Through this action, Plaintiffs and the Intervenor Class do not seek employment status, but to obtain changes to the LLC agreements, enforceable as injunctive relief. (Id.) The Court ruled that neither Plaintiffs nor Defendants are able to adequately represent the interests of

---

[1] In Lewis v. Epic Sys. Corp., 823 F.3d 1147 (7th Cir. 2016), cert. granted, 137 S. Ct. 809 (U.S. Jan. 13, 2017) (No. 16-285); Morris v. Ernst & Young LLP, 834 F.3d 975 (9th Cir. 2016), cert. granted, 137 S. Ct. 809 (U.S. Jan. 13, 2017) (No. 16-300), Murphy Oil USA, Inc. v. N.L.R.B., 808 F.3d 1013 (5th Cir. 2015), cert. granted, 137 S. Ct. 809 (U.S. Jan. 13, 2017) (No. 16-307) (collectively "Morris"), the United States Supreme Court granted certiorari on the question of: "Whether an agreement that requires an employer and an employee to resolve employment-related disputes through individual arbitration, and waive class and collective proceedings, is enforceable under the Federal Arbitration Act, notwithstanding the provisions of the National Labor Relations Act."

the Intervenor Class and that they must be allowed to intervene to protect their interests as LLC members.  (Dkt. No. 61.)

In July 2017, the parties engaged in a private mediation session in Los Angeles, California. (Motion at 16.)  Following that mediation session and a number of telephonic negotiations, the parties reached a settlement.  (Id.)

**C.  Allegations**

Plaintiffs contend that Defendants involve their exotic dancers in a series of illusory contracts to give the appearance that the exotic dancers are members of the limited liability company formed subsequent to Trauth.  (Motion at 11.)  Plaintiffs allege that the new agreements have not changed anything in Defendants' operations.  (Id.)  They allege that the exotic dancers at Defendants' establishments do not have any real decision-making authority, do not share equitably in the profitability of Spearmint Rhino, and do not have the right to control Spearmint Rhino management.  (Id.)  They allege that, as an economic reality, they are not in business for themselves, nor independent, but are economically dependent on finding employment through Spearmen Rhino.  (Id. at 12.)

Defendants contend that the LLC operating agreements contain legally valid and binding arbitration clauses which waive class action proceedings.  (Id. at 13.)  Defendants also argue that they have already implemented the injunctive relief sought in the aftermath of Trauth.  (Id.) Moreover, Defendants argue that entertainers earn more as LLC members than they would as employees.  (Id. at 14.)

## II.  THE LEGAL STANDARD

Class action settlements must be approved by the Court.  See Fed. R. Civ. P. 23(e).  Court approval occurs in three steps, the first of which is a preliminary approval hearing.  See Manual for Complex Litigation (Fourth) §§ 21.632 (2012).  At the preliminary approval stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms."  Id.  "The settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval."  Acosta v. Trans Union, LLC, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original).  A court considers the following factors to determine whether a settlement agreement is potentially fair: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.  Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003).

Approval of a class action settlement requires certification of a settlement class.  La Fleur v. Med. Mgmt. Int'l, Inc., No. EDCV 13-00398-VAP, 2014 WL 2967475, at *2–3 (C.D. Cal. June 25, 2014) (internal quotation marks omitted).  A court may certify a class if the plaintiff

demonstrates that the class meets the requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b). See Fed R. Civ. P. 23; see also Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).

Rule 23(a) contains four prerequisites to class certification: (1) the class must be so numerous that joinder is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims of the class representative must be typical of the other class members; and (4) the representative parties must fairly and adequately protect the interests of the class. See Fed R. Civ. P. 23(a). Rule 23(b) requires that the class satisfy one of the following requirements: (1) prosecuting the claims of class members separately would create a risk of inconsistent or prejudicial outcomes; (2) the party opposing the class has acted or refused to act on ground that apply generally to the class, so that final injunctive or declaratory relief benefitting the whole class is appropriate; or (3) common questions of law or fact predominate so that a class action is superior to another method of adjudication. Fed. R. Civ. P. 23(b). Courts have added to the federal rules a prerequisite that the class be ascertainable. In re Northrop Grumman Corp. ERISA Litig., No. cv-06-06213, 2011 WL 3505264 (C.D. Cal. Mar. 29, 2011).

