Todd Slobin (admitted *PHV*)
tslobin@eeoc.net
Ricardo J. Prieto (admitted *PHV*)
rprieto@eeoc.net
SHELLIST | LAZARZ | SLOBIN LLP
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
Facsimile: (713) 621-0993

Melinda Arbuckle (Cal. Bar No. 302723)
marbuckl@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-6506
Facsimile: (818) 986-9698

Jennifer Liakos (Cal. Bar. No. 207487)
jliakos@napolilaw.com
NAPOLI SHKOLNIK PLLC
525 South Douglas Street, Suite 260
El Segundo, CA 90245
Telephone: (310) 331-8224
Facsimile: (646) 843-7603

Salvatore C. Badala (admitted *PHV*)
sbadala@napolilaw.com
Paul B. Maslo (admitted *PHV*)
pmaslo@napolilaw.com
NAPOLI SHKOLNIK PLLC
360 Lexington Avenue, 11th Floor
New York, New York 10017
Telephone: (212) 397-1000
Facsimile: (646) 843-7603

*Class Counsel for Plaintiffs and Proposed Settlement Class Members*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION – RIVERSIDE

| | |
|---|---|
| LAUREN BYRNE, *et al.*, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF INDUSTRY HOSPITALITY VENTURE, INC., *et al.*,<br><br>    Defendants. | **Case No: 5:17-cv-00527 JGB (KKx)**<br><br>**NOTICE OF MOTION; UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS; MEMORANDUM IN SUPPORT OF MOTION**<br><br>Final Fairness Hearing:   March 5, 2018<br>Time:      9:00 a.m.<br>Place:      Courtroom 1<br>Judge:     Hon. Jesus G. Bernal |

**PLEASE TAKE NOTICE THAT** on March 5, 2018, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1 of this court, located at 3470 Twelfth Street; Riverside, California 92501-3801, Plaintiffs Lauren Byrne ("Byrne"), Jenetta L. Bracy ("Bracy"), Bambie Bedford ("Bedford"), and Jennifer Disla ("Disla," collectively "Plaintiffs"), on behalf of themselves and all others similarly situated (the "Class Members"), will and hereby do move this Court to:

(1)    Grant final approval of the Settlement Agreement pursuant to Rule 23 of the Federal Rules of Civil Procedure (*see* Dkt. Nos. 64-1 & 64-2 (the "Settlement")) as fair and reasonable;

(2)    Certify the classes and collective actions designated as the "settlement class" in the Preliminary Approval Order (Dkt. Nos. 74 & 80) pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil procedure and Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), respectively;

(3)    Enter judgment in accordance with the Settlement Agreement; which resolves all of the FLSA claims, all of the the state law claims, and all of the California PAGA claims;

(4)    Award attorneys' fees and expenses as provided by the Settlement and Preliminary Approval Order;

(5)    Award Class Representative Service awards of $2,500 to Byrne, Bracy, Bedford, and Disla; and

(6)    Approve the amount of up to $85,000 to be paid to the Claims Administrator.

Plaintiffs move for final approval of the Settlement on the following grounds: (1) the Settlement is fair and reasonable; (2) the Settlement was reached after arms-length negotiations by counsel for Plaintiffs and the Settlement Class, counsel for Intervenors, and counsel for Defendants following a private mediation at ADR Services which involved significant post-mediation negotiations facilitated by a respected retired judge who is an experienced mediator of class action lawsuits; and (3) the Settlement has drawn a favorable response from the Class.

For the foregoing reasons and the additional considerations set forth in the following memorandum of points and authorities in support of this motion, the Settlement should receive final approval from this Court.

This Motion is supported by this Notice of Motion; the following Memorandum of Points and Authorities in support of the Motion; the Notice of Motion and Unopposed Motion for Class Certification and Preliminary Approval of Settlement and Memorandum in Support and exhibits thereto (Dkt. No. 64); the Notice to the Class; the Preliminary Approval Orders (Dkt. Nos. 74 & 80); the October 30, 2017 proceedings at the Preliminary Approval Hearing; the exhibits attached to this Motion, including the Declarations of Ryanne Cozzi, Aja Matelyan, Todd Slobin, and Melinda Arbuckle; and all other pleadings and papers filed in this action, and any other argument and/or evidence that may be presented at or prior to the hearing in this matter.

Dated: February 23, 2018.

Respectfully submitted,


By:   s/Melinda Arbuckle
      Melinda Arbuckle

**BARON & BUDD, P.C.**
Melinda Arbuckle (Cal. Bar No. 302723)
marbuckl@baronbudd.com
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-6506
Facsimile: (818) 986-9698


**SHELLIST | LAZARZ | SLOBIN LLP**
Todd Slobin (admitted *Pro Hac Vice*)
tslobin@eeoc.net
Ricardo J. Prieto (admitted *Pro Hac Vice*)
rprieto@eeoc.net
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
Facsimile: (713) 621-0993


**NAPOLI SHKOLNIK PLLC**
Jennifer Liakos (Cal. Bar. No. 207487)
jliakos@napolilaw.com
525 South Douglas Street, Suite 260
El Segundo, CA 90245
Telephone: (310) 331-8224
Facsimile: (646) 843-7603


Salvatore C. Badala (admitted *PHV*)
sbadala@napolilaw.com
Paul B. Maslo (admitted *PHV*)
pmaslo@napolilaw.com
360 Lexington Avenue, 11th Floor
New York, New York 10017
Telephone: (212) 397-1000


*Counsel for Plaintiffs and Settlement Class*
*and Collective Action Members*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. viii

I.      INTRODUCTION ........................................................................1

II.     BACKGROUND ..........................................................................4

        A.      The Genesis of the Present Litigation ....................................4

                1.      The *Trauth* Action ...........................................................4

        B.      The 2017 Litigation Following The *Trauth* Settlement .......................6

                1.      The *Ortega* Action .......................................................6

                2.      The *Byrne* Action ........................................................8

                        a.      *Byrne* Motion Practice and Mediation.............................8

                        b.      Intervention in *Byrne* .....................................9

                3.      The *Bracy* Action .......................................................10

                4.      The *Nelson* Action – the Los Angeles Superior Court
                        Action.......................................................................10

        C.      Preliminary Approval of the Settlement .............................................11

        D.      The Settlement Classes...............................................................12

        E.      The Settlement...........................................................................12

        F.      Notice Process ..........................................................................13

                1.      Notice of the Settlement Issued to the Settlement Class
                        Members Per this Court's Order Preliminarily Approving
                        the Settlement...............................................................13

                2.      CAFA's Notice Requirements Have Been Satisfied. ..............15

3.     PAGA's Notice Requirements Have Been Met........................15

III.    ARGUMENT.................................................................................16

A.    The Best Practicable Notice of Settlement Has Been Provided to the

Class. ................................................................................16

B.    Final Approval Is Appropriate Under Rule 23 as the Agreement Is

Fair, Adequate, and Reasonable.............................................17

C.    The Agreement Recognizes and Values the Risks of Continued

Litigation. ........................................................................18

1.     Class Action Waivers Could Be Found Enforceable................19

2.     Defendants Have Sought to Comply with *Truth*. ...................20

3.     Defendants May Be Entitled to an Offset................................21

D.    The Settlement Is Presumptively Fair Because of the Relatively Few

Objections to the Settlement by Class Members, the Discovery

Conducted, Class Counsel's Experience, and the Arms-Length

Negotiations.......................................................................22

1.     The Settlement Has Been Met with Approval by Class

Members......................................................................23

a.     The *Nelson* Objection Should Not Be Considered by the

Court When Determining Final Fairness of the

Settlement Because Shala Nelson Lacks Standing.........24

b.     The Objections Advanced by Attorneys for Nelson and

Ortega Do Not Support Denial of Final Approval of the

Case No. 5:17-cv-00527 JGB (KK)
NOTICE OF MOTION AND UNOPPOSED MOTION
FOR FINAL APPROVAL OF SETTLEMENT

Settlement; the Objections Merely Seek Payoffs for

Those Attorneys..............................................................25

    c.    The Settlement Provides Fair, Adequate, and Reasonable

Monetary, Non-Monetary, and Injunctive Relief to the

Class Members................................................................28

    2.    The Parties Conducted Sufficient Investigation,

Discovery, and Analysis Resulting in a Fair, Reasonable,

and Adequate Settlement. ........................................35

    3.    Experienced Class Counsel Endorse this Settlement................36

    4.    The Settlement Is the Result of Arms-Length

Negotiations Before an Experienced Neutral Mediator............36

  E.    The Court Should Grant Final Class Certification and Collective

Action Designation..................................................................37

  F.    The Court Should Award Class Counsel Twenty Five Percent of the

Eight and One-Half Million Dollar Common Fund Plus Reasonable

Expenses. ............................................................................38

  G.    The Court Should Approve the Class Representative Service Awards

Contemplated in the Settlement. ..........................................42

IV.    CONCLUSION............................................................................43

1

# TABLE OF AUTHORITIES

**Page(s)**

2   **Federal Cases**

3

4   *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,

5       789 F. Supp. 2d 935 (N.D. Ill. 2011) ..................................................................34

6   *Barbosa v. Cargill Meat Sols. Corp.*,

7       297 F.R.D. 431 (E.D. Cal. July 2, 2013) ...........................................................39

8   *Bellinghausen v. Tractor Supply Co.*,

9       306 F.R.D. 245 (N.D. Cal. 2015)........................................................................43

10  *In re Bluetooth Headset Prods. Liab. Litig.*,

11      654 F.3d 935 (9th Cir. 2011) ...............................................................................38

12  *Boeing Co. v. Van Gemert*,

13      444 U.S. 472 (1980)...............................................................................................40

14  *Boyd v. Bechtel Corp.*,

15      485 F. Supp. 610 (N.D. Cal. 1979) ...............................................................18, 36

16  *Carter v. Anderson Merchandise, LP*,

17      No. EDCV 08-00025-VAP, 2010 WL 144067 (C.D. Cal. Jan. 7,

18      2010) .........................................................................................................................23

19  *Class Plaintiffs v. City of Seattle*,

20      955 F.2d 1268 (9th Cir. 1992) ...............................................................3, 17, 18

21  *Dennis v. Kellogg Co.*,

22      No. 09-CV-1786-L, 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013)...................28

23

24

*Detroit v. Grinnell Corp.*,

    495 F .2d 448 (2d Cir. 1974) ...............................................................31

*Eisen v. Carlisle & Jacquelin*,

    417 U.S. 156 (1974)...........................................................................16

*Ellis v. Naval Air Rework Facility*,

    87 F.R.D. 15 (N.D. Cal. 1980)....................................................18, 36

*Epic Systems Corp. v. Lewis*

    (U.S. Jan. 13, 2017) .......................................................................7, 19

*Ernst & Young LLP v. Morris*

    (U.S. Jan. 13, 2017) ....................................................................*passim*

*Glass v. UBS Fin Servs., Inc.*,

    No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan 26, 2007).............23, 25

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011 (9th Cir. 1998) .....................................................17, 36

*Harris v. Marhoefer*,

    24 F.3d 16 (9th Cir. 1994) ..................................................................40

*Hart v. Rick's Cabaret Int'l, Inc.*,

    967 F. Supp. 2d 901 (2013) ...............................................................21

*In re Heritage Bond Litig.*,

    No. 02–ML–1475 DT, 2005 WL 1594403 (C.D. Cal June 10, 2005) .................................................................................42

*Hess v. Madera Honda Suzuki*,

    No. 1:10-cv-01821-AWI-BAM, 2012 WL 4052002 (E.D. Cal.