### III.   THE SETTLEMENT AGREEMENT

Plaintiffs submit a copy of the parties' proposed Settlement Agreement as Exhibit A-1 to their Motion for Preliminary Approval of Settlement. ("Settlement Agreement," Exh. A-1, Dkt. No. 64-1.) The terms of the Settlement Agreement are discussed below.

**A. Financial Terms and Releases**

In the Settlement Agreement, Defendants continue to deny liability for the claims alleged in the Complaint. (Settlement at 30) ("Defendants deny each and every one of the Claims that are asserted, that will be asserted in the Second Amended Complaint, or could be asserted by the Plaintiffs in the actions.") Nevertheless, Defendants agree to pay a total settlement amount of $8.5 million, of which $5.5 million shall constitute the gross cash settlement amount and $3 million shall constitute the credit benefit settlement amount. (Id. at 38.) Under no circumstances will Defendants be responsible for making payments in excess of the gross cash settlement amount. (Id.) However, to the extent class members elect to receive credit benefits in lieu of cash, that election will not deplete the available credit benefit settlement amount. (Id.) Additionally, $100,000 attributed to PAGA will be funded solely by the California Settlement Class Clubs listed in Section 1.11. (Id.) Of that $100,000, 75% of it will be paid to the Labor and Workforce Development Agency ("LWDA") and 25% of it will revert to the settlement fund.

In exchange, Plaintiffs from California, Texas, Oregon, Florida, Idaho, Iowa, Minnesota, as well as the FLSA Plaintiffs agree to forever release Defendants from claims that arose or could arise from this litigation. (Id. at 49–57.)

The Settlement Agreement provides that class counsel shall receive no more that 25% of the gross cash settlement amount and the credit benefit settlement amount plus reasonable costs

that do not exceed $2,144,646.86.  (Id. at 40.)  Thus, class counsel seeks $2,144,646.86 in attorneys' fees and costs.  (Id.)  The Settlement Agreement also provides that the cost of administration will be paid by the Defendants and deducted from the gross cash settlement amount.  (Id. at 39.)  Additionally, the Settlement Agreement seeks incentive fees up to $2,500 to be awarded to the class representatives.  (Id. at 41–42.)

Class members will be paid for their dance days.  The payment for each individual class member will be calculated by taking the net monetary settlement amount and dividing it by the total number of dance days worked by all potential class members.  (Id. at 42.)  Class members need to submit a claim form to the settlement administrator before the expiration of the claims period.  (Id.)

A Class member may elect to receive a credit benefit of two times the cash payment for redemption at her qualifying club in lieu of receiving the determined cash payment amount that the class member would be eligible for.  (Id. at 44.)

### B. Injunctive Relief

The Settlement Agreement calls for various forms of injunctive relief.  Each club must now prominently display in its dressing rooms a Federal and/or State Department of Labor poster so the entertainers have access to the applicable laws relating to employee status.  (Id. at 36.)  Additionally, each club must prominently display in dressing rooms rules that state entertainers who elect to be classified as employees "shall not tip out ineligible tip employees of the Cub such as managers."  (Id.)

The Limited Liability Agreement (Dkt. No. 61, Exh. 8) shall be modified.  Changes to the agreement include but are not limited to:  "(i) elimination of dance performance minimum quotas, and (ii) elective rather than mandatory requirements to participate in an in-person meeting to resolve disputes."  (Settlement Agreement at 37.)