    Sept. 14, 2012) ...................................................................................6

*Hughes v. Microsoft Corp.*,

    No. C98-1646C, 2001 WL 34089697 (W.D. Wash. Mar. 26, 2001) ................37

*In re Immune Response Secs. Litig.*,

    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..............................................40

*Jane Doe 1, et al. v. Deja Vu Consulting, Inc., et al.*,

    No. 17-1801 (6th Cir. docketed July 13, 2017) ................................29

*Jane Roes 1-2 v. SFBSC Mgmt., LLC*,

    No. 14-cv-03616-LB (N.D. Cal. July 3, 2017) ............................28, 39

*Jenson v. Cont'l Fin. Corp.*,

    591 F.2d 477 (8th Cir. 1979) ..............................................25

*Lawson v Grubhub, Inc.*,

    No. 15-cv-05128-JSC, 2018 WL 776354 (N.D. Cal. Feb 8, 2018)..................27

*Lillehagen v. Alorica, Inc.*,

    No. 8:13-cv-00092-DOC(JPRx) (C.D. Cal. Dec. 5, 2016)................................15

*Linney v. Cellular Alaska P'ship*,

    No. C–96–3008 DLJ, 1997 WL 450064 (N.D. Cal. 1997) ................................42

*Lynn's Food Stores, Inc. v. United States*,

    679 F.2d 1350 (11th Cir. 1982) ..............................................17

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*,

    671 F. Supp. 819 (D. Mass. 1987)..............................................22

*Mandujano v. Basic Vegetable Prods. Inc.*,

    541 F.2d 832 (9th Cir. 1976) ...............................................................34

*Mayfield v. Barr*,

    985 F.2d 1090 (D.C. Cir. 1993)...........................................................25

*McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*,

    No. 1:16-cv-00157-DAD-JLT, 2017 WL 5665848 (E.D. Cal. Nov.

    22, 2017) ..............................................................................................41

*In re Mego Fin. Corp. Sec. Litig.*,

    213 F.3d 454 (9th Cir. 2000) ........................................................31, 35

*Mullane v. Cent. Hanover Bank & Trust Co.*,

    339 U.S. 306 (1950)............................................................................16

*Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*,

    221 F.R.D. 523 (C.D. Cal. 2004).........................................................34

*In re Netflix Privacy Litig.*,

    No. 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18,

    2013) ....................................................................................................39

*NLRB v. Murphy Oil USA, Inc.*

    (U.S. Jan. 13, 2017) .......................................................................7, 19

*Officers for Justice v. Civil Serv. Comm'n*,

    688 F.2d 615 (9th Cir. 1982).........................................17, 18, 24, 31

*In re Omnivision Techs, Inc.*,

    559 F. Supp. 2d 1036 (N.D. Cal. 2008)...............................................38

Case No. 5:17-cv-00527 JGB (KK)
NOTICE OF MOTION AND UNOPPOSED MOTION
FOR FINAL APPROVAL OF SETTLEMENT

*In re Online DVD-Rental Antitrust Litig.*,

    779 F.3d 934 (9th Cir. 2015) ...............................................................33

*Ortiz v. Fibreboard Corp.*,

    527 U.S. 815 (1999)..........................................................................22

*In re Pacific Enters. Sec. Litig.*,

    47 F.3d 373 (9th Cir. 1995) ........................................................36, 41

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,

    986 F. Supp. 2d 207 (E.D.N.Y. 2013) ..............................................31

*Phillips Petrol. Co. v. Shutts*,

    472 U.S. 797 (1985)..........................................................................16

*Pokorny v. Quixtar, Inc.*,

    No. C 07–0201 SC, 2013 WL 3790896 (N.D. Cal. July 18, 2013)....................39

*Reed v. 1-800 Contacts, Inc.*,

    No. 12-cv-02359 JM (BGS), 2014 WL 29011 (S.D. Cal. Jan. 2,

    2014) ................................................................................................30

*Rodriguez v. West Publ'g Corp.*,

    563 F.3d 948 (9th Cir. 2009) ........................................................36, 42

*Singer v. Postmates, Inc.*,

    No. 4:15-cv-01284-JSW, 2017 WL 4842334 (N.D. Cal. Sept. 1,

    2017) ..........................................................................................27, 30

*Staton v. Boeing Co.*,

    327 F.3d 938 (9th Cir. 2003) ................................................3, 17, 39, 40

NOTICE OF MOTION AND UNOPPOSED MOTION
FOR FINAL APPROVAL OF SETTLEMENT

*Strube v. Am. Equity Inv. Life Ins. Co.*,

   226 F.R.D. 688 (M.D. Fla. 2005) ...................................................30

*Tijero v. Aaron Bros., Inc*.,

   No. C 10-01089-SBA, 2013 WL 6700102 (N.D. Cal. Dec. 19,

   2013) ...................................................................................37

*Torrisi v. Tucson Elec. Power Co*.,

   8 F.3d 1370 (9th Cir. 1993) .................................................18

*In re Toys R Us-Del., Inc.—Fair & Accurate Credit Transactions Act*

   *(FACTA) Litig.*,

   295 F.R.D. 438 (C.D. Cal. 2014).........................................30

*Trauth v. Spearmint Rhino Cos. Worldwide, Inc.*,

   No. EDCV 09-01316-VAP, 2012 WL 12893448 (C.D. Cal. 2012)....................5

*In re UnitedHealth Grp. Inc. PSLRA Litig.*,

   643 F. Supp. 2d 1107 (D. Minn. 2009)................................26

*Van Vranken v. Atl. Richfield Co.*,

   901 F. Supp. 294 (N.D. Cal. 1995)..............................40, 43

*Vandervort v. Balboa Capital Corp.*,

   8 F. Supp. 3d 1200 (C.D. Cal. 2014) ...........................39, 41

*Vasquez v. Coast Valley Roofing, Inc.*,

   266 F.R.D. 482 (E.D. Cal. 2010) ........................................38

*Vizcaino v. Microsoft Corp.*,

   290 F.3d 1043 (9th Cir. 2002) .....................................38, 41

NOTICE OF MOTION AND UNOPPOSED MOTION
FOR FINAL APPROVAL OF SETTLEMENT

*Williams v. MGM-Pathe Commc'ns Co.*,

    129 F.3d 1026 (9th Cir. 1997) ..........................................................................39

*Young v. Polo Retail, LLC*,

    No. C-02-4546 VRW, 2007 WL 951821 (N.D. Cal. Mar. 28, 2007).................39

*Zamora v. Ryder Integrated Logistics, Inc.*,

    No. 13cv2679-CAB (BGS), 2014 WL 9872803 (S.D. Cal. Dec. 23,

    2014) .................................................................................................................25

**Federal Statutes**

28 U.S.C. § 1715(d) ....................................................................................................15

29 U.S.C. § 216(b) ...............................................................................................7, 12

Class Action Fairness Act .........................................................................................15

Fair Labor Standards Act ..................................................................................*passim*

Federal Arbitration Act ................................................................................................7

National Labor Relations Act ......................................................................................7

**State Statutes**

California Private Attorneys General Act.........................................................*passim*

**Rules**

Federal Rule of Civil Procedure 23(a) ......................................................................37

Federal Rule of Civil Procedure 23(b)(3) .................................................................37

Federal Rule of Civil Procedure 23(e).................................................2, 17, 24, 25

Federal Rule of Civil Procedure 23(h).................................................................38, 40

Federal Rule of Civil Procedure 24(a).........................................................................9

Federal Rule of Civil Procedure 24(b).................................................................9, 10

Case No. 5:17-cv-00527 JGB (KK)

NOTICE OF MOTION AND UNOPPOSED MOTION

FOR FINAL APPROVAL OF SETTLEMENT

**MEMORANDUM IN SUPPORT OF MOTION**

## I.    INTRODUCTION

Plaintiffs seek final approval of this Settlement pursuant to the terms of the Settlement Agreement, which received Preliminary Approval on October 30, 2017. Defendants do not oppose the request. The Intervenor Class does not oppose the request.

This Settlement resolves litigation over Plaintiffs' and Class Members' claims that Defendants violated the Fair Labor Standards Act ("FLSA") and other state wage and hour laws, by, among other things, allegedly misclassifying Plaintiffs, failing to pay overtime, failing to pay minimum wage, failing to provide meal and rest periods and by misappropriating tips as a result of Defendants' alleged misclassification of its entertainers as LLC members instead of employees at certain gentlemen's clubs across the nation, excluding gentlemen's clubs branded as Spearmint Rhino in Nevada. (*See* ECF No. 75 - Plaintiffs' Second Amended Complaint lists the following as Defendants: City of Industry Hospitality Venture, Inc., City of Industry Hospitality Venture, LLC, DG Hospitality Van Nuys, LLC, Farmdale Hospitality Services, Inc., Farmdale Hospitality Services, LLC, High Expectations Hospitality, LLC, High Expectations Hospitality Dallas, LLC, Inland Restaurant Venture I, Inc., Inland Restaurant Venture I, LLC, Kentucky Hospitality Venture, LLC, Kentucky Hospitality Venture Lexington, LLC, L.C.M., LLC, LCM1, LLC, Midnight Sun Enterprises, Inc., Midnight Sun Enterprises, LLC, Nitelife, Inc., Nitelife Minneapolis, LLC, Olympic Avenue Venture, Inc., Olympic Avenue Ventures, LLC, Rialto Pockets, Incorporated,

Rialto Pockets, LLC, Rouge Gentlemen's Club, Inc., Santa Barbara Hospitality

Services, Inc., Santa Barbara Hospitality Services, LLC, Santa Maria Restaurant

Enterprises, Inc., Santa Maria Restaurant Enterprises, LLC, Sarie's Lounge, LLC,

The Oxnard Hospitality Services, Inc., The Oxnard Hospitality Services, LLC,

Washington Management, LLC, Washington Management Los Angeles, LLC,

Wild Orchid, Inc., Wild Orchid Portland, LLC, World Class Venues, LLC, World

Class Venues Iowa, LLC, W. P. B. Hospitality, LLC, WPB Hospitality West Palm

Beach, LLC, The Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino

Consulting Worldwide, Inc., which own and operate gentlemen's clubs or are LLC's

under which entertainers provide their services located throughout the country

operating under the names "Spearmint Rhino Gentlemen's Club" ("Spearmint

Rhino"), "Dames N Games Topless Sports Bar & Grill" ("Dames N Games").

and/or "Blue Zebra Adult Cabaret" ("Blue Zebra")).