### C. Relief for Intervenors

The intervenor class ("Intervenors") consists of "all current entertainers who have entered into LLC agreements to become Owners and/or LLC Members to perform at any Club or Existing Club and wish to remain classified as Owners or LLC Members and not be classified as employees."  (Id.)  The Intervenors seek the entry of a Declaratory Judgment (Dkt. No. 61, Exh. 5.)  That judgment provides that the current entertainers who perform as LLC members are not employees as defined by state or federal law, and that they may continue to perform as LLC members and owners.  (Id. at 37–38.)

The Settlement Agreement is expressly conditioned upon entry of the Declaratory Judgment by the Court.  (Id. at 38.)  The Court shall maintain jurisdiction for a period of ten years.  (Id.)  Intervenor class counsel shall file semi-annual reports with the Court and provide

status reports as to whether entertainers are being treated as owners pursuant to the Settlement Agreement.  (Id.)

**D.  Claims Process**

The parties have selected Kurtzman Carson Consultants, LLC ("KCC") as the settlement administrator.  (Id. at 16.)  Within twenty days of being provided with the contact information from Defendants, KCC will mail to every member a copy of the class notice documents ("Notice," Dkt. No. 61., Exh. A-2., at LB00207–19).  The Notice describes the process for distributing the class settlement amount and advises class members of their right to object, the process by which such objections must be made, and the date set by the Court for a hearing on final approval.  (Id.)   For notices that are returned, KCC will either send the notice to the provided forwarding address or perform a skip trace to locate a more current address.  (Settlement Agreement at 31–32.)

KCC shall also place the class notice documents, Second Amended Complaint, the Settlement Agreement, the Preliminary Approval Order, and a reference to the PACER website for the Central District Court on its website within five days of the entry of the Preliminary Approval Order.  (Id. at 32.)  Additionally, the existing clubs shall post a copy of the class notice in their dressing rooms.  (Id.)  The Notices must stay posted until the day after the close of the time period for class members to file a claim or opt out.  (Id.)

**IV.  CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS**

The parties seek conditional certification, pursuant to Rule 23, of the Settlement Classes.  (Id. at 18.)  The settlement classes are defined as:

The FLSA Collective:

The FLSA Settlement Class shall consist of entertainers who are members of the California, Idaho, Iowa, Florida, Kentucky, Minnesota, Oregon and Texas Settlement Classes who elect to participate in the Settlement by timely submitting a valid Claim Form and who performed at one or more of Defendants' Clubs as entertainers and in conjunction therewith have provided nude, semi-nude and/or bikini entertainment for customers at the Clubs during the FLSA statutory class period. (See "Slobin Declaration," Dkt. No. 64, Exh. B, at ¶22, "Shkolnik Declaration," Dkt. No. 64., Exh. C at ¶25, and "Maslo Declaration," Dkt. No. 64, Exh. D, at ¶28.)

The State Law Classes:

These Rule 23 classes shall be comprised of individual state classes under the laws of California, Idaho, Iowa, Florida, Kentucky, Minnesota, Oregon and Texas.

PAGA:

The settlement resolves claims brought under California Labor Code Section 2699 known as the California Private Attorney General Act ("PAGA"). Sums, as set forth in the settlement agreement, shall be allocated for PAGA. (See Slobin Declaration at ¶24, Shkolnik Declaration at ¶27, and Maslo Declaration at ¶30.)

(Motion at 18.) For the following reasons, the Court will conditionally certify this Rule 23 Settlement Class.[2]

### A. Requirements of Rule 23(a)

#### 1. Numerosity

A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). To be impracticable, joinder must be difficult or inconvenient, but it need not be impossible. Keegan v. American Honda Motor Co., 284 F.R.D. 504, 522 (C.D. Cal. 2012). There is no numerical cutoff for sufficient numerosity, but forty or more members will generally satisfy the numerosity requirement. Id.

Here, the proposed class encompasses over 10,000 individuals. (Motion at 30.) The class is therefore sufficiently numerous.