The Settlement is the product of arms-length negotiation by experienced

counsel, facilitated by a well-respected mediator and former Judge, and after

significant investigation, and recognition of the strengths and weaknesses of each

party's factual and legal arguments and positions. Those strengths and weaknesses

were set forth in detail in the Motion for Preliminary Approval. (*See* ECF No. 64.).

The Settlement in the amount of $8,500,000.00[1] readily satisfies the Rule 23

standard of being "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The

Class has responded overwhelmingly favorably to the settlement. With only three

---

[1]   The settlement total could potentially rise to $11,000,000 if certain conditions are met (*See* Dkt. No. 74 at pg. 11).

Case No. 5:17-cv-00527 JGB (KK)
MEMORANDUM IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF SETTLEMENT

objections[2] and 54 timely opt-out requests to date out of the approximately 8,472 Class Members who were sent notice of the Settlement (0.6% opt-out rate and 0.03% objection rate), response to the Settlement has been remarkably positive and supports final approval.

In support of this Motion, Plaintiffs submit final data regarding opt-out requests and objections through the declaration of a representative of Kurtzman Carson Carlson, LLC, & Co ("KCC") (the "Claims Administrator"). (Exhibit A - Declaration of Ryanne Cozzi).

Furthermore, Class Counsel have conducted discovery sufficient to enable them to adequately evaluate the claims and defenses in the action. (*See* ECF No. 74, pp. 11-12).

Lastly, the Settlement is reasonable and consistent with the strength of Plaintiffs' claims given the risk, expense, complexity, and likely duration of continuing litigation. *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

Plaintiffs therefore seek:

(1)     Final confirmation and certification of the Rule 23 Classes listed in the Settlement Agreement and certified in the Court's Preliminary Approval Order;

(2)     Implementation of relief provided in the Settlement Agreement;

---

[2]     The objection of Shala Nelson should be stricken as she opted out of the Settlement which will be addressed in response to Nelson's objection, hence leaving only 2 objections.

(3)    Confirmation of Settlement of all PAGA Claims supported by Payment of $100,000 pursuant to the California PAGA Labor Codes with $75,000 being paid to the California Labor and Workforce Development attorney and $25,000 being allocated to payment of claims under the California Class Settlement;

(4)    Designation of the case as a collective action under the FLSA as preliminarily designated in the Court's Preliminary Approval Order;

(5)    The appointment of Plaintiffs as the Class Representatives and of Plaintiffs' counsel as Class Counsel as provided in the Preliminary Approval Order ("Class Counsel");

(6)    An award of attorneys' fees and expenses totaling $2,144,646.86; and

(7)    An award of a $2,500 Class Representative Service award to each Plaintiff (Byrne, Bracy, Bedford, and Disla); and

(8)    A set aside of up to $85,000 to the Claims Administrator to administer the action after Final Approval.

## II.    BACKGROUND

### A.    The Genesis of the Present Litigation

#### 1.    The *Truth* Action

On July 13, 2009, Plaintiff Tracy Dawn Truth ("Truth") filed an action styled *Tracy Dawn Truth v. Spearmint Rhino Consulting Worldwide, Inc., et al.*, Case No. EDCV09-1316 VAP (DTBx) in the United States District Court for the Central District of California (the "*Truth* Action"). There, Truth alleged that persons who performed as entertainers at the adult cabarets known as Spearmint

Rhino (and other then-existing clubs) nationwide should have been treated as employees rather than independent contractors, and as a result were entitled to, but did not receive, adequate compensation and benefits in exchange for the services they provided to the Spearmint Rhino nightclubs.

On May 17, 2010, the parties to the *Trauth* Action entered into an Amended and Restated Stipulation and Settlement Agreement (Exhibit B - *Trauth* Ct. Dkt. No. 160 (the "*Trauth* Settlement Agreement")). The Honorable Virginia A. Phillips approved the *Trauth* Settlement Agreement on November 7, 2012. *See Trauth v. Spearmint Rhino Cos. Worldwide, Inc.*, No. EDCV 09-01316-VAP (DTBx), 2012 WL 12893448 (C.D. Cal. 2012). The Court ordered certain injunctive relief which required the nightclubs to treat entertainers as either employees or owners (*e.g.*, shareholder, limited partner, partner, member, or other type of ownership stake) within six months of the Effective Date of the *Trauth* Settlement Agreement. *Id.* at *1.

As required by the *Trauth* court-approved settlement agreement, the *Trauth* defendants established and created policies and procedures that provided entertainers with a choice to be either employees or members of an LLC. The defendants in the *Trauth* Action implemented that policy at all of the night clubs existing and operating at that time. Those defendants also implemented the employee versus LLC member election at clubs acquired or created after the *Trauth* Settlement Agreement received final approval, and have continued to implement the employee versus LLC member election at night clubs acquired or created up to and including the present time.

Case No. 5:17-cv-00527 JGB (KK)
MEMORANDUM IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF SETTLEMENT

### B.   The 2017 Litigation Following The *Trauth* Settlement

In 2017, four lawsuits were filed following the *Trauth* Settlement; three in federal district court and one in California Superior Court. The three federal court actions have been deemed related and are all pending before the Honorable Jesus G. Bernal in the California Central District, Eastern Division.

### 1.   The *Ortega* Action

On February 3, 2017, Plaintiff Adriana Ortega ("Ortega") filed the case styled *Adriana Ortega v. The Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting Worldwide, Inc. and Midnight Sun Enterprises*; Case No. 5:17-cv-00206-JGB-KK (the "*Ortega* Action"). On April 14, 2017, Ortega filed a first amended complaint adding California Private Attorneys General Act ("PAGA") claims. (Exhibit C - *Ortega* Ct. Dkt. No. 34). Through pleadings filed with the Court, Plaintiff Ortega sought to represent a class of entertainers <u>in California only</u> relative to the defendants' alleged violations of the FLSA including alleged misclassification as independent contractors[3] and other claims. At a June 2017 hearing, counsel for Ortega indicated an intent to expand the putative class to a "national class." (Exhibit D - *Ortega* Ct. Dkt. No. 48 – June 12, 2017 Minute Order)).

On June 12, 2017, the Court ruled on three motions in *Ortega*: (1) Plaintiff's

---

[3]   *Ortega*'s allegations varied significantly from those raised in the above-captioned case. In an independent contractor wage case, the threshold legal issue is whether an individual is an employee or an independent contractor. In contrast, in this case, the threshold legal issue is whether the plaintiffs were employees or owners/employers. *See, e.g., Hess v. Madera Honda Suzuki*, No. 1:10-cv-01821-AWI-BAM, 2012 WL 4052002, at *3 (E.D. Cal. Sept. 14, 2012).

motion for class notice to entertainers classified as 1099 independent contractors

pursuant to 29 U.S.C. § 216(b) (Exhibit E - *Ortega* Ct. Dkt. No. 16);

(2) Defendants' motion to compel arbitration pursuant to a written arbitration

agreement (Exhibit F - *Ortega* Ct. Dkt. No. 18); and (3) Defendants' motion to stay

(Exhibit G - *Ortega* Ct. Dkt. No. 21) pending a ruling from the United States

Supreme Court ("SCOTUS") on the validity of class action waivers in *Morris*.[4] In

particular, the Court in *Ortega* ruled:

> As the above discussion makes clear, the Supreme Court's decision in
> *Morris* will control the outcome of this case: if the Supreme Court
> affirms the Ninth Circuit's decision, Plaintiff will likely be able to
> move forward on her collective action claims in this Court; if it issues
> a reversal, Plaintiff will be bound by the [Arbitration] Agreement and
> required to individually arbitrate her claims. Given the centrality of
> *Morris* to the outcome here, the Court finds that a stay–at least in
> some form–may be appropriate to allow for resolution on the question
> of whether the arbitration agreement is enforceable despite its bar on
> collective action.[5]

(Exhibit D - *Ortega* Ct. Dkt. No. 48, p. 14). In sum, this Court denied the

defendants' motion to compel arbitration pending a decision by the Supreme Court

in *Morris*; denied the plaintiff's motion for conditional certification but granted, in

---

[4]    In *Epic Systems Corp. v. Lewis* (U.S. Jan. 13, 2017) (No. 16-285); *Ernst &
Young LLP v. Morris* (U.S. Jan. 13, 2017) (No. 16-300), and *NLRB v.
Murphy Oil USA, Inc*. (U.S. Jan. 13, 2017) (No. 16-307) (collectively
referred to herein as "*Morris*"), the United States Supreme Court granted
certiorari on the question of: "Whether an agreement that requires an
employer and an employee to resolve employment-related disputes through
individual arbitration, and waive class and collective proceedings, is
enforceable under the Federal Arbitration Act, notwithstanding the
provisions of the National Labor Relations Act."

[5]    *Morris* and its related cases were argued to the United States Supreme Court
on October 1, 2017. A ruling is pending.

- 7 -

part, the defendant's motion to stay. (*Id.*) The parties in *Ortega* subsequently

stipulated to stay the *Ortega* action pending the settlement approval process in

*Byrne*. (*Ortega* Ct. Dkt. No. 58 and Dkt. No. 59).

### 2.    The *Byrne* Action

On March 21, 2017, Plaintiff Lauren Byrne ("Byrne") filed the present case:

*Lauren Byrne v. Santa Barbara Hospitality, Inc., The Spearmint Rhino Companies*

*Worldwide, Inc., Spearmint Rhino Consulting Worldwide, Inc. and Santa Barbara*

*Hospitality Services, LLC* [6] Case No. 5:17-cv-00527-SVW-SP (the "*Byrne*

Action"). Byrne sought to represent a <u>nationwide class</u> of entertainers for alleged

violations of the FLSA and other claims, including a representative PAGA action.

Byrne was the first lawsuit to perfect the PAGA claims. (*See Byrne* Ct. Dkt. No. 42

at ¶ 206). The *Byrne* Action also involved the largest pre-notice participation of

other entertainers. In particular, Jennifer Diaz, Bianca Haney, Bambie Bedford,

Cynthia Garza, Brooke Richart, Jennifer Disla, and Carmen Ramos "opted-in" to

the *Byrne* Action before receiving notice of the action through any class or

collective action procedure. (*Byrne* Ct. Dkt. Nos. 28, 30, 33, 56, & 59).

### a.    *Byrne* Motion Practice and Mediation

At the outset, Plaintiff and Defendants initiated the same adversarial motion

practice conducted in *Ortega*. For instance, on July 20, 2017, Defendants filed a

motion to stay the *Byrne* Action based upon *Morris*. (*Byrne* Ct. Dkt. No. 48).