#### 2. Commonality

The commonality requirement is met when the plaintiff's claims "depend upon a common contention… capable of classwide resolution—which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2556 (2011). Commonality does not require "that *every* question of law or fact must be common to the class; all that Rule 23(a)(2) requires is 'a single *significant* question of law or fact.'" Abdullah v. U.S. Sec. Associates, Inc., 731 F.3d 952, 957 (9th Cir. 2013) (quoting Mazza v. Am. Honda Motor Co., 666 F.3d 581, 589 (9th Cir. 2012) (emphasis in Abdullah)).

Spearmint Rhino's employment policies are alleged to have violated state and federal laws. The legal issues surrounding these policies affect all Spearmint Rhino dancers similarly. The basic allegation concerns whether Defendants misclassified its exotic dancers as members of an LLC rather than as employees. (Motion at 31.) If true, the question becomes whether the exotic dancers at Spearmint Rhino were denied their unpaid wages for worked hours. (Id.) Answering these questions would resolve a major issue for all the members. Therefore, these common questions of law and fact satisfy the commonality prong.

---

[2] For convenience, the Court will refer to these three settlement classes as a collective "Settlement Class."

### 3. Typicality

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named [p]laintiff, and whether other class members have been injured by the same course of conduct." Wolin v. Jaguar Land Rover N. Am., 617 F.3d 1168, 1175 (9th Cir. 2010). Typicality is a permissive standard. Hanlon, 150 F.3d at 1020. The claims of the named plaintiff need not be identical to those of the other class members. Alonzo v. Maximus, Inc., 275 F.R.D. 513, 523 (C.D. Cal. 2011).

Here, the class representatives all had the same job title and duties, and were subject to the same alleged misclassification as members of an LLC as the class members they seek to represent. They advance the same legal theories. This satisfies the typicality requirement.

### 4. Adequacy

In determining whether a proposed class representative will adequately protect the interests of the class, courts are to inquire (1) whether the proposed class representative and class counsel have any conflicts of interest with the rest of the potential class, and (2) whether the proposed class representative and class counsel will prosecute the action vigorously on behalf of the class as a whole. See Hanlon, 150 F.3d at 1020; Johnson v. General Mills, Inc., 275 F.R.D. 282, 288 (C.D. Cal. 2011).

Here, the class representatives include individuals from the represented states who all suffered the same injury. (Motion at 33.) Furthermore, the variations in applicable state and federal laws are not substantial. Class counsel is highly qualified with extensive experience in wage and hour litigation and complex nationwide hybrid actions. (Id.) This satisfies the adequacy requirement.

## B. Ascertainability

Ascertainability is satisfied when it is "administratively feasible for the court to determine whether a particular individual is a member" of the proposed class. In re Northrop, 2011 WL 3505264, at *7.

Here, although the class is numerous, because it involves Defendants' current employees, their personnel records should be more than adequate to verify who is a class member. (Motion at 18.) The ascertainability requirement is satisfied.

## C. Requirements of Rule 23(b)

Certification is sought pursuant to Rule 23(b)(3). (Supplement at 20-22.) Rule 23(b)(3) requires that "the questions of law or fact common to the members of the class predominate over

any questions affecting individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

First, the Rule 23(b)(3) predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by a class action. Hanlon, 150 F.3d at 1022. A class should not be certified if the issues of the case require separate adjudication of each individual class member's claims. Id. That plaintiffs may be owed different amounts of damages is not fatal to the 23(b)(3) prerequisite as long as the individualized damages are a matter of "straightforward accounting." See In re Facebook, Inc., PPC Adver. Litig., 282 F.R.D. 446, 459 (N.D. Cal. 2012).

Here, all potential class members assert the same legal claims premised on the same policies and practices. (Motion at 34.) The individual questions are limited to which class members for Spearmint Rhino and the duration of their employment. Also, none of the obstacles to class certification identified by the rule apply here. Neither class members' interests in individually controlling separate actions, existing litigation, desirability of the forum, nor difficulties in managing a class action weigh against certification. Class members here lack the resources and incentives to pursue their individual damage amounts. (Motion at 35.) Thus, the class action procedural device is superior to individual adjudication.