Byrne filed a motion for conditional certification of FLSA collective action and

---

[6]    Defendants and Defendants' businesses are sometimes collectively referred
to herein as "Spearmint Rhino."

Case No. 5:17-cv-00527 JGB (KK)
MEMORANDUM IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF SETTLEMENT

1    issuance of notice that same day. (*Byrne* Ct. Dkt. No. 49).

2        However, on July 25, 2017, the Parties stipulated to continue the hearing

3    date on those motions to September 4, 2017, in order to participate in mediation

4    before Hon. Robert Altman (Ret.) on July 28, 2017 at ADR Services in Los

5    Angeles, California. (*Byrne* Ct. Dkt. No. 50). The Parties further stipulated to

6    continue the hearing date on the cross motions in the event that settlement could

7    not be reached or preliminary or final approval was denied. (*Byrne* Ct. Dkt. Nos.

8    55, 69, & 77).

9                    **b.    Intervention in *Byrne***

10        While the Parties attended mediation on July 28, 2017, Intervenors Meghan

11   Herrera, Danielle Hach, Alisa Osborne, Carlie Zufelt, Gena Torres, Regina Cabral,

12   and Sabrina Preciado (the "Intervenors") filed a motion to intervene in this action

13   as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2) or in the

14   alternative, seek permissive intervention pursuant to Federal Rule of Civil

15   Procedure 24(b)(1). (*Byrne* Ct. Dkt. Nos. 53 & 54). The Intervenors appeared at

16   mediation, and had the opportunity to advance and negotiate their interests.

17        On August 29, 2017, the Court granted Intervenors the right to intervene,

18   ruling:

19        [. . .] Dancer Intervenors have a 'significant protectable interest' in
20        this case. First, Dancer Intervenors have an interest in preserving their
         ownership status in the LLC. The ownership status Dancer Intervenors
21        seek to protect is derived from the terms of their individual
         Membership Agreements. The Membership Agreements constitute
22        contracts to which contract law is applicable. Thus, the ownership
         interests of Dancer Intervenors are 'protectable under some law' –
         specifically contract law.
23

24

- 9 -

> Second, there is a relationship between Dancer Intervenors' interest in preserving their ownership status in the LLC and the claims at issue in [Plaintiff's First Amended Complaint] [. . .] Because the outcome of this action may affect Dancer Intervenors' contractual classification as [LLC] members and owners, the relationship requirement is also satisfied.

(*Byrne* Ct. Dkt. No. 61). The Court also ruled that neither Byrne nor Defendants were able to adequately represent the interests of the Dancer Intervenors and they must be allowed to intervene to protect their interests as LLC Members. (*Id.*).

### 3.    The *Bracy* Action

On May 3, 2017, Plaintiff Jenetta Bracy ("Bracy") filed the case styled *Jenetta L. Bracy v. DG Hospitality Van Nuys, LLC; The Spearmint Rhino Companies Worldwide, Inc.; Spearmint Rhino Consulting Worldwide, Inc.; Dames N' Games; John Does #1-10; and XYZ Corporations #1-10*, Case No. 5:17-cv-00854. Bracy also sought to represent a nationwide class of entertainers for alleged violations of the FLSA. In the interim, Houston Isabelle "opted in" to the *Bracy* Action. (Exhibit H - *Bracy* Ct. Dkt. No. 23). The *Bracy* action has been stayed pending the outcome in *Byrne*. The *Bracy* plaintiffs and their counsel participated in the *Byrne* mediation. (*See Byrne* Ct. Dkt. No. 64-3, 64-4, & 64-5).

### 4.    The *Nelson* Action – the Los Angeles Superior Court Action

On August 15, 2017, approximately three months after Byrne exhausted her administrative remedies (*see Byrne* Ct. Dkt. No. 40, p.2 (filed on May 26, 2017)), Plaintiff Shala Nelson ("Nelson") filed the case styled *Shala Nelson v. Farmdale Hospitality Services, LLC, dba Blue Zebra Gentleman's Club; Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting, and DOES 1-20*, in the Los Angeles Superior Court, Case No. BC671852 (the "*Nelson* Action"). Nelson

purports to pursue a PAGA representative action only on behalf of entertainers at **one** night club, the Blue Zebra Adult Cabaret in Van Nuys, California claiming entertainers who chose to be LLC Members are misclassified.

Like any prospective entertainer, before stating as an entertainer, Nelson was offered applications to work as an employee, but chose to perform as an LLC member. Nelson was a current LLC Member when she sent a PAGA notice letter to defendants and the California Labor and Workforce Development Agency ("LWDA"), and was again offered the choice to be an employee after defendants responded to the PAGA notice. On July 25, 2017, despite claiming misclassification, she provided written notice that she refused to change her status to employee "because doing so would be detrimental to her earning capacity." (Exhibit K).

All proceedings in the *Nelson* case have been temporarily stayed until April 23, 2018, pending a ruling on this Motion for Final Approval.

## C. Preliminary Approval of the Settlement

On October 30, 2017, this Court granted preliminary approval of the Settlement Agreement, certified a number of Settlement Classes, and ordered that notice be sent to the Classes per the Settlement. The Court then set a schedule for final approval. (ECF Nos. 74 & 80). The Court determined the Settlement "falls within the range of possible approval as fair, adequate, and reasonable," was "the result of arms-length negotiations between the Parties," was "non-collusive," and was reached only "after Class Counsel had investigated Plaintiffs' claims and become familiar with their strengths and weaknesses." (ECF Nos. 74 & 80).

### D.     The Settlement Classes

As part of the Settlement, for purposes of settlement only, Defendants agreed to certification of state law settlement classes under Rule 23 of the Federal Rules of Civil Procedure consisting of all current and former entertainers who performed at Defendants' gentlemen's clubs during the applicable Covered Periods under the laws of California, Florida, Idaho, Iowa, Kentucky, Minnesota, Oregon, and Texas. (ECF No. 64-1, p. 13).

In addition, solely for purposes of settlement, Defendants agreed to certification of an FLSA collective action consisting of "similarly situated" entertainers at Spearmint Rhino and affiliated locations nationwide (excluding Nevada) pursuant to 29 U.S.C. § 216(b). *Id.*

### E.     The Settlement

Plaintiffs incorporate by reference the description of the Settlement in their Motion for Class Certification and Preliminary Approval of Settlement. (ECF No. 64, pp. 19-35). Plaintiffs summarize that description below for the convenience of the Parties and of the Court.

The Settlement is valued in the amount of at least $8,500,000. (ECF No. 64-1, p. 49). The Class Members have now had the opportunity to make a claim during a 60-day period by filing the claim form issued to them subsequent to preliminary approval of the Settlement. Submitting a claim form entitles them to a portion of the Settlement fund. (ECF No. 64-1, p. 53). Class Members who have not made timely claims still have up to one year after the Effective Date to receive Overhead Payment Credit Benefits. (ECF No. 64-2, p. 80). The Settlement also

contains significant injunctive relief, including changes to the LLC agreements and changes to employment practices at the Existing Night Clubs.

Should the Settlement of the lawsuit be finally approved, those Settlement Class Members who have not opted-out of the lawsuit will release Defendants of the claims designated in the Settlement Agreement and all PAGA Claims. (ECF No. 64-1, p. 60). The scope of the release is fully described in the Court-approved Notice. (*See* ECF No. 64-2, pp. 66-67).

**F.    Notice Process**

**1.    Notice of the Settlement Issued to the Settlement Class Members Per this Court's Order Preliminarily Approving the Settlement.**

The procedures for giving notice to the Class Members, as set forth in the Settlement and ordered in the Preliminary Approval Order, have been followed. The Court directed the proposed Class Notice and exclusion forms be sent to Class Members, in the manner specified by the Settlement. (ECF No. 80).

The Parties implemented the instructions of the Preliminary Approval Order in this regard. On or about November 13, 2017, Defendants provided the settlement administrator, KCC, with a list of each Class Member's contact information to the extent available in Defendants' electronic records and information adequate to calculate Class Members' award allocations, including but not limited to Dance Days worked within the Covered Period. (*See* Exhibit A - Declaration of KCC representative Ryanne Cozzi). On December 4, 2017, KCC sent the Class Notice and exclusion forms to each of the approximately 8,472 Class Members. (*Id.*, ¶ 6).

The Court-approved Notice and the exclusion forms contained detailed information about the lawsuit, including the total amount of the settlement, the method by which the settlement funds would be allocated to the Class Members, and procedures for opting-out of or objecting to the settlement. (*Id*., ¶ 6).The Notice also provided contact information for Class Counsel and the Settlement Administrator. (*Id*., ¶ 6).

The Settlement Administrator followed accepted best practices to ensure that the Notice reached as many Class Members as feasible. The Settlement Administrator disseminated the Court-approved Notice to all Class Members by first class mail. (*Id*., ¶ 6).The Settlement Administrator used the National Change of Address ("NCOA") database to verify the accuracy of all addresses prior to sending the Notices. (*Id*., ¶ 5). The Settlement Administrator ran traces on the addresses of any returned Notices to again search for an updated address. (*Id*., ¶¶ 5-7). The Settlement Administrator also maintained a toll-free telephone number and a website to provide Class Members with additional information. (*Id*., ¶ 8).

In addition to the above, KCC placed the class notice documents, the Second Amended Complaint, the Settlement Agreement, the Preliminary Approval Order, and a reference to the PACER website for the Central District Court on its website within five days of the entry of the Preliminary Approval Order. (*Id*.). Defendants also prominently posted a copy of the class notice in the clubs' dressing rooms. (*See* Exhibit L - Declaration of Aja Matelyan). The Notices stayed posted until five days after the close of the time period for class members to file a claim or opt out. (*Id*., ¶ 9).

## 2.   CAFA's Notice Requirements Have Been Satisfied.

On or about November 1, 2017, KCC provided appropriate notice to state and federal officials. (*See* Exhibit A - Declaration of Ryanne Cozzi at ¶16). As of the date of Plaintiffs' Motion for Final Approval, no state or federal official objected to the terms of the Settlement. *Id.* at ¶17. Moreover, no government official has since raised an objection between the time of Plaintiffs' Motion for Final Approval and the present day. *Id.*

The final approval hearing is set for March 5, 2018, which is more than 90 days after the issuance of the CAFA notice, such that the final approval order may be entered in accordance with CAFA's notice requirements if the Court finds that all other requirements are met. 28 U.S.C. § 1715(d).