Accordingly, the Court finds that all the factors have been satisfied, and conditionally certifies the proposed class for purposes of settlement.

## V.  PRELIMINARY APPROVAL OF THE SETTLEMENT

"[Rule 23] requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Hanlon, 150 F.3d at 1026. To determine whether a settlement agreement meets these standards, the court considers a number of factors, including "the strength of the plaintiff's case, the risk, expense, complexity, and likely duration of further litigation, the risk of maintaining class action status throughout the trial, the amount offered in settlement, the extent of discovery completed, and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement." Staton, 327 F.3d at 959 (internal citations omitted). The settlement may not be a product of collusion among the negotiating parties. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

"At the preliminary approval stage, some of the factors cannot be fully assessed. Accordingly, a full fairness analysis is unnecessary." Litty v. Merrill Lynch & Co., 2015 WL 4698475, at *8 (C.D. Cal. Apr. 27, 2015). Rather, the court need only decide whether the settlement is potentially fair, Acosta, 243 F.R.D. at 386, in light of the strong judicial policy in favor of settlement of class actions. Class Plaintiffs, 955 F.2d at 1276. "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement

is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Hanlon, 15 F.3d at 1027.

### A. Extent of Discovery Completed and Stage of the Proceedings.

For a court to approve a proposed settlement, "[t]he parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." Acosta, 243 F.R.D. at 396 (internal quotation marks omitted).

Here, the parties engaged in discovery and investigation, which allowed them to effectively assess the strengths and weaknesses of the claims. (Motion at 37, 11–16.) They reached this settlement only after a mediation session before the Honorable Robert Altman (retired). (Id. at 16.) Based on the Motion, it appears that each side maintains a clear idea of the strengths and weaknesses of their respective cases, such that the extent of discovery completed and the stage of the proceedings weighs at least somewhat in favor of preliminary approval. See Lewis v. Starbucks Corp., No. 2:07-cv-00490-MCE, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("[A]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases.")

### B. Amount Offered in Settlement

In determining whether the amount offered in settlement is fair, a court is to compare the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. In re Mego, 213 F.3d at 459.

Plaintiffs do not estimate what their maximum amount of damages would be if their litigation would have been completely successful. They do note that, were the class members to all choose the credit option instead of the cash payout, Defendants would payout up to a maximum of $11 million instead of the $8.5 million through the combined cash and credit options. (Motion at 22.) Additionally, the parties have carefully listed the various objections and defenses Defendants could bring in the absence of a settlement. (Id. at 11–16.) These arguments are seen as risk factors weighing against continuing the litigation and encouraging settlement. (Id. at 13.) Defendants deny liability and argue that they have fulfilled their Trauth obligations. (Id. at 14.) Moreover, Defendants contend that their previous agreement precluded the possibility of a class action by including a waiver of that remedy. (Id.) Furthermore, the Supreme Court may soon change the legal landscape regarding class action waivers. (Id. at 13.)

All told, in light of the fact that the gross cash settlement amount is for $5.5 million and the $3 million in non-monetary credit benefits, the Court finds the amount offered in the Settlement Agreement reasonable against the risks of continuing litigation.

### C. Strength of Case and Risk, Expense, Complexity and Likely Duration of Litigation

For the reasons stated above, while Plaintiffs believe they have marshalled enough evidence to prevail on their claims, they acknowledge that Defendants have strong defenses. (Id. at 11–16.)

The risk, expense, complexity, and likely duration of further litigation weigh in favor of preliminary approval. Without the Settlement Agreement, the parties would be required to litigate class certification, as well as the ultimate merits of the case—a process which the Court acknowledges is long, complex, and expensive. It is apparent Defendants would oppose class certification and conduct further motion practice to defend against Plaintiffs' claims. Settlement of this matter will conserve the resources of this Court and the parties, thus weighing heavily in favor of preliminary approval.