## 3.   PAGA's Notice Requirements Have Been Met.

Procedural changes to PAGA went into effect on June 27, 2016. *See* Cal. Labor Code § 2699(l)(2). Accordingly, Plaintiffs submitted the proposed Settlement to the Labor and Workforce Development Agency. (Exhibit M, ¶ 1 - Declaration of Melinda Arbuckle). The LWDA has had notice of the proposed Settlement for months and has not filed an objection to the Settlement. (*Id.*, ¶ 2). The allocation of the settlement funds to the LWDA under the Settlement of $75,000 is in line with the *Trauth* Action and other approved settlements. *See, e.g.*, (Exhibit B - *Trauth* Ct. Dkt. No. 160, p. 47 ($15,000 paid to LWDA out of $10 million common fund)); (Exhibit N - *Lillehagen v. Alorica, Inc.*, No. 8:13-cv-00092-DOC(JPRx) (C.D. Cal. Dec. 5, 2016) (*Lillehagen* Ct. Dkt. Nos. 245, p. 15 (describing nationwide class action Settlement allocating $20,000 to LWDA

payment out of $9.25 million common fund) & 276 (Order approving *Alorica* Settlement)). This settlement resolves all potential PAGA claims against all Defendants in this Lawsuit.

## III.   ARGUMENT

### A.   The Best Practicable Notice of Settlement Has Been Provided to the Class.

The mailing of the Class Notice and exclusion forms to the Settlement Class Members and the general administration of the notice process as described above (including posting in the dressing room and website), meet the requirements for the "best practicable" notice in this case as necessary to protect the due process rights of the Settlement Class Members. *See Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best practicable" notice with description of the litigation and explanation of opt-out rights satisfies due process); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) (individual notice must be sent to class members who can be identified through reasonable means); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections"). Here, approximately 95% of the class received notice of the settlement. (See Exhibit A - Declaration of Ryanne Cozzi at ¶7). Therefore, the Court may proceed to determine the fairness and adequacy of the Settlement, and order its approval, secure in the knowledge that all absent Class Members have been given the opportunity to participate fully in the opt-out, comment, and

1   approval process.

2   **B.    Final Approval Is Appropriate Under Rule 23 as the Agreement
        Is Fair, Adequate, and Reasonable.**

3

4   "[V]oluntary conciliation and settlement are the preferred means of dispute

5   resolution," especially in complex class actions. *Officers for Justice v. Civil Serv.*

6   *Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Class action lawsuits readily lend

7   themselves to compromise because of the difficulties of proof, the uncertainties of

8   the outcome, and the typical length of the litigation. *City of Seattle*, 955 F.2d at

9   1276 (noting that "strong judicial policy [. . .] favors settlements, particularly

10  where complex class action litigation is concerned").

11  On a motion for final approval of a class action settlement under Federal

12  Rule of Civil Procedure 23(e), a court's inquiry is whether the settlement is "fair,

13  adequate and reasonable," recognizing that "'it is the settlement taken as a whole,

14  rather than the individual component parts, that must be examined for overall

15  fairness.'" *Staton,* 327 F.3d at 952 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d

16  1011, 1026 (9th Cir. 1998)).

17  Similarly, under the FLSA, a settlement that results in waiver of FLSA

18  claims should be approved where it is "entered as part of a stipulated judgment

19  approved by the court after scrutinizing the settlement for fairness." *Lynn's Food*

20  *Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). A

21  settlement is fair, adequate and reasonable, and therefore merits final approval,

22  when "the interests of the class are better served by the settlement than by further

23  litigation." *Manual for Complex Litigation, Fourth* (Fed. Judicial Center 2004)

24

("*Manual*"), § 21.6 at 309.

When determining whether to grant final approval, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the Parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating Parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. The court should balance "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the state of the proceedings; the experience and views of counsel [. . .] and the reaction of the class to the proposed settlement." *Class Plaintiffs*, 955 F.2d at 1291; *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). "The recommendations of Plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

### C.    The Agreement Recognizes and Values the Risks of Continued Litigation.

After the actions were filed and during the course of negotiations, Defendants have asserted and continue to assert, in discussions with Class Counsel

and Intervenor Counsel, that they have substantial defenses to the Claims brought by Plaintiffs. Plaintiffs, for their part, dispute the validity of the defenses; and the Intervenor Class takes a position that the status as Owners and LLC Members is valid and enforceable. Thus, in negotiating this Agreement, the Parties focused upon a number of risk factors which could have significant impacts upon each Parties' position should this matter go forward to trial. Thus, in entering into this Agreement, the Parties considered the following risk factors:

### 1.    Class Action Waivers Could Be Found Enforceable.

As found by this Court in *Ortega*, Plaintiffs and each of the entertainers have executed Limited Liability Company Operating Agreements that contain legally valid and binding arbitration clauses and provisions. The only question that remained before the Court in *Ortega* is whether the waivers of class and collective action proceedings would be enforceable following the Supreme Court's ruling in *Morris, supra*. Thus, there is substantial risk faced by all Parties that class action waivers will either be validated or invalidated by the United States Supreme Court in *Epic Systems Corp. v. Lewis* (U.S. Jan. 13, 2017) (No. 16-285), *Ernst & Young LLP v. Morris* (U.S. Jan. 13, 2017) (No. 16-300), and *NLRB v. Murphy Oil USA, Inc*. (U.S. Jan. 13, 2017) (No. 16-307) (collectively, *Morris*); for which oral argument occurred in early October 2017 and a decision upon that issue is expected any day now. In the event class action waivers are validated, this case could potentially be over without any class recovery.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

### 2.      Defendants Have Sought to Comply with *Truth*.

There is risk of finding there has been no misclassification. This is based upon the fact that Defendants implemented the injunctive relief ordered by Judge Virginia Phillips in *Trauth v. Spearmint Rhino Consulting Worldwide, Inc., et al.*, Case No. EDCV09-1316, and allowed the entertainers to choose to be employees or owners. In addition, Defendants' attempt to comply with the *Truth* injunctive relief may potentially support Defendants' position that there was no willful misclassification, limiting how much time an entertainer could seek in compensation, and in some cases, potentially mooting a claim that requires a willfulness finding to exist (i.e., a "third-year" claim only).

Moreover, the Intervenor Class has taken the position that its members chose to be Owners and LLC Members and Class Counsel and Defendants' Counsel have agreed to modify the LLC agreements according to the interests of the Intervenor Class. Thus, entertainers may be classified as non-employees if they decide to be Owners and because, among other things, they would not perform as employees; meaning, that would instead perform if, when, where and for whom they choose; would not be paid by the hour; would be terminable in accordance with the terms of the Limited Liability Company Operating Agreements; they would control their profits and losses; they would exercise independent initiative in order to successfully engage in their professional occupations; they would perform at other businesses; they would each specifically and in writing reject becoming Club employees when that option is offered to them. Class Members will continue to be presented the option to perform as employees and should they wish to do so, they

Case No. 5:17-cv-00527 JGB (KK)
MEMORANDUM IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF SETTLEMENT

1  may apply to be reclassified and treated as employees without any negative

2  treatment. Moreover, the Intervenors will be required to submit periodic reports to

3  this Court as to their working conditions and provide the Court with information as

4  to how Defendants are continuing to treat them.

### 3.      Defendants May Be Entitled to an Offset

6  Defendants assert entertainers can earn more as Owners and LLC Members

7  than they would as employees. (See Exhibit K - Plaintiff Nelson took the position

8  that she made more as an LLC Member than as an employee and refused to

9  reclassify herself as doing so would impact her financial opportunities.) In

10  particular, based upon current law, payments already made to Class Members

11  could potentially be used to offset any claims for unpaid wages. There is

12  substantial case law, federal regulations and formal administrative hearings

13  supporting the position that dance fees are not "tips," but are service charges. See

14  for example *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901 (2013)

15  (discussing when dance fees can be treated as a tip or service charge).

16  Following Truth, Defendants reorganized their business operations and

17  specifically how the entertainers are compensated so that "service charges" should

18  not be considered tip income, which could then be used under applicable law, to

19  satisfy any minimum wage obligations found to be due if Class Members were

20  ultimately found to have been employees. Applicable rulings on this issue include

21  FLSA 2005-31, 2005 WL 3308602 (DOL Wage-Hour); WH-305, 1975 WL 40930

22  (DOL Wage-Hour); WH-386, 1976 WL 41739 (DOL Wage-Hour); Rev. Ruling

23

24

Case No. 5:17-cv-00527 JGB (KK)
MEMORANDUM IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF SETTLEMENT

1   77-290; Rev. Ruling 59-252; Rev. Ruling 58-220; and Rev. Ruling 515. None of

2   the formal rulings identified above have been abrogated by the IRS or the DOL.

3   Accordingly, the Parties acknowledge that there exists in this Action an unresolved

4   legal issue as to whether any Class Members would be entitled to any wages,

5   renumeration, damages, or other compensation or penalties, even if they were

6   found to have been employees of the Clubs. The outcome of the misclassification

7   issue remains in doubt in light of the Intervenor Class and manner in which LLC

8   Members have been treated at the Clubs as Defendants allege.

9
        **D.    The Settlement Is Presumptively Fair Because of the Relatively
              Few Objections to the Settlement by Class Members, the
10            Discovery Conducted, Class Counsel's Experience, and the Arms-
              Length Negotiations.**

11      The Court should begin its analysis with a presumption that the Settlement is

12  fair and should be approved, due to (1) the relatively few objections to the

13  Settlement by the Class Members (in this case only 0.03% of the class, or 3[7] out of

14  8,472 individuals objected to the settlement), (2) the discovery conducted, (3)

15  Class Counsel's significant experience in this kind of litigation, and (4) the arms-

16  length negotiations before an experienced mediator and retired judge. *See Ortiz v.*

17  *Fibreboard Corp.*, 527 U.S. 815, 852 (1999) (holding that arms-length negotiations

18  conducted by competent counsel after discovery are *prima-facie* evidence that the

19  settlement is fair and reasonable); *M. Berenson Co., Inc. v. Faneuil Hall*

20  *Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("Where, as here, a

21

22  _____

23  [7]      In fact, Shala Nelson's objections should be stricken as she opted out of the
            Settlement hence keeping only 2 objections.

24

                                    - 22 -          Case No. 5:17-cv-00527 JGB (KK)

proposed class settlement has been reached after meaningful discovery, after arm's

length negotiation, conducted by capable counsel, it is presumptively fair."").

Furthermore, engaging a mediator to assist in negotiations is evidence that a

parties' settlement is the product of arms-length negotiation. *Carter v. Anderson*

*Merchandise, LP*, 2010 WL 144067, at *6 (C.D. Cal. January 7, 2010). These

factors are well satisfied here.

### 1.   The Settlement Has Been Met with Approval by Class Members.

First, the Settlement has near unanimous approval by the Settlement Class

Members, and no governmental actor has objected. (*See* Exhibit A -Declaration of

KCC representative Ryanne Cozzi). To date, after receiving notice of the proposed

settlement, the 8,472 member class have been nearly silent with the exception of

three objectors; two of whom are plaintiffs in the above-listed post-*Trauth* 2017

litigation:

(a)   Shala Nelson, a Class Member who filed, *Shala Nelson v. Farmdale Hospitality Services, LLC, et al.*, Case No. BC671852. Ms. Nelson's attorney filed an objection on January 22, 2018. (ECF No. 83, the "Nelson Objection") (Incidentally, because Ms. Nelson filed an Opt-Out, she no longer has standing to file or maintain an Objection) *See Glass v. UBS Fin Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *8 (N.D. Cal. Jan 26, 2007);

(b)   Adriana Ortega, a Class Member who filed *Ortega v. Spearmint Rhino Companies Worldwide, Inc., Case No. 5:17-cv-00206-JGB.* Ms. Ortega's attorney filed an objection on February 16, 2018. (ECF No. 90, the "Ortega Objection"); and

(c)   Ashley Ingraham, a Class Member who submitted her objection to counsel for the Parties on February 2, 2018. (ECF No. 89, the "Ingraham Objection").

Plaintiffs' separate and substantive responses to each of the above Objectors are to be filed no later than February 28, 2018, per the deadlines in the Court's Order Granting Plaintiffs' Unopposed Motion for Class Certification and Preliminary Approval of Settlement. (*See* ECF No. 80).

For purposes of this Motion, the objections can generally be summarized as follows: (1) the Settlement does not contain enough monetary relief; (2) the non-monetary "credits" do not provide a benefit to the Class Members and are so-called "coupons"; and (3) the Settlement provides improper or inadequate injunctive relief and/or improperly constitutes a declaratory judgment.

The Ninth Circuit has observed that "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). Thus, when analyzing a settlement, the Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625, 628. There is sufficient evidence in the record to support a finding by the Court that the proposed settlement is fair, adequate, and reasonable.

### a. The *Nelson* Objection Should Not Be Considered by the Court When Determining Final Fairness of the Settlement Because Shala Nelson Lacks Standing.

Shala Nelson lacks standing to object and her objections should be stricken because she opted out of this settlement. (Exhibit O). *See* Fed. R. Civ. P. 23(e)(4)(A) (providing "any class member may object to a proposed settlement").

*See also, e.g.*, *Mayfield v. Barr,* 985 F.2d 1090, 1092 (D.C. Cir. 1993) (holding

"[t]hose who are not class members, because they are outside the definition of the

class or have opted out" lack standing to object to class settlement); *Jenson v.*

*Cont'l Fin. Corp.,* 591 F.2d 477, 482 n. 7 (8th Cir. 1979) ( "Opt-outs [. . .] are not

members of the class and hence are not entitled to the protection of Rule 23(e).");

*Zamora v. Ryder Integrated Logistics, Inc.*, No. 13cv2679-CAB (BGS), 2014 WL

9872803, at *2 (S.D. Cal. Dec. 23, 2014) ("Here, by opting out of the class, [a

purported objector to a class action settlement] fully preserved his right to litigate

any claims he may have independently, and therefore has no significant protectable

interest in the settlement); *Glass v. UBS Fin Servs., Inc.*, No. C-06-4068 MMC,

2007 WL 221862, at *8 (N.D. Cal. Jan 26, 2007) ("Although Bavishi has

submitted objections to the settlement, he also has opted out. [. . .] Consequently,

as Bavishi is no longer a class member, he has no standing to object."), *aff'd*, 331

Fed. App'x 452 (9th Cir. 2009).

> **b. The Objections Advanced by Attorneys for Nelson
> and Ortega Do Not Support Denial of Final Approval
> of the Settlement; the Objections Merely Seek Payoffs
> for Those Attorneys**

The Objections largely consist of meritless "sour grape" complaints and

thinly-veiled attempts to extort fees from Class Counsel. For instance, Class

Counsel attach here and will submit with their response to the Nelson Objection

emails from Nelson's attorney, Mr. Jonathan Delshad, attempting to extract

$75,000 in exchange for dropping his objections to the Settlement. (Exhibit P).

Despite numerous requests, Mr. Delshad proffered that this Settlement does not

1   impact the PAGA Claims and has alleged but refused to explain why the

2   Settlement would not cover his claims, why the Settlement might be allegedly

3   problematic, and the basis for the $75,000 he requested in attorneys' fees for

4   himself (as opposed to seeking any additional monetary relief for his client). Mr.

5   Delshad filed a copycat case and is disappointed that someone else beat him to the

6   settlement table. Because he failed to achieve success in his own action, Mr.

7   Delshad now wants to recoup his time and expenses from counsel in this case. In

8   other words, he is using his client's objections and the threat of further litigation in

9   the hope of getting a quick $75,000 payoff. But, Mr. Delshad is not entitled to a fee

10  and the Court should not condone his aggressive tactics. *See, e.g.*, *In re*

11  *UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 2d 1107, 1109 (D. Minn. 2009)

12  ("Objectors' Counsel make outlandish fee requests in return for doing virtually

13  nothing. And nothing is the quantity of assistance they have provided to the Court

14  and the class. Their goal was, and is, to hijack as many dollars for themselves as

15  they can wrest from a negotiated settlement . . . . Accordingly, the Court holds, as a

16  matter of fact and law, objectors have conferred no benefit whatsoever on the class

17  or on the Court. Objectors' Counsel are entitled to an award equal to their

18  contribution . . . nothing.") (quotation marks and citation omitted).

19      Moreover, given that the *Ortega* Action is currently stayed pending the

20  outcome of *Morris*, Ortega and her counsel should appreciate the outcome of this

21  action which provides certainty and compensation to her and the thousands of

22  Class Members under the Settlement, notwithstanding that the outcome of *Morris*

23  may result in her claim being sent to individual arbitration. In addition, counsel for

24

Case No. 5:17-cv-00527 JGB (KK)
MEMORANDUM IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF SETTLEMENT

*Ortega* should understand the high risk involved in litigating wage misclassification cases like this one (despite her assurances to the Court that a finding of liability against Defendants is a sure bet), and therefore should appreciate an early resolution which provides compensation to her client despite the risks involved. *See Lawson v Grubhub, Inc*., No. 15-cv-05128-JSC, 2018 WL 776354, at *20 (N.D. Cal. Feb 8, 2018) (a case recently tried by *Ortega*'s legal counsel where the court found in favor of independent contractor status and no recovery was obtained).

Additionally, Ortega and her counsel are not proper representatives of the Class Members as they failed to certify an FLSA class, failed to properly plead the basic operative facts regarding the post-*Trauth* injunctive relief and LLC member classification, and, perhaps most importantly, no other entertainers opted-in to the *Ortega* case. Furthermore, Ortega's attorney, Shannon Liss-Riordan, is unfit to serve as Class Counsel or to cast aspersions on the Settlement where she has a history of receiving sanctions for her conduct in other California federal courts. (Exhibit Q).

Notably, Ortega's counsel has negotiated settlements for similar amounts as this one and has represented to the Court that they should be approved. *See, e.g., Singer v. Postmates, Inc.*, No. 4:15-cv-01284-JSW, 2017 WL 4842334 (N.D. Cal. Sept. 1, 2017) (court granting preliminary approval of an **$8.75 million settlement** negotiated by *Ortega's* counsel **for 234,000 class members**. Her attempt to bust this settlement is purely based on self-interest and not the interest of the class.

In addition, as will be shown in Response to Ortega's objection, Ortega's

Case No. 5:17-cv-00527 JGB (KK)
MEMORANDUM IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF SETTLEMENT

counsel has filed other objections in entertainer cases almost identical to the objection she filed here - all of her objections have been denied. (*See, e.g.,*Exhibit Z - *Jane Roes 1-2 v. SFBSC Mgmt., LLC*, No. 14-cv-03616-LB (N.D. Cal. July 3, 2017) (*SFBSC* Ct. Dkt. Nos. 162 (an objection almost identical to the one filed here, filed in another dancer settlement by Ms. Liss-Riordan); &178 (the court denying Ms. Liss-Riordan's objections)). "Many jurists and commentators bemoan that too much of the controversy in many class action litigations seems to center on the issue of attorneys' fees and that, as a result, a cottage industry has developed of professional objectors, where again the emphasis or at least the primary motivation is attorneys' fees. As a corollary, when assessing the merits of an objection to a class action settlement, courts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first." *Dennis v. Kellogg Co.*, No. 09-CV-1786-L (WMc), 2013 WL 6055326, *4 at n.2 (S.D. Cal. Nov. 14, 2013) (internal quotations and citations omitted). Ortega's counsel is a serial objector.

### c.   The Settlement Provides Fair, Adequate, and Reasonable Monetary, Non-Monetary, and Injunctive Relief to the Class Members.

The Objectors' three primary points of contention with the Settlement – the supposed inadequacy of the monetary relief, non-monetary "credits," and injunctive relief – are likewise unavailing.

First, regarding the monetary relief negotiated for the class, the gross settlement value here, on a per class member basis, exceeds or approximates the amount that courts have approved in other settlements involving entertainer

Case No. 5:17-cv-00527 JGB (KK)
MEMORANDUM IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF SETTLEMENT

misclassification claims. In *Jane Doe v. Cin-Lan, Inc.*, a court approved a class-wide settlement of $11.3 million gross for a settlement class of **22,087 entertainers**, *i.e.,* a per class member value of approximately $511.61. No. 2:08-CV-12719 (E.D. Mich. July 15, 2011) (Exhibit R (*Cin-Lan* Ct. Dkt. No. 189-2, p. 26); Exhibit S (*Cin-Lan* Ct. Dkt. No. 430 (order granting final approval of settlement))). In *Nuno v. Shac, LLC, et al.*, a court approved a class-wide settlement of $6 million gross for a settlement class of approximately **10,000 entertainers**, *i.e.*, a per class member value of approximately $600. No. A-09-602800-C (Clark County Nev.) (Exhibit T). In *Trauth v. Spearmint Rhino Companies Worldwide*, Chief Judge Virginia A. Phillips approved a class wide settlement of $12.97 million gross for a settlement class of more than **11,000 entertainers**, *i.e.*, a per class member value of approximately $1,179. No. 5:09-cv-01316 (C.D. Cal. Nov. 6, 2012) (Exhibit U (*Trauth* Ct. Dkt. No. 342, p. 27)). In *Does 1-2 v. Deja Vu Services, Inc.*, a court recently granted final approval to a settlement of $6.5 million for a class consisting of between **45,000 and 50,000 entertainers**, *i.e.*, a per class member value of approximately $130 to $144. No. 2:16-cv-10877, 2017 WL 2629101, at *8 (E.D. Mich. June 19, 2017).[8]

In this case, the settlement value of $8.5 million - $11 million for the 8,472 Class Members equates to a per class member value of approximately $731.27 -

---

[8] Incidentally, Lichten & Liss-Riordan, P.C., the same law firm that represents Adriana Ortega in the *Ortega* Action, has filed an appeal of this case pending in the Sixth Circuit pursuant to an objection filed therein. (Exhibit V - *Jane Doe 1, et al. v. Deja Vu Consulting, Inc., et al.*, No. 17-1801 (6th Cir. docketed July 13, 2017)).

Case No. 5:17-cv-00527 JGB (KK)
MEMORANDUM IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF SETTLEMENT

$1,026.36.[9] As such, the gross settlement value here, on a total basis and on a per class member basis, exceeds or approximates the amounts that courts have approved in other settlements involving entertainer misclassification cases, or wage case settlements in general. *Compare Singer*, 2017 WL 4842334, at *1-4 (granting preliminary approval of an $8.75 million settlement negotiated by *Ortega's* counsel **for 234,000 class members** (set for final approval hearing on February 23, 2018)). (*See also* Exhibit X - *Singer* Ct. Dkt. No. 73 – plaintiffs' motion for preliminary approval of settlement); Exhibit Y – *Singer* Ct. Dkt. No. 78, p. 32 – Ortega's legal counsel discussing the average per plaintiff recovery in the case to range from $3.64 to $235, and concluding that the settlement amount is fair and reasonable).

Inasmuch as the objectors have alleged that the Parties unduly discounted the total potential value of the claims at issue in this lawsuit, courts have approved much more steeply discounted settlements as being fair and reasonable under Rule 23. *See, e.g., Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005) (approving settlement equal to 2% of estimated potential recovery); *In re Toys R Us-Del., Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-54 (C.D. Cal. 2014) (granting final approval of a settlement providing for consideration reflecting 3% of possible recovery); *Reed v. 1-800 Contacts, Inc.*, No. 12-cv-02359 JM (BGS), 2014 WL 29011, at *6 (S.D. Cal. Jan.

---

[9]     This assumes a net settlement fund of approximately $6,195,353.14 if the gross settlement is $8.5M, and a net settlement fund of approximately $8,695,353.14 if the gross settlement is $11M.

2, 2014) (granting final approval where settlement represented 1.7% of possible recovery (net settlement fund of $8,288,719.16, resolving claims worth potentially $499,420,000)); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 229 (E.D.N.Y. 2013) (granting final approval to antitrust class action settlement representing approximately 2.5% of the highest damages estimate as "within the range of reasonableness in light of the best possible recovery and in light of all the attendant risks of litigation"). *See also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (holding that a "settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.") (quoting *Officers for Justice*, 688 F.2d at 628) (internal quotation marks omitted); *Detroit v. Grinnell Corp.*, 495 F .2d 448, 455 n.2 (2d Cir. 1974) ("there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery"). In this case, the settlement represents approximately 23 - 30 % of the highest damages estimate (depending on whether the total settlement is $8.5M or $11M), which is well within the range of reasonableness in light of the best recovery and in light of all the attendant risks of litigation unique to dancer cases, and in this case, unique to the circumstances in a post *Trauth* world. Plaintiffs estimate that the total highest damages model possible in this case is $37,404,250. Class Counsels' calculations are as follows: 440,050 total dance days which the entertainers performed at Defendants' establishments during the applicable time period multiplied by 5 hours per "shift" worked on average (based on data provided) which equates to 2,200,250 hours worked in total

by the Class Members. That total number is then multiplied by $9 per hour as an estimated minimum wage which equates to a best-case damage model of $19,802,250 in unpaid wages. Class Counsel estimates an additional $17,602,000 owed in misappropriated tips. That number was calculated based on the total number of dance days multiplied by $40 (the highest tip out per shift), which dancers have shared with Class Counsel during their investigation was the average tip out per shift. (Exhibit W - Declaration of Class Counsel Todd Slobin at ¶ 13).

Second, regarding the credits negotiated in this settlement, it is significant that other courts have approved class action settlements that, like this settlement, have included both dance fee payments and cash payments. For example, in *Jane Doe v. Cin-Lan, Inc.*, the court approved a class wide settlement of $11.3 million for a settlement class of 22,087 entertainers, which consisted of a dancer rent credit pool of $9 million and a cash pool of $2 million. No. 2:08-CV-12719 (E.D. Mich. July 15, 2011) (Exhibit R (*Cin-Lan* Ct. Dkt. No. 189-2, p. 26); Exhibit S (*Cin-Lan* Ct. Dkt. No. 430 (order granting final approval of settlement))). In *Does 1-2 v. Deja Vu Services, Inc.*, the court has granted final approval to a settlement of $6.5 million for a class consisting of between 45,000 and 50,000 entertainers, which consisted of $4.5 million in rent credits and fee credits and a cash pool of $2 million. No. 2:16-cv-10877, 2017 WL 2629101, at *8 (E.D. Mich. June 19, 2017). The fact that other courts have approved class action settlements that provided benefits similar to or less than those in the Settlement here supports a finding that the settlement is fair.

Moreover, Class Members who made a claim for dance-fee payments during

the claim period will have the right to receive a tangible monetary benefit. And if the dance-fee payments have not been exhausted during the claim process, the funds will remain available for use by class members for an additional year. This is meaningful compensation to class members that will cost Defendants a significant amount of money *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 950 (9th Cir. 2015) (affirming district court order granting approval of settlement consisting of cash payments and Walmart gift cards and finding the gift cards were not coupons). The Ninth Circuit distinguished the gift cards from coupons (like those in the cases Objectors' counsel cites), which "require class members to hand over more of their own money before they can take advantage of the coupon, and they often are only valid for select products or services." *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d at 951. The dance fee in this case payments are more analogous to cash payments or gift cards.

In addition, the comparison of the monetary relief that class members can obtain through dance fee payments versus cash payments is inapposite. The former requires that the Class Members continue to work at Spearmint Rhino locations, whereas the latter does not. Second, the notion that the settlement unfairly provides greater benefits to "current" workers, as opposed to "former" workers, is also unpersuasive because the workforce is largely transient. An entertainer can and often does have simultaneous contracts at multiple nightclubs. It is entirely possible that a "former" worker may decide to return to work one of the Nightclubs, even for a short time, in order to claim the benefits of the dance fee payments.

Case No. 5:17-cv-00527 JGB (KK)
MEMORANDUM IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF SETTLEMENT

1    Third, as to Objectors' last contention regarding injunctive relief to the

2    Intervenors, the Objectors continue to misconstrue the relief provided by the

3    Settlement Agreement. The Settlement simply "tweaks" what Judge Phillips

4    intended to be in place at Defendants' clubs post-*Trauth* – an elective process

5    available to the Class Members and dancers in the future: to be a member of an

6    LLC or choose to be an employee. If Ortega or Ingraham, for example, really wish

7    to be employees at Defendants' Clubs they can now easily elect to do so.

8    Moreover, less than 1% of the class members have opted out of the

9    Settlement. (*See* Exhibit A). As Class Counsel predicted, and this Court agreed

10   when it granted preliminary approval, the Class Members in overwhelming fashion

11   have reacted favorably to this class settlement. *Accord In re AT & T Mobility*

12   *Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 965 (N.D. Ill. 2011)

13   (finding that approval of settlement was warranted where less than 1% of the

14   settlement class members opted out and where "Class Members [. . .] filed only 10

15   objections with specific arguments," which was "a remarkably low level of

16   opposition [. . .].") (emphasis added). *See also Nat'l Rural Telecomms. Coop v.*

17   *DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (holding that "in the

18   absence of a large number of objections to a proposed class action settlement,

19   settlement actions are favorable to the class members."); *Mandujano v. Basic*

20   *Vegetable Prods. Inc*., 541 F.2d 832, 837 (9th Cir. 1976).

21   The Court can and should find that the distribution of funds available

22   through the settlement is fair. Plaintiffs' counsel attempted to obtain the best

23   possible outcome for the class, and concluded that offering class members both

24

options (i.e., cash payments and dance fee payments), as well as injunctive relief, would maximize the value of the settlement to the class as a whole.

2. **The Parties Conducted Sufficient Investigation, Discovery, and Analysis Resulting in a Fair, Reasonable, and Adequate Settlement.**

Class Counsel have engaged in extensive investigation of the claims in this case and the Parties engaged in discovery. Class Counsel spoke with a number of dancers located throughout the country regarding the allegations in dispute in this case, and reviewed class-wide information provided by Defendants' counsel (before mediation, in the context of mediation and following mediation) concerning the current LLC agreements in place, the number of locations of Defendants' clubs, the number of entertainers working at each club within the applicable statute of limitations, and the total number of days worked by dancers at each establishment. (*See* ECF No. 64-3, 64-4, & 64-5).

In summary, the Parties engaged in substantial investigation and analysis of the legal issues in reaching a Settlement in this case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (emphasizing that the touchstone of the analysis is whether "the parties have sufficient information to make an informed decision about settlement," including formal and informal discovery). "In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *Id.* Here, the Parties had enough information and could rely on their extensive experience litigating wage and hour class actions, including entertainer cases, to make an informed decision about this settlement.

### 3.     Experienced Class Counsel Endorse this Settlement.

The judgment of experienced counsel regarding the settlement is entitled to great weight. *Hanlon*, 150 F.3d at 1026; *Boyd*, 485 F. Supp. at 622; *Ellis*, 87 F.R.D. at 18. Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (*quoting In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Here, Class Counsel (in *Byrne* and *Bracy*) endorse the Settlement as fair, adequate, and reasonable. Class Counsel have extensive experience in prosecuting and litigating class action wage and hour suits like this one. (*See* ECF No. 64-3, 64-4, & 64-5). Class Counsel have conducted extensive investigation of this case, and interviewed and secured declarations of class members throughout the United States regarding their job duties, hours worked, and other relevant information. (*See Id.*). The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate heavily favors this Court's approval of the Settlement.

### 4.     The Settlement Is the Result of Arms-Length Negotiations Before an Experienced Neutral Mediator.

In late July 2017, the Parties engaged in a private mediation at ADR Services in Los Angeles, California before the Honorable Robert Altman (Ret.). Following that mediation, and a number of continuing telephonic negotiations, with the assistance of the Mediator (a retired Judge), the Parties reached an agreement which provides for substantial consideration to be provided to Class

Members, as set forth in the settlement agreement, and provides the Intervenor Class with injunctive relief designed to improve and enhance their status as LLC Members and Owners and their corresponding working conditions at the Existing Clubs.

As set forth above, a settlement is presumed fair if it was negotiated at arm's length by experienced, competent counsel equipped with enough information to act intelligently. *See Tijero v. Aaron Bros., Inc.*, No. C 10-01089-SBA, 2013 WL 6700102, at *7 (N.D. Cal. Dec. 19, 2013) (where settlement reached after parties participated in private mediation, settlement was appropriate for final approval); *Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery.") (citing *Manual for Complex Litigation (Third)* § 30.42 (1995)).

### E. The Court Should Grant Final Class Certification and Collective Action Designation.

The Court previously certified Classes for Settlement purposes only pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and as a FLSA collective action. (ECF Nos. 74 and 80). The Court ruled that, for purposes of the settlement, the Classes meet the Rule 23 requirements as well as the FLSA collective action requirements. (*Id.*) The Court also appointed the named Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel. (*Id.*). For these reasons, and the reasons set forth in Plaintiffs motion for preliminary approval,

Class Counsel respectfully submit that the Court should grant final certification and collective action designation for purposes of settlement of this matter,  should confirm the appointment of the class representatives and class counsel and confirm settlement of all PAGA claims.

### F.   The Court Should Award Class Counsel Twenty Five Percent of the Eight and One-Half Million Dollar Common Fund Plus Reasonable Expenses.

Here, the compensation sought for Class Counsel – 25% of the $8.5M common fund created by their efforts ($2,125,000) plus costs ($19,646.86) for a total of $2,144,646.86 (Exhibit W - Declaration of Class Counsel Todd Slobin at ¶ 17). – is also reasonable and consistent with the Ninth Circuit's standards. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-1048 (9th Cir. 2002). Rule 23(h) of the Federal Rules of Civil Procedure provides: "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fee provisions included in proposed class-action settlements must be reasonable. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).; *see also Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (noting that the "typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value"); *In re Omnivision Techs, Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (noting that "in most common fund cases, the award exceeds [the] benchmark"). "[I]n smaller cases—particularly where the common fund is under $10 million—awards more frequently exceed the benchmark." *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1209 (C.D. Cal. 2014). "Where the

settlement involves a common fund, courts typically award attorney's fees based on a percentage of the total settlement." (Exhibit Z - *Jane Roes 1-2 v. SFBSC Mgmt., LLC*, No. 3:14-cv-03616-LB (N.D. Cal. Sept. 14, 2017) (*SFBSC* Ct. Dkt. No. 178, p. 22). In addition, when determining the value of a settlement, courts consider the monetary <u>and</u> non-monetary benefits that the settlement confers. *See, e.g., Staton*, 327 F.3d at 972–74; *Pokorny v. Quixtar, Inc.*, No. C 07–0201 SC, 2013 WL 3790896, \*1 (N.D. Cal. July 18, 2013) ("The court may properly consider the value of injunctive relief obtained as a result of settlement in determining the appropriate fee."); *In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, \*7 (N.D. Cal. Mar. 18, 2013). Ninth Circuit precedent requires courts to award class counsel fees based on the <u>total benefits</u> being made available to class members <u>rather than the actual amount that is ultimately claimed</u>. *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2007 WL 951821, at \*8 (N.D. Cal. Mar. 28, 2007) (citing *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) ("district court abused its discretion in basing attorney fee award on actual distribution to class" instead of amount being made available) (quoted language from *Young*)).

Finally, when a settlement agreement applies a formula pursuant to which each class member will receive a mathematically ascertainable payment (as is the case in this settlement), application of the percentage of the common fund doctrine is appropriate. *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. July 2, 2013). "[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee

1   from the fund as a whole." *Staton*, 327 F.3d at 972 (quoting *Boeing Co. v. Van*

2   *Gemert*, 444 U.S. 472, 478 (1980)). Awarding a percentage of the common fund is

3   particularly appropriate "when each member of a certified class has an undisputed

4   and mathematically ascertainable claim to part of a lump-sum judgment recovered

5   on his behalf." *Id.* (quoting *Van Gemert*, 444 U.S. at 478–79, 100 S.Ct. 745)

6   (internal quotation marks omitted). Here, Class Counsels' request of 25% as a fee

7   from the common fund is proper under Ninth Circuit law.

8           Class counsel are also entitled to reimbursement of reasonable out-of-pocket

9   expenses. Fed. R. Civ. P. 23(h); see *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.

10  1994) (attorneys may recover reasonable expenses that would typically be billed to

11  paying clients in non-contingency matters; *Van Vranken v. Atl. Richfield Co.*, 901

12  F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action

13  settlement). Costs compensable under Rule 23(h) include "nontaxable costs that

14  are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). These

15  can include reimbursements for "(1) meals, hotels, and transportation; (2)

16  photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and

17  overnight delivery; (6) online legal research; (7) class action notices; (8) experts,

18  consultants, and investigators; and (9) mediation fees." *In re Immune Response*

19  *Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). Here, Class Counsel has

20  submitted expenses for reimbursement totaling $19,646.86, which fall within the

21  aforementioned categories. (Exhibit W - Declaration of Class Counsel Todd Slobin

22  at ¶ 17). *See McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*, No. 1:16-cv-

23  00157-DAD-JLT, 2017 WL 5665848, at *9 (E.D. Cal. Nov. 22, 2017) (finding

24

expenses approximating $20,000 to be reasonable). Class Counsel has incurred additional expenses which would also fall within the aforementioned reimbursable expenses; however, they have decided not to submit those expenses in an effort to maximize the funds available to the Class Members. *Id.*

The Ninth Circuit has identified a number of factors courts may consider in assessing whether an award is reasonable and whether a departure from that figure is warranted, including: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs." *Vandervort*, 8 F. Supp. 3d at 1209 (citing *Vizcaino*, 290 F.3d at 1048–50).

These factors support Class Counsel's compensation in this case, where the financial burden of investigating, developing, and prosecuting the case; the risk and complexity of adequately proving nationwide policies and practices that functioned in concert to violate Class Members' rights; and the skill and diligence required to maintain the case in the face of forceful opposition, all were substantial. Despite these risks, this case was handled on a contingency-basis and that payment for time spent litigating the case and reimbursement for out of pocket costs were not received in advance of litigation. Twenty-five percent (25%) of the $8.5M settlement fund plus costs and expenses under these circumstances is reasonable. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d at 379 (affirming fee award equal to 33% of fund); *In re Heritage Bond Litig.*, No. 02–ML–1475 DT, 2005 WL 1594403, at *18, n.12 (C.D. Cal Jun. 10, 2005) (noting that more than 200 federal cases have awarded fees higher than 30%); *Linney v. Cellular Alaska P'ship*, No. C–96–3008

DLJ, 1997 WL 450064, *7 (N.D. Cal. 1997) (awarding 33.3% fee). It is worth noting that in addition to the $8.5M common fund from which Class Counsel seeks a fee of 25%, Class Counsel negotiated non-monetary terms such as revisions to the LLC agreement and employment practices designed to protect the rights of dancers at Defendants' establishment regardless of whether they elect employee or LLC member status. Finally, and most important, after deducting fees and costs, a majority of the settlement common fund is available for distribution to the Class Members.

### G.     The Court Should Approve the Class Representative Service Awards Contemplated in the Settlement.

The Settlement also provides for a $2,500 service award to each named class representative Plaintiff, which reasonably compensate Plaintiffs for their efforts and assumed risks without reflecting preferential treatment. (Exhibit W - Declaration of Class Counsel Todd Slobin at ¶ 20). These awards "are fairly typical in class action cases" and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

The criteria courts may consider in determining whether to make a service award include: "1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class

representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995); *see also Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-67 (N.D. Cal. 2015) (observing that a $5,000 payment is "presumptively reasonable" and incentive awards "typically range from $2,000 to $10,000").

In this case, Plaintiffs seek reasonable service awards tailored to the extent of their participation and risks in the case. Here, the Class representatives were the ones who initially brought their claims to light to the benefit of the class members, appear named on a public lawsuit which discusses topics which may result in public backlash due to public biases and opinions concerning Plaintiffs' profession, assisted with the investigation of claims and defenses, attended mediation, and participated in numerous meetings and conferences with counsel in furtherance of this case and settlement. (Exhibit W - Declaration of Class Counsel Todd Slobin at ¶ 21).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs by and through Class Counsel, respectfully request that the Court grant final approval of the Settlement and grant final class certification and collective action designation of the Settlement.

Dated: February 23, 2018

Respectfully submitted,

By:   s/Melinda Arbuckle
      Melinda Arbuckle

**BARON & BUDD, P.C.**
Melinda Arbuckle (Cal. Bar No. 302723)
marbuckl@baronbudd.com
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-6506
Facsimile: (818) 986-9698

**SHELLIST | LAZARZ | SLOBIN LLP**
Todd Slobin (admitted *Pro Hac Vice*)
tslobin@eeoc.net
Ricardo J. Prieto (admitted *Pro Hac Vice*)
rprieto@eeoc.net
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
Facsimile: (713) 621-0993

**NAPOLI SHKOLNIK PLLC**
Jennifer Liakos (Cal. Bar. No. 207487)
jliakos@napolilaw.com
525 South Douglas Street, Suite 260
El Segundo, CA 90245
Telephone: (310) 331-8224
Facsimile: (646) 843-7603

Salvatore C. Badala (admitted *PHV*)
sbadala@napolilaw.com
Paul B. Maslo (admitted *PHV*)
pmaslo@napolilaw.com
360 Lexington Avenue, 11th Floor
New York, New York 10017
Telephone: (212) 397-1000

*Counsel for Plaintiffs and Settlement Class
and Collective Action Members*

1

**PROOF OF SERVICE**

2

Pursuant to Local Rule 5-3.1.2, I, Melinda Arbuckle, hereby make the following declaration:

3

4

1.    "I am over the age of 18, competent to make the foregoing declaration which is based on my own personal knowledge, and an attorney for Plaintiffs in this suit.

5

6

2.    On February 23, 2018, I filed the foregoing document, the **NOTICE OF MOTION; UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS; MEMORANDUM IN SUPPORT OF MOTION (the "Final Approval Motion")**, with the Court using the CM/ECF method. I hereby certify that all counsel of record were served electronically pursuant to Local Rule 5-3.2.1.

7

8

9

3.    On February 23, 2018, I served Objector Ashley Ingraham with a copy of the **Final Approval Motion**, by depositing such envelope with postage thereon fully prepaid and addressed as follows:

10

11

Ashley Ingraham
7095 Hollywood Blvd
Los Angeles, CA 90028

12

13

in the United States mail at a facility regularly maintained by the United States Postal Service at Dallas, Texas. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under the practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Dallas, Texas in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing, pursuant to this affidavit.

14

15

16

17

18

4.    On February 23, 2018, I served counsel for Objector Shala Nelson with a copy of the **Final Approval Motion**, by depositing such envelope with postage thereon fully prepaid and addressed as follows:

19

20

Jonathan Delshad
Law Offices of Jonathan J. Delshad
1663 Sawtelle Blvd. Suite 220
Los Angeles, CA 90025

21

22

in the United States mail at a facility regularly maintained by the United States Postal Service at Dallas, Texas. I am readily familiar with the firm's practice of

23

24

collecting and processing correspondence for mailing. Under the practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Dallas, Texas in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing, pursuant to this affidavit.

5.     I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct."

Executed on February 23, 2018, in the County of Dallas, in the State of Texas.


                                        s/Melinda Arbuckle
                                        Melinda Arbuckle