### D. Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citation and quotation marks omitted). Here, Plaintiffs' Counsel represents "that the Settlement is fair, reasonable, and adequate, and is in the best interests of the Class Members in light of the known circumstances and risks." (Motion at 37.)

Plaintiffs' counsel has extensive experience serving as counsel in wage-and-hour class actions in federal and state court. (See generally, Slobin Declaration.) Additionally, Plaintiffs' counsel demonstrates a realistic and balanced view of the potential outcome of the litigation based on the facts of the case and the relative positions of the parties. As a result, the experience and views of Plaintiffs' counsel also weigh in favor of preliminary approval.

### E. Collusion Between the Parties

"To determine whether there has been any collusion between the parties, courts must evaluate whether 'fees and relief provisions clearly suggest the possibility that class interests gave way to self interests,' thereby raising the possibility that the settlement agreement is the result of overt misconduct by the negotiators or improper incentives for certain class members at the expense of others." Litty, 2015 WL 4698475, at *10 (quoting Staton, 327 F.3d at 961.)

As an initial matter, the Court notes that settlement negotiations were conducted at arms-length. Settlement negotiations occurred under the supervision of an experienced and respected mediator and retired judge. (Motion at 37.) The use of a mediator experienced in the settlement process tends to establish that the settlement process was not collusive. See, e.g., Satchell v. Fed. Ex. Corp., No. C 03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007). The Court thus turns to the financial terms of the Settlement Agreement.

Plaintiffs request a service award of $2,500 for the named plaintiffs in this action. A court may grant a modest incentive award to class representatives, both as an inducement to participate in the suit and as compensation for the time spent in litigation activities. See In re Mego Fin. Corp., 213 F.3d at 463 (finding the district court did not abuse its discretion in awarding an incentive award to the Class Representatives). Thus, the Court finds Plaintiffs' request for an enhancement award reasonable. See Custom LED, LLC v. eBay, Inc., No. 12-CV-00350-JST, 2014 WL 2916871, at *10 (N.D. Cal. June 24, 2014) (approving $7,500 incentive award from $3,230,000 total settlement amount); Glass v. UBS Fin. Servs., Inc., No. C-06-4068 MMC, 2007 WL 221862, at *1, 16-17 (N.D. Cal. Jan. 26, 2007) (approving $25,000 incentive awards from $45,000,000 total settlement amount).

As to attorneys' fees, Plaintiffs' class counsel seeks 25% of the total gross settlement agreement for attorneys' fees ($2,125,000) plus costs ($19,646.86) for a total of $2,144,646.86. (Settlement Agreement at 40.) Defendants do not oppose. (Id.) Generally, courts find that a benchmark of twenty-five percent of the common fund is a reasonable fee award. Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citing Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)). However, at the preliminary approval stage, the Court need only find that the requested attorneys' fees are not the product of apparent collusion. Graham v. Overland Solutions, Inc., No. 10-CV-0672 BEN BLM, 2012 WL 4009547, at *9 (S.D. Cal. Sept. 12, 2012). In light of the fact that there is no evidence of impropriety or collusion, and the requested maximum of twenty-five percent is the general benchmark, the Court finds the request for attorneys' fees to be reasonable and weigh in favor of preliminary approval.

### F. Remaining Factors

In addition to the factors discussed above, the Court may also consider the risk of maintaining class action status throughout the trial, the presence of a governmental participant, and the reaction of the class members to the proposed settlement. Staton, 327 F.3d at 959 (internal citations omitted). However, in this case, the Court cannot fully analyze the remaining factors. For example, there is no governmental participant in this action. Additionally, the Settlement Class Members have yet to receive notice of the Settlement Agreement, nor have had time to comment or object, preventing consideration of their reaction.

Of the factors considered, however, all weigh in favor of preliminary approval of the Settlement Agreement. Thus, the Court GRANTS preliminary approval of the proposed Settlement Agreement.

## VI.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Approval is GRANTED.

**IT IS SO ORDERED.